IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRIAN C. WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-CV-1076 |
| | ) | |
| THE ESTATES LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In this antitrust case based on allegations of a conspiracy in furtherance of a bid-rigging scheme on foreclosure sales, the defendants contend the complaint should be dismissed because the plaintiffs' claims are precluded by judgments in earlier state court proceedings or, in the alternative, for failure to state a claim upon which relief may be granted. Because the plaintiff Brian Williams already litigated his Chapter 75 claim based on extortion against the defendants Red Tree, Versa, and Tonya Newell in state court, their motions to dismiss are granted to the extent Williams is asserting in this case an identical Chapter 75 unfair and deceptive trade practices claim. The plaintiffs did not allege any facts to show that The Estates Real Estate Group was unjustly enriched, and this claim will also be dismissed. Otherwise, the motions are denied.

## The Conspiracy as Alleged in the Complaint

The Estates, LLC, is a membership organization that, together with The Estates (UT), LLC; The Estates Real Estate Group, LLC; and Timbra of North Carolina, LLC,

(collectively the "Estates Defendants"), provides information to its members about foreclosures in North Carolina and coordinates bidding at foreclosure sales between and among its members. Doc. 1 at ¶¶ 1, 9–12, 25. The Estates Defendants maintain an online database that provides real estate information compiled from public data, along with their opinions on the properties and acts as the portal for members to find foreclosure sales and bid on them. *Id.* at ¶¶ 26–27. Members pay a monthly user fee to access the database, as well as an "acquisition fee" for any property acquired through the database, and they must split any profits with the Estates Defendants. *Id.* at ¶ 28. Membership in The Estates also requires members to use real estate agents, brokers, and closing attorneys selected or approved by The Estates, and members must establish separate companies to participate in foreclosure sales. *Id.* at ¶¶ 31–33.

Key to the plaintiffs' claims, all members in The Estates agree that no more than one member may bid on a given foreclosure. Doc. 1 at ¶ 38. Members interested in a property indicate a desire to bid on that property, whereupon The Estates ranks the potential bidders and determines who among its members will be the winning bidder allowed to submit a bid on the property. *Id.* at ¶¶ 47, 50. The Estates then assigns an "Acquisition Assistant" to attend the foreclosure sale and place the bid for the member chosen to bid on that property. *Id.* at ¶ 51.

The plaintiffs owned homes in North Carolina that were sold in foreclosure proceedings to a member, or to an entity created by a member, using the services provided by the Estates Defendants. Doc. 1 at ¶ 2. Brian Williams owned a townhome in Durham, North Carolina. *Id.* at ¶¶ 57–60. In August 2015, the townhome went into

2

foreclosure after he failed to pay money owed to the homeowners' association. *Id.* at ¶¶ 58–60. This property was listed in The Estates database. *Id.* at ¶ 63. The defendant Versa Properties, LLC is either a member of The Estates or was formed by a member at the direction of The Estates for the purpose of buying the Williams property. *Id.* at ¶ 62. Versa or its members entered into an agreement with The Estates and the other members that only one member could bid on the Williams property. *Id.* at ¶ 65. Versa was chosen as the member to bid on the property. *Id.* at ¶ 66. Tonya Newell, an acquisition assistant for The Estates, *id.* at ¶ 14, placed the bid and paid a deposit on the Williams property on behalf of Versa, and Versa's bid was the highest at the foreclosure sale. *Id.* at ¶¶ 61, 68. Versa then purported to assign its bid to Red Tree Holdings, LLC, a company set up at the direction of The Estates. *Id.* at ¶¶ 20, 69.

Following the foreclosure sale, Carolyn Souther, a member of The Estates acting on behalf of Versa, repeatedly contacted Williams and demanded that he pay Versa or Red Tree to walk away from its foreclosure bid. Doc. 1 at ¶¶ 16, 75. Among other things, she tacked a notice on Williams' door that included various misrepresentations intended to pressure Williams into paying Versa or Red Tree. *Id.* at ¶ 72.

The plaintiffs De Leon and Da Costa owned a townhome in Raleigh and had a similar foreclosure experience. Doc. 1 at ¶¶ 82, 85. Maldives, LLC, another company set up at the direction of The Estates or one of its members, *id.* at ¶ 20, learned of and bid on the De Leon property through The Estates database and was chosen by The Estates to be the sole bidder on the property. *Id.* at ¶¶ 86–92. Tonya Newell placed the bid and deposit on the property on behalf of Maldives, and Maldives was the highest bidder. *Id.*

3

at ¶¶ 86, 91.  After the sale, Souther made misrepresentations and demands similar to those made to Williams in an effort to obtain money from the plaintiffs.  *Id.* at ¶¶ 93–97.

## State Court Litigation

While the foreclosure sales were pending, the plaintiffs filed separate lawsuits in North Carolina state court seeking to set aside the foreclosure sales of their homes and asserting claims for damages.  Some months later, after various rulings by the state court, the plaintiffs filed the instant lawsuit in this Court.

### Williams

Williams filed a complaint in Durham County Superior Court on August 14, 2019 against Versa, Tonya Newell, Red Tree, and other individuals not party to this suit.  Doc. 13-1.  He asserted claims to set aside the foreclosure sale of his home, for abuse of process, for unfair trade practices, and for injunctive relief.  *Id.* at ¶¶ 31–63.  Specifically, Williams alleged that the trustee of the deed of trust for the foreclosure sale had a conflict of interest because she served as counsel to the property's creditor in addition to trustee, *id.* at ¶¶ 34–36, and that this gave the creditors an unfair advantage that resulted in an "inadequate sum" on the sale.  *Id.* at ¶ 37.  His Chapter 75 unfair trade practices claim was based on allegations that Newell bid on his property through an allegedly non-existent LLC in order to gain access to Williams' property and, along with Red Tree and Versa, to extort money in exchange for relinquishing their bid.  *Id.* at ¶¶ 46–48.

Upon a motion to dismiss for failure to state a claim pursuant to North Carolina Rule of Civil Procedure 12(b)(6), the state court dismissed Williams' claims for abuse of

process and unfair and deceptive trade practices on October 9, 2019.  Doc. 13-2.  The remaining claims to set aside the foreclosure and for injunctive relief are still pending.

### De Leon and Da Costa

De Leon and Da Costa filed a complaint in Wake County Superior Court on August 20, 2019, against Maldives and other individuals not party to this suit.  Doc. 13-3.  They asserted claims similar to those asserted by Williams:  to set aside the foreclosure sale, for abuse of process, for unfair and deceptive trade practices, and for injunctive relief.  *Id.* at ¶¶ 28–56.  Upon a motion to dismiss for failure to state a claim under N.C. R. Civ. P. 12(b)(6), the state court dismissed with prejudice the claims to set aside the foreclosure sale and for injunctive relief against Maldives.  Doc. 13-4 at 4.  De Leon and Da Costa voluntarily dismissed their claims for abuse of process and unfair and deceptive trade practices.  *Id.* at 4 n.1.

### Overview of Claims and Questions Presented

The three plaintiffs filed the present action in this Court on October 18, 2019, alleging violations of § 1 of the Sherman Act, and N.C. Gen. Stat. § 75-1, as well as a state law claim for unjust enrichment.  Doc. 1 at ¶¶ 107–25.  It is clear the plaintiffs assert that the defendants engaged in a bid-rigging conspiracy that violates both the Sherman Act and the unfair competition provisions of Chapter 75.  It is not clear how the extortion allegations in the complaint relate to these causes of action, but for purposes of this motion the Court assumes that the plaintiffs also assert the defendants engaged in attempted extortions that were both part of the bid-rigging conspiracy and also constitute

independent violations of the unfair and deceptive trade practices provision of Chapter 75.[1]

The defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, the defendants contend that the Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, which prohibits federal courts from sitting in review of state court decisions. Doc. 13 at 7–8. Second, they assert that the plaintiffs' claims are precluded under both collateral estoppel and *res judicata*. *Id.* at 8–13. Third, they contend that the plaintiffs' claims are barred by the doctrine of election of remedies. *Id.* at 13–14. Finally, they contend that the Court should abstain from exercising jurisdiction over the plaintiffs' claims or, in the alternative, stay this case pending the outcome of the state court litigation. *Id.* at 14–16.

In the alternative, all the defendants contend that the plaintiffs have not adequately pled either a Sherman Act violation or unfair competition. *Id.* at 16–22. The Estates Real Estate Group also moves to dismiss the plaintiffs' unjust enrichment claim for failure to state a claim, Doc. 38 at 7–8, and Carolyn Souther seeks dismissal alleging that she is shielded by North Carolina's corporate immunity laws. Doc. 34 at 8–9.

---

[1] N.C. Gen. Stat. § 75.1-1(a) provides that "[u]nfair methods of competition in or affecting commerce, *and* unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." *Id.* (emphasis added). The first clause of N.C. Gen. Stat. § 75.1-1 covers claims for unfair competition and constitutes the state antitrust provision, while the second covers claims for unfair or deceptive acts or practices. *See, e.g., Southeast Anesthesiology Consultants, PLLC v. Rose*, No. 17 CVS 9002, 2019 WL 5090364, at *7–*13 (N.C. Super. Oct. 10, 2019). Thus, Chapter 75 contemplates and authorizes two separate and distinct claims, both of which appear to be made here.

## Analysis

### A.  Subject Matter Jurisdiction:  *Rooker-Feldman*

The defendants first challenge subject matter jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(1).  A federal court must first "determine that it has subject-matter jurisdiction

over the case before it can pass on the merits of that case." *Constantine v. Rectors &*

*Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005).  A court should

grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute

and the moving party is entitled to prevail as a matter of law." *Fed. Nat'l Mortg. Ass'n v.*

*Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Evans v. B.F.*

*Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

The *Rooker-Feldman* doctrine is "a jurisdictional doctrine that prohibits federal

district courts from exercising appellate jurisdiction over final state-court judgments."

*Pounds v. Portfolio Recovery Assocs., LLC*, No. 1:16CV1395, 2018 WL 1583670, at *2

(M.D.N.C. Mar. 28, 2018).[2]  Under the *Rooker-Feldman* doctrine, federal courts lack

subject matter jurisdiction to hear "cases brought by state-court losers complaining of

injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments." *Exxon*

*Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 284 (2005).  The doctrine is

"narrow and focused." *Thana v. Bd. of License Comm'rs for Charles Cty.*, 827 F.3d 314,

319 (4th Cir. 2016).  "[I]f a plaintiff in federal court does not seek review of the state

---

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

court judgment itself but instead presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Id.* at 320.

Here, the plaintiffs are not complaining of an injury caused by a state court judgment. *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020). They seek redress for the allegedly illegal conspiracy to engage in bid-rigging leading up to the foreclosure sales, and they do not ask the Court to correct or change a decision by the state courts. While the claims in this case arise out of some of the same facts as the state court claims, they are not veiled appeals of state-court judgments to a federal district court. *See id.* at 251. They are "independent claim[s]" and, as such, are not barred by the *Rooker-Feldman* doctrine. *See Thana*, 827 F.3d at. The motions to dismiss premised on the *Rooker-Feldman* doctrine will be denied.

### B. Res Judicata and Collateral Estoppel

The defendants next move to dismiss the complaint per Fed. R. Civ. P. 12(b)(6), contending that the plaintiffs' claims are precluded by the doctrines of issue and claim preclusion. *E.g.*, Doc. 13 at 8–13. A motion to dismiss filed under Rule 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[] on the face of the complaint," *id.*, or, as to collateral

estoppel or res judicata, if undisputed facts from a prior judicial proceeding subject to judicial notice establish the defense. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

North Carolina law governs the preclusion issues in this case. *See In re Heckert*, 272 F.3d 253, 257 (4th Cir. 2001); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–82 (1985) (noting in antitrust case that a state court judgment may "have preclusive effect in a subsequent action within exclusive jurisdiction of the federal courts" and directing courts to first look to state preclusion law to determine preclusive effect).

"The doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) are companion doctrines which have been developed by the Courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." *Williams v. Peabody*, 217 N.C. App. 1, 5, 719 S.E. 2d 88, 92 (2011). As no party disputes the factual accuracy of the documents submitted from the state court proceedings, it is proper to take judicial notice of those pleadings and orders. *Andrews*, 201 F.3d at 524 n.1; *see also Briggs v. Newberry Cty. Sch. Dist.*, 838 F. Supp. 232, 233–34 (D.S.C. 1992), *aff'd*, 989 F.2d 491 (table), 1993 WL 66558 (4th Cir. Mar. 11, 1993).

### 1. *Res Judicata* or Claim Preclusion

In order to successfully assert a *res judicata* defense, the defendants must show three things: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or

their privies in the two suits." *ACC Constr., Inc. v. SunTrust Mortg., Inc.*, 239 N.C. App. 252, 262, 769 S.E. 2d 200, 207 (2015).

As to the first element, each plaintiff was a party to an earlier suit resulting in at least a partial final judgment on the merits. The state court dismissed Williams' claims for abuse of process and unfair and deceptive trade practices under N.C. R. Civ. P. 12(b)(6), Doc. 13-2, and dismissed the claims of De Leon and Da Costa to set aside the foreclosure sale and for injunctive relief pursuant to the same rule with prejudice. Doc. 13-4 at 4. In North Carolina, "it is well settled . . . that a dismissal under Rule 12(b)(6) operates as an adjudication on the merits unless the court specifies that the dismissal is without prejudice." *Hill v. West*, 189 N.C. App. 194, 198, 657 S.E.2d 698, 700 (2008). The order dismissing Williams' abuse of process and unfair and deceptive trade practices claims did not specify that it was without prejudice, Doc. 13-2, and the order dismissing De Leon and Da Costa's claims to set aside the foreclosure sale and for injunctive relief expressly states they were dismissed with prejudice, Doc. 13-4, so as to these dismissed claims there is a final judgment on the merits.

Unlike a dismissal per Rule 12(b)(6), however, a voluntary dismissal is without prejudice unless otherwise specified in the notice, stipulation, or order. N.C. Gen. Stat. § 1A-1, Rule 41(a). De Leon and Da Costa took a voluntary dismissal of their claims for abuse of process and unfair and deceptive trade practices, and the dismissal did not state that it was with prejudice. Doc. 13-4 at 4 n.1. Therefore, there was not a final judgment on the merits on the claims brought by De Leon and Da Costa for abuse of process and unfair and deceptive trade practices. *See Bockweg v. Anderson*, 333 N.C. 486, 493, 428

S.E. 2d 157, 162 (1993) (holding claims voluntarily dismissed in a prior action did not result in a final judgment on the merits).

As to the second element, identity of claims, there is nothing to indicate that the federal antitrust and state unfair competition claims in this lawsuit were raised in state court. Neither state court complaint alleged antitrust claims, bid-rigging, or unfair competition, *see* Docs. 13-1, 13-3, and neither state court order indicates that such claims were considered or resolved by those courts. *See* Docs. 13-2, 13-4. These claims are not identical to those raised in state court, and therefore they are not precluded in this action.[3]

As noted previously, the role the allegations about extortion will play in the plaintiffs' claims is not completely clear.[4] What is clear is that all three plaintiffs asserted a Chapter 75 unfair trade practices claim in state court based on virtually identical extortion allegations. *Compare* Doc. 13-1 at ¶¶ 27–30, *and* Doc. 13-3 at ¶¶ 25–27, *with*

---

[3] The defendants contend that the plaintiffs could have asserted the claims raised here in their prior suits and thus are precluded from raising them now. *Res judicata* bars the relitigation of "all matters that were or should have been adjudicated in the prior action," but it does not preclude a second action based on claims not raised by the pleadings in the first lawsuit. *Intersal, Inc. v. Hamilton*, __ NC __, 834 S.E. 2d 404, 417 (N.C. 2019); *accord Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161–62; *see also Williams*, 217 N.C. App. at 7, 719 S.E.2d at 93–94. On the face of the pleadings in the state actions, there was no mention of any of the Estates Defendants, a bid-rigging scheme, restraints on trade, or any other facts to indicate that the plaintiffs "in the exercise of reasonable diligence, could and should have brought forward" the claims raised now. *Fed. Nat'l Mortg. Ass'n*, 155 F. Supp. 3d at 549–50; *see also Intersal*, 834 S.E.2d at 417–18 (holding that claims that "cannot be properly predicated upon" the pleadings from a prior judgment are not precluded in subsequent suits). Therefore, the contention that the plaintiffs could have raised their antitrust and conspiracy claims in state court is not supported by the current record.

[4] The defendants appear to assume that the plaintiffs' Chapter 75 claim is limited to an unfair competition claim based on bid-rigging, and they did not address how the extortion allegations play into the bid-rigging claim or whether the extortion allegations were sufficient to state a separate and independent Chapter 75 unfair or deceptive trade practices claim.

Doc. 1 at ¶¶ 72–81, 93–97. Williams actually litigated and lost on the merits of his Chapter 75 extortion claim against Versa, Red Tree, and Newell, and to the extent he is asserting here a Chapter 75 claim against Red Tree, Versa, and Newell based solely on alleged extortion, that claim is identical to the one actually decided by the state court and is precluded. However, De Leon and Da Costa's extortion-based Chapter 75 claims are not barred by *res judicata* despite the identity of claims, because, as previously noted, the dismissal of those claims by the state court was without prejudice.

As to the other defendants who were not parties in the state court actions, there is no claim preclusion. North Carolina requires that "[b]oth the party asserting *res judicata* and the party against whom *res judicata* is asserted must be either parties or stand in privity with parties to the original action." *Williams*, 217 N.C. App. at 8, 719 S.E.2d at 94. Generally, "privity involves a person so identified in interest with another that he represents the same legal right." *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 417, 474 S.E.2d 127, 130 (1996).

Here, The Estates, The Estates (UT), The Estates Real Estate Group, Timbra, and Carolyn Souther were not parties in either of the previous state court actions, and the complaint does not allege facts sufficient to establish whether these defendants were in privity with any of the defendants in the state suits. Other than holding a membership in The Estates, there is nothing in the complaint to indicate that the state court defendants represent the same legal rights as the defendants in this case. Nor is there any indication that the defendants in the present suit exercised any control over the earlier litigation. *See Cty. of Rutherford v. Whitener*, 100 N.C. App. 70, 76, 394 S.E. 2d 263, 266 (1990).

There is insufficient information to determine whether the defendants who were not party to the prior state suits can prevail on the affirmative defense of *res judicata* as to the claims that were dismissed with prejudice in state court. Therefore, the motions to dismiss the complaint based on *res judicata* by The Estates, The Estates (UT), Timbra, and Carolyn Souther, are denied without prejudice.

In summary, the Court will grant the motions to dismiss Williams' Chapter 75 claim against Red Tree, Versa, and Newell to the extent he makes such a claim based solely on extortion by those three defendants, as that claim is precluded. Otherwise, as the defendants have not demonstrated that the claims in this suit were adjudicated in the prior state actions, the motions to dismiss based on *res judicata* are denied as to all other claims and parties.

### 2. Collateral Estoppel or Issue Preclusion

While *res judicata* deals with claims, collateral estoppel deals with issues, and it may apply even when a "subsequent action is based on an entirely different claim." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). A litigant defensively asserting collateral estoppel must show that (1) an earlier suit resulted in a final judgment on the merits, (2) the issue in question was identical to an issue actually litigated and necessary to the prior judgment, and (3) the party to be collaterally estopped had a full and fair opportunity to litigate the issue in the earlier action. *See Mays v. Clanton*, 169 N.C. App. 239, 241, 609 S.E.2d 453, 455 (2005) ("Defensive use of collateral estoppel means that a stranger to the judgment . . . relies upon a former judgment as conclusively establishing in his favor an issue which he must prove . . . .").

As previously discussed, there are final judgments in the state court actions brought by the plaintiffs, so the defendants have established the first element of collateral estoppel as to any issues necessary to those final judgments on the merits.

As to the second element, identity of issues, North Carolina requires that:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

*State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000). "An issue is actually litigated . . . if it is properly raised in the pleadings or otherwise submitted for determination and is in fact determined." *Propst v. N.C. Dep't of Health & Human Servs.*, 234 N.C. App. 165, 168, 758 S.E.2d 892, 895 (2014). "A very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical; if they are not identical, then the doctrine of collateral estoppel does not apply." *Williams*, 217 N.C. App. at 6, 719 S.E.2d at 93.

The defendants do not specifically identify any particular issue or issues they contend are precluded. Rather, they broadly contend that all of the plaintiffs' present claims are precluded entirely because of issue preclusion. *E.g.*, Doc. 13 at 8–13. This conflates the roles of issue preclusion and claim preclusion. *See Intersal*, 834 S.E.2d at 416 n.5 (noting that while similar, the doctrines are not interchangeable). Furthermore, the state court orders do not address in detail which issues were actually litigated and necessary to the judgments. *See* Docs. 13-2, 13-4. In the absence of a clear showing by

the defendants that a specific issue is precluded, they cannot prevail on this affirmative defense at this stage of the litigation, and the motion to dismiss on this basis will be denied.[5]

## C. Election of Remedies

The defendants also move to dismiss the claims brought by the plaintiffs under the doctrine of election of remedies. *E.g.*, Doc. 13 at 13–14. "The doctrine of election of remedies refers to situations where an individual pursues remedies that are legally or factually inconsistent." *Artis v. Norfolk & W. Ry. Co.*, 204 F.3d 141, 143 (4th Cir. 2000). Its basic purpose "is to prevent a plaintiff from obtaining a windfall recovery, either by recovering two forms of relief that are premised on legal or factual theories that contradict one another or by recovering overlapping remedies for the same legal injury." *Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 293 (4th Cir. 2010). "However, election of remedies is not required by the possibility of double recovery. Judicial remedies can be structured to avoid such a windfall." *Pension Benefit Guar. Corp. v. Don's Trucking Co., Inc.*, 309 F. Supp. 2d 827, 834 (E.D. Va. 2004) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 n.14 (1974)).

---

[5] It seems highly unlikely that the federal antitrust and state unfair competition claims in this lawsuit involve an issue identical to one actually litigated and necessary to the earlier judgments in state court, for the same reasons previously discussed in connection with claim preclusion. The same is true for the plaintiffs' unjust enrichment claim, at least on the current record and briefing. *See* Docs. 13-1 to 13-4; s*ee also Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 695–96 (M.D.N.C. 2011) (applying North Carolina law and discussing elements of unjust enrichment). And De Leon's and Da Costa's Chapter 75 claim was dismissed without prejudice. If Williams is making a Chapter 75 unfair and deceptive trade practices claim against the parties who were not defendants in his state court action based on extortion, there may be some issue preclusion. But the record is not clear enough to dismiss any issues at this early stage of the proceedings.

Here, the plaintiffs seek damages and injunctive relief arising out of the alleged bid-rigging scheme, as well as alleged extortion. Doc. 1 at 25–26. In state court, the plaintiffs sought or are seeking damages and injunctive relief arising out of the foreclosure sale of their properties and extortion. There is nothing inconsistent about these remedies. Threats of double recovery are more appropriately addressed by the Court following a judgment if necessary.

### D. Abstention

The defendants also ask the Court to abstain from hearing the claims pled by the plaintiffs. *E.g.*, Doc. 13 at 14–16.[6] The doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and can be justified only in exceptional situations with the "clearest of justifications." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 819 (1976). Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at

---

[6] The Fourth Circuit has not decided whether a court entertaining a *Colorado River* abstention challenge should apply a Rule 12(b)(1) or 12(b)(6) standard. District courts have allowed other forms of abstention challenges to be raised in both a Rule 12(b)(1) motion and a Rule 12(b)(6) motion. *See CMH Homes, Inc. v. Browning*, No. 2:14-cv-12762, 2015 WL 1276729, at *6 n.5 (S.D. W. Va. Mar. 19, 2015) (collecting cases and noting that *Younger* abstention challenges do not arise from a lack of subject matter jurisdiction but may be raised in both Rule 12(b)(1) and 12(b)(6) motions); *but see Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 384–85 (W.D.N.Y. 2018) ("A motion to dismiss based on *Colorado River* is considered as a motion to dismiss . . . pursuant to Rule 12(b)(1)."); *Jin Won Lee v. First Tek, Inc.*, No. 12-cv-4571, 2013 WL 1195714, at *1 (N.D. Ill. Mar. 20, 2013) (same). Here, the defendants have brought both 12(b)(1) and 12(b)(6) challenges, and, whether a 12(b)(1) or 12(b)(6) standard were to be applied, the outcome would be the same.

817–18.  Whether to abstain from exercising jurisdiction is within the discretion of the district court.  *N.C. State Conf. of NAACP v. Cooper*, 397 F. Supp. 3d 786, 794 (M.D.N.C. 2019).[7]

Abstention does not involve an *ad hoc* judicial balancing of state and federal interests in a case; instead, courts "must consider whether a specific abstention doctrine applies."  *Haak Motors LLC v. Arangio*, 670 F. Supp. 2d 430, 434 (D. Md. 2009).  While not clear, the defendants seem to advocate *Colorado River* abstention, which is only appropriate when "a federal case duplicates contemporaneous state proceedings and wise judicial administration . . . clearly favors abstention."  *Vulcan*, 297 F.3d at 340–41.

This case does involve contemporaneous state proceedings between some of the same parties, but this is not a case that clearly favors abstention.  First, this forum is not inconvenient to the majority of the parties in this case.  The plaintiffs all reside within North Carolina, and all of the defendants have significant North Carolina connections.  Doc. 1 at ¶¶ 5–19.[8]  Second, the claims raised here do not present a significant threat of

_____

[7] Courts may consider the convenience of the federal forum, the desire to avoid piecemeal litigation, the relevant order in which jurisdiction was obtained, whether state or federal law provides the rule of decision on the merits, the adequacy of the state proceeding to protect the parties' rights, and whether the subject matter of the litigation involves property where the first court may assume exclusive jurisdiction.  *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002).

[8] The Estates, LLC is a North Carolina limited liability company with its principal office in Cary, North Carolina.  Doc. 1 at ¶¶ 1, 8.  The Estates (UT), LLC is a Utah LLC registered in North Carolina as a foreign LLC with its principal office in Cary.  *Id.* at ¶ 9.  The Estates Real Estate Group, LLC is a Utah LLC registered in North Carolina as a foreign LLC with its principal office in Greensboro, North Carolina.  *Id.* at ¶ 10.  Carolyn Souther and Tonya Newell are both North Carolina citizens.  *Id.* at ¶¶ 13, 15.  Timbra of North Carolina, LLC, Versa Properties, LLC, Red Tree Holdings, LLC, and Maldives LLC are all North Carolina limited liability companies.  *Id.* at ¶¶ 11, 17–19.

piecemeal litigation. The present action involves claims, parties, and underlying facts not present in the state proceedings. Furthermore, the only currently ongoing state court litigation concerns claims by Williams to set aside the foreclosure sale of his property and for injunctive relief in connection with that sale. While this case arises out of facts related to the foreclosure sale, the plaintiffs do not seek a determination from the Court about the foreclosure, nor do they ask the Court to set it aside. Third, the plaintiffs have asserted a Sherman Act claim, and this court is an appropriate forum for resolving a dispute arising under federal law.

Therefore, the defendants' requests that the Court abstain from hearing or stay this proceeding are denied.

### E. Failure to state an antitrust claim

In addition to the procedural bars asserted by the defendants, they also contend that the plaintiffs have failed to state a Sherman Act claim upon which relief may be granted. *E.g.*, Doc. 13 at 16–22. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft*, 556 U.S. at 678–79. While motions to dismiss for failure to state a claim under the Sherman Act "at the pre-discovery, pleading stage . . . are generally limited to certain types of glaring deficiencies," *E.I. du Pont de Nemours & CO. v. Kolon Indus., Inc.*, 637 F.3d 435, 444

(4th Cir. 2011), the plaintiffs must plead facts sufficient to identify each element of the antitrust violation, and "the allegations must be stated in terms that are neither vague nor conclusory." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002).

In order to establish a violation of § 1 of the Sherman Act, a plaintiff must allege: "(1) a contract, combination, or conspiracy; that (2) imposed an unreasonable restraint of trade." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 704 (E.D. Va. 2003). If the plaintiffs are able to prove a violation of § 1, they then must prove an "antitrust injury, which is to say an injury of the type the anti-trust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Dickson*, 309 F.3d at 202–203 (emphasis removed).

First, the plaintiffs have pled sufficient facts to allege a conspiracy in violation of § 1 of the Sherman Act. The plaintiffs have alleged that the Estates Defendants organized and operated a scheme where they sold membership in The Estates and provided members with access to an internet database listing North Carolina foreclosure sales in furtherance of this conspiracy. Doc. 1 at ¶¶ 25–28. The Estates Defendants and the other defendants entered into agreements where only one member would bid on any one property listed on The Estates database, whom the Estates Defendants would select and would then send one of its Acquisition Agents to bid on that member's behalf. *Id.* at ¶¶ 30–54. The Estates Defendants received payment for every acquired property as well as a share of profits from any sale. *Id.* at ¶ 28. The plaintiffs have also alleged that members were sometimes required by the Estates Defendants to set up corporate entities to bid on the foreclosure sales and were only permitted to use agents chosen by the

19

Estates Defendants in an effort to obfuscate the conspiracy. *Id.* at ¶¶ 31–35. The defendants have not explained why these actions, which the Court must presume to be true at this stage, do not constitute an agreement or conspiracy to rig bids and a *per se* violation of § 1. *See United States v. W.F. Brinkley & Son Const. Co.*, 783 F.2d 1157, 1160 (4th Cir. 1986) ("[A]ny agreement between competitors pursuant to which contract offers are to be submitted to or withheld from a third party constitutes bid rigging *per se* violative of [§ 1]."); *see, e.g.*, *United States v. Joyce*, 895 F.3d 673, 677–78 (9th Cir. 2018) (collecting cases).

The plaintiffs have also alleged sufficient facts to demonstrate that this conspiracy imposed an unreasonable restraint on trade.[9] In order to establish a restraint on trade, the plaintiffs must show "that the alleged anticompetitive conduct occurred in interstate commerce, or . . . that the conduct, though wholly intrastate, had a substantial effect on interstate commerce." *Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994). Here, the plaintiffs have alleged that some of the defendants are incorporated in other states, *see supra* note 7; that The Estates' database is available on the internet, which is transmitted and accessible across state lines; that The Estates Acquisition Assistants operated in South Carolina; and that the conspirators worked with out-of-state lenders in furtherance of the conspiracy. Doc. 1 at ¶¶ 52, 110; *see United States v. Romer*, 148 F.3d 359, 365–66 (4th Cir. 1998) (finding local auction-rigging

---

[9] Because an alleged bid-rigging conspiracy is *per se* violative of § 1, the conspiracy is presumed to be unreasonable and does not require an in-depth analysis of the market, the effects of the agreement on competition, or its purpose. *Continental Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 562–63 (E.D. Va. 2000).

activities satisfied interstate commerce requirement where out-of-state lender initiated antitrust activities), *recognized as abrogated on other grounds by United States v. Strassini*, 59 F. App'x 550, 552 (4th Cir. 2003). These allegations are sufficient to plausibly assert a nexus with interstate commerce and to survive the lenient standards required for antitrust claims at the Rule 12(b)(6) stage. *See Cloverleaf Enters., Inc. v. Md. Thoroughbred, Horsemen's Ass'n, Inc.*, 730 F. Supp. 2d 451, 460 (D. Md. 2010) (noting that "in antitrust cases dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly").

Finally, the plaintiffs have alleged facts necessary to demonstrate an antitrust injury as a result of the alleged conspiracy. An "antitrust injury" is one which the antitrust laws were intended to prevent and that flows from the illegal nature of the defendants' actions." *Dickson*, 309 F.3d at 202–203. "[B]ecause the antitrust laws are intended to protect competition, and not simply competitors, only injury caused by damage to the competitive process may form the basis of an antitrust claim." *Continental Airlines*, 120 F. Supp. 2d at 569.

"[T]he existence of an antitrust injury is not typically resolved through motions to dismiss." *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995) (collecting cases); *see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 460 (E.D. Va. 2009) ("[A]n analysis of antitrust injury . . . [is] more properly conducted after discovery."). And here, the plaintiffs have alleged a scheme between the defendants with the express purpose and effect of suppressing the price paid for properties sold through foreclosure by bid-rigging. The plaintiffs have alleged that

members of The Estates agreed with one another to refrain from bidding on the same properties, thus restraining the competitive process. More specifically, the Williams and De Leon properties were allegedly acquired through this scheme, which prevented members of The Estates from competing with one another. Doc. 1 at ¶ 110. This kind of horizontal price-fixing represents precisely the kind of injury the antitrust laws were intended to prevent. *See, e.g.*, *Joyce*, 895 F.3d at 677–78.

The defendants contend that the plaintiffs have failed to demonstrate an antitrust injury because they do not allege who else would have bid on the foreclosed properties and in what amount. *E.g.*, Doc. 13 at 18–21. Whether this is required on these facts is not clear, and in any event the facts alleged certainly allow an inference that the plaintiffs received less money than they would have absent the bid-rigging.

Next, the defendants assert that the plaintiffs have failed to establish a connection between the acts of the defendants and the plaintiffs. *Id.* at 21–22. But the complaint alleges that the defendants were engaged in the same conspiracy to rig bids and details the roles that they played both generally within this conspiracy and specifically as to the Williams and De Leon properties. *See* Doc. 1. This argument is without merit.

The plaintiffs have alleged sufficient facts that, taken as true, support a plausible antitrust claim. Therefore, the defendants' motions to dismiss for failure to state a claim under the Sherman Act are denied. As the defendants make no separate argument as to the plaintiffs' state law antitrust claim, the motion to dismiss that claim will be denied for the same reasons. *See ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d

42, 48 (4th Cir. 1983) ("[P]roof of conduct violative of the Sherman Act is proof sufficient to establish a violation of the North Carolina Unfair Trade Practices Act.").

### F. Failure to State a Claim for Unjust Enrichment

One defendant, The Estates Real Estate Group, moves to dismiss the plaintiffs' unjust enrichment claim for failure to state a claim, and the plaintiffs have not contended otherwise. Because the plaintiffs did not respond to or otherwise challenge The Estates Real Estate Group's motion to dismiss this claim, the Court deems this claim abandoned and it will be dismissed. *See, e.g., O.V. v. Durham Pub. Schs. Bd. Of Educ.*, No. 1:17CV691, 2018 WL 2725467, at * 22 (M.D.N.C. Jun 6, 2018) (noting that when a party fails to offer an argument against dismissal of a claim in their opposition that the court should deem the claim abandoned and dismiss it).

### G. Corporate Immunity and Intracorporate Immunity

Finally, defendant Carolyn Souther moves to dismiss all claims against her, asserting that she is shielded from liability by North Carolina's corporate immunity laws. Doc. 34 at 8–9. Under N.C. Gen. Stat. § 57D-3-30, "[a] person who is an interest owner, manager, or other company official is not liable for the obligations of the LLC solely by reason of being an interest owner, manager, or other company official." The complaint does not establish on its face that Souther is entitled to this affirmative defense, which is better resolved on a factual record.[10]

---

[10] The complaint alleges that Souther is a member of the Estates who at times works on behalf of the Estates, *see* Doc. 1 at ¶¶ 16, 72, 93, but it does not establish or even allege that Souther is an owner, manager, or other company official. Nor has Souther addressed how this state law defense applies to the federal Sherman Act claim.

## Conclusion

The Court has jurisdiction over this federal question case, and there is no good reason to abstain. The plaintiffs have not adequately alleged a claim for unjust enrichment against The Estates Real Estate Group, and the motion to dismiss that claim will be granted. Brian Williams has already litigated a Chapter 75 unfair and deceptive trade practices claim against Red Tree, Versa, and Tonya Newell based solely on attempted extortion by those defendants, and to the extent the complaint in this case asserts such an identical claim against those defendants, it is barred by *res judicata*.

The same is not true of De Leon and Da Costa, as their state court Chapter 75 extortion claim was dismissed without prejudice. The defendants' motions to dismiss on collateral estoppel are denied without prejudice, because the defendants have not clearly identified which issues they contend are precluded or shown that they were necessarily decided against plaintiffs in state court. The plaintiffs have plausibly alleged that the defendants engaged in a conspiracy in furtherance of a bid-rigging scheme in violation of § 1 of the Sherman Act and N.C. Gen. Stat. § 75-1.1 (unfair competition), and the defendants' motion to dismiss those claims will be denied. The remaining issues raised by the defendants are without merit.

In sum, the plaintiffs' Sherman Act claim and Chapter 75 unfair competition claim based on bid-rigging will go forward against all defendants. The plaintiffs' unjust enrichment claim against all defendants except The Estates Real Estate Group will go forward. Williams' Chapter 75 unfair and deceptive practices claim based solely on extortion will go forward against all defendants except Red Tree, Versa, and Tonya

24

Newell.  De Leon and Da Costa's Chapter 75 unfair and deceptive practices claim based on extortion will go forward against all defendants.

It is **ORDERED** that:

1.  The motion to dismiss filed by the defendant Maldives, LLC, Doc. 13, is **DENIED**.

2.  The motions to dismiss filed by the defendants Tonya Newell, Red Tree Holdings, LLC, and Versa Properties, LLC, Docs. 16, 19, 22, are **GRANTED IN PART** and to the extent Williams asserts a Chapter 75 claim based solely on extortion by Newell, Red Tree, and Versa, that claim is **DISMISSED**. Their motions to dismiss are otherwise **DENIED**.

3.  The motions to dismiss filed by the defendants The Estates, LLC, Timbra of North Carolina, LLC, and The Estates (UT), LLC, Docs. 25, 28, 31, are **DENIED**.

4.  The motion to dismiss filed by the defendant Carolyn Souther, Doc. 34, is **DENIED**.

5.  The motion to dismiss filed by the defendant The Estates Real Estate Group, LLC, Doc. 37, is **GRANTED IN PART** and the unjust enrichment claim against The Estates Real Estate Group is **DISMISSED**. The motion to dismiss is otherwise **DENIED**.

This the 24th day of February, 2020.

_____
UNITED STATES DISTRICT JUDGE