IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRIAN C. WILLIAMS, MARICOL            )
YUNAIRA TINEO DE LEON, JAIRO          )
VENSRIQUE LEON DA COSTA, and          )
others similarly situated,            )
                                      )
            Plaintiff,                )
                                      )
     v.                               )         1:19-CV-1076
                                      )
THE ESTATES LLC, THE ESTATES          )
REAL ESTATE GROUP, LLC,               )
TIMBRA OF NORTH CAROLINA,             )
LLC, VERSA PROPERTIES LLC,            )
RED TREE HOLDINGS, LLC,               )
MALDIVES, LLC, CAROLYN                )
SOUTHER, et al.,                      )
                                      )
            Defendant.                )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiffs, Brian Williams, Mike Gustafson, Maricol De Leon, and Jairo Da

Costa, lost their homes in three separate foreclosure sales and allege they received lower

prices because of a bid-rigging conspiracy organized by the defendants. They seek to

certify a nationwide Sherman Act class and a North Carolina subclass of similarly

situated individuals who lost their homes in foreclosure proceedings where a member of

the defendant organization, The Estates, was the highest bidder. The plaintiffs have not

affirmatively demonstrated that the antitrust element of "impact" can be proven at trial

with common evidence and have thus failed to meet the predominance requirement of

Rule 23(b)(3). The only evidence the plaintiffs provided on this point is untimely and it

would be unfairly prejudicial to the defendants to consider it. The motion for class certification and the motion for leave to file the declaration of Dr. DeForest McDuff will both be denied.

## I. Facts

For purposes of the motion for class certification, the Court makes the following findings of fact. Additional facts are set forth as appropriate during discussion of the class action requirements.

The Estates solicit individuals and businesses across North Carolina to become members of its organization. Doc. 104 at ¶ 19. The Estates maintains a database of properties in foreclosure and assists members and their related entities who wish to bid on these properties. *Id.* at ¶¶ 19–21. Members pay a monthly user fee to access the database, as well as an "acquisition fee" for any property acquired through the database, and they must split any profits with The Estates. *Id.* at ¶ 22. Membership in The Estates also requires members to use real estate agents, brokers, and closing attorneys selected or approved by The Estates. *Id.* at ¶¶ 26–27. Members must establish separate companies to participate in each foreclosure sale. *Id.* at ¶ 28.

The plaintiffs allege and have offered significant evidence that members in The Estates network agree that no more than one member may bid on a given property in a foreclosure sale. *Id.* at ¶¶ 33, 36–37; Doc. 104-8 at 2; Doc. 65 at ¶¶ 4–5. Members interested in a property indicate their desire to bid on that property, whereupon an Estates "acquisition assistant" determines who among the interested members will be allowed to submit a bid on the property. Doc. 104 at ¶¶ 39–41, 43. The member chosen to bid on a

2

particular property then sets up a limited liability company for the sole purpose of making the bid. *Id.* at ¶ 42. Next, an acquisition assistant, acting on behalf of the member and the newly formed LLC, attends the foreclosure sale and bids on the property. *Id.* at ¶¶ 43–44, 48; Doc. 65 at ¶ 6.

The named plaintiffs owned homes in North Carolina that were sold in foreclosure proceedings to an Estates member, or to an entity created by an Estates member, using the services provided by The Estates. Doc. 104 at ¶ 3; *see, e.g.*, Doc. 1-6; Doc. 1-12.

## II.    The Pending Class Certification Motion

The Court denied the plaintiffs' first motion for class certification, Doc. 56, without prejudice to a renewal after discovery. Doc. 70. The parties presented a scheduling plan, Doc. 72, which the Magistrate Judge approved. Doc. 73. Following discovery limited to class certification issues, the plaintiffs filed this renewed motion for class certification, Doc. 86, and a motion to amend the complaint. Doc. 85. The Court granted the motion to amend, Doc. 103, and will treat the amended complaint, Doc. 104, as the operative complaint for purposes of evaluating the renewed motion for class certification. Doc. 86.

The amended complaint identifies over 100 prospective class members in North Carolina, South Carolina, and Texas, with the potential for more.[1] Doc. 104 at ¶ 97(a).

---

[1] The numbers of potential class members provided by the named plaintiffs are not completely consistent across filings, but they fall within a fairly narrow range. The amended complaint alleges that 137 prospective class members have been identified from documents produced by the defendants. Doc. 104 at ¶ 97; Doc. 81-1 (showing around 101 foreclosed North Carolina properties); Doc. 87-2 (showing 15 foreclosed Texas and South Carolina properties

3

The renewed motion for class certification asks the Court to certify this group into two classes. Doc. 86 at ¶¶ 2–3. First, the plaintiffs ask the Court to certify a nationwide class seeking redress for their claims under the Sherman Act. This class would be defined as:

> All persons and entities whose properties were sold through foreclosure proceedings at which a Member of the Estates was the high bidder and at which the Estates placed the bid deposit on their behalf.

*Id.* at ¶ 2; *see* Doc. 104 at ¶ 95. Second, the plaintiffs seek to certify a subclass to pursue North Carolina state law claims. This North Carolina subclass would be defined as:

> All persons and entities whose properties were sold through foreclosure proceedings in North Carolina at which a Member of the Estates was the high bidder and at which the Estates placed the bid deposit on their behalf who have standing to bring North Carolina state law claims.

Doc. 86 at ¶ 3; *see* Doc. 104 at ¶ 95. This subclass would pursue both a state antitrust claim under N.C. Gen. Stat. § 75-1 and a state unjust enrichment claim. Doc. 86 at ¶ 3.

### III.    Class Action Requirements

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To certify a class, the plaintiffs "must affirmatively demonstrate [their] compliance" with Federal Rule of Civil Procedure 23. *Wal-Mart*

---

purchased by an Estates member). In one brief, the plaintiffs assert the existence of 120 North Carolina plaintiffs, six South Carolina plaintiffs, and nine Texas plaintiffs—totaling only 135. Doc. 87 at 7. In another, this number shifts to 144 total plaintiffs across the three states, Doc. 100 at 4, but the exhibits filed to support this number, Docs. 100-1, 100-2, 100-3, show that many of the identified North Carolina properties were owned by the same person or entity, *see, e.g.*, Doc. 100-1 at 2 (showing Kiraboltam, LLC as owner of four foreclosed properties), likely lowering the 144-class-member estimate.

Case 1:19-cv-01076-CCE-JLW   Document 160   Filed 04/22/21   Page 4 of 13

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Rule 23 does not set forth a mere pleading standard." *Id.* The plaintiffs "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.*

As a threshold matters, Rule 23 requires the proposed class members to be readily identifiable and the proposed class representatives to be members of the proposed class. *See* Fed. R. Civ. P. 23(a); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (recognizing "implicit threshold" requirements). The plaintiffs must then establish that the class satisfies all four enumerated requirements of Rule 23(a) and fits into at least one of the three subsections of Rule 23(b). *Comcast Corp.*, 569 U.S. at 33. The Court must rigorously assess the proffered evidence, *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 359 (4th Cir. 2004), but has "a wide range of discretion" in evaluating whether the Rule 23 requirements have been met. *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 65 (4th Cir. 1977) (cleaned up); *see Reiter v. Sonotone Corp.,* 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them" as to the "certification and management of potentially cumbersome" class actions). Where necessary, the Court must "resolve a genuine legal or factual dispute relevant to determining the requirements." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). Here, the plaintiffs rely on Rule 23(b)(3), *see* Doc. 87 at 28, which requires that common issues predominate and that a class action is the superior method for resolution of the issues. Fed. R. Civ. P. 23(b)(3).

The predominance requirement is satisfied when "questions of law or fact common to the members of the class predominate over any questions affecting only

5

individual members." *Gariety*, 368 F.3d at 362; *see also* Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up).

## IV.    Analysis

The Court need not discuss all the requirements that the plaintiffs have met, which are many.  The plaintiffs have failed to show that the antitrust element of impact can be proven by common class-wide proof, which means that they cannot show that common issues predominate.  Without predominance, the motion must be denied.

The predominance inquiry begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804, 809 (2011).  To establish a private antitrust claim, a plaintiff must prove three elements:  (1) a violation of the antitrust laws—here, 15 U.S.C. § 1 and N.C. Gen. Stat. § 75-1; (2) individual injury, or impact, resulting from that violation; and (3) measurable damages. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 344 (D. Md. 2012).  "In antitrust cases, impact often is critically important for the purpose of evaluating Rule 23(b)(3)'s predominance requirement because it is an element of the claim that may call for individual, as opposed to common, proof." *In re Hydrogen Peroxide*, 552 F.3d at 311.

Case 1:19-cv-01076-CCE-JLW   Document 160   Filed 04/22/21   Page 6 of 13

Two of the elements require little discussion. If the defendants engaged in an illegal bid-rigging conspiracy to suppress the price of properties purchased through foreclosure sales, that bid-rigging conspiracy is a *per se* antitrust violation.[2] *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018) ("Bid rigging is . . . a *per se* violation of the Sherman Act."). "Such agreements or practices are conclusively presumed to be unreasonable because of their pernicious effect on competition and lack of any redeeming virtue." *See id.* at 676 (cleaned up). Whether the defendants so conspired "can be resolved for each class member in a single hearing" and does not "turn[] on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson-Pilot Life Ins.*, 445 F.3d 311, 319 (4th Cir. 2006) (cleaned up). The evidence is common to all class members and will not require individualized evidence. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013).

Conversely, as the plaintiffs admit, "there is an individualized component to the damages suffered by the class." Doc. 87 at 22; *see Deiter*, 436 F.3d at 467 (discussing the requirement that the plaintiffs must establish measurable damages); *In re Titanium Dioxide*, 284 F.R.D. at 348 (same). But individual questions as to damages do not necessarily defeat an antitrust class certification. *See, e.g., Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003) ("[T]he need for individualized proof of damages

---

[2] *See, e.g., United States v. W.F. Brinkley & Son Const. Co.*, 783 F.2d 1157, 1160 (4th Cir. 1986) (holding that bid rigging is a *per se* antitrust violation); *ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 48 (4th Cir. 1983) ("[P]roof of conduct violative of the Sherman Act is proof sufficient to establish a violation of the North Carolina Unfair Trade Practices Act.").

alone will *not* defeat class certification."); *Soutter v. Equifax Info. Servs.*, 307 F.R.D. 183, 214 (E.D. Va. 2015) (noting that courts will typically certify a class if "common questions predominate regarding liability").

The plaintiffs' plan to address the third element, antitrust injury or "impact" from the bid-rigging conspiracy, requires more discussion. A *per se* antitrust violation only means the antitrust law has been violated; it "does not indicate whether a private plaintiff has suffered antitrust injury and thus whether he may recover damages under § 4 of the Clayton Act." *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 342 (1990). At the class certification stage, the plaintiffs must show that antitrust impact is "capable of proof at trial through evidence that is common to the class rather than individual to its members" in order to meet the predominance requirement. *In re Hydrogen Peroxide*, 552 F.3d at 311–12; *accord Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 302 (5th Cir.2003) ("[W]here fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance.").

Whether a class member has suffered an "injury-in-fact" as a result of the antitrust violation alleged here is a question of fact with obvious individual components. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 106 (2d Cir. 2007) (discussing the "familiar factual question" of whether the plaintiff suffered an "injury-in-fact"); *In re Titanium Dioxide*, 284 F.R.D. at 344 n.13 (same). The price obtained for a piece of residential real estate at a foreclosure sale would ordinarily be affected by many factors specific to the piece of property, including the amount of the

8

mortgage and other pending liens, the location, and the extent of needed repairs. The price would also typically be affected by external influences like the state of the economy, opportunities for profitable resale, and the number of bidders at foreclosure. The Estates did not control the market for foreclosure properties, and unlike some price-fixing or bid-rigging schemes, there is no obvious reason to think that the agreement resulted in a lower price at every single foreclosure. For example, for any particular class property, only one Estates member may have been interested, or there may have been several other non-Estates bidders who raised the price so high that any agreement between defendants was essentially irrelevant.

Despite the obvious individual issues, the plaintiffs barely addressed antitrust impact; indeed, in their briefs in support of their initial motion, *see* Doc. 57 at 29–30; Doc. 66 at 16–17, and their renewed motion, *see* Doc. 87 at 28–30; Doc. 100 at 8–9, the plaintiffs devoted little more than a page to the entire predominance inquiry. The plaintiffs touched on impact in their discussion of Rule 23(a)(2) commonality, where they correctly noted that a civil antitrust claim requires an additional showing of an "injury causally linked to an illegal presence in the market." Doc. 87 at 20–21. But other than asserting that the defendants' "scheme was highly organized and impacted dozens of foreclosure auctions," *id.* at 21, they did not explain how they intend to establish at trial, using common proof, that <u>every</u> foreclosure auction in which an Estates member was the winning bidder caused antitrust injury to a class member.

The plaintiffs seem to assume that the existence of the bid-rigging scheme is enough to show injury. But proof that the conspiracy exists is not the same as proof that

9

each class member was injured-in-fact by that conspiracy. *Atl. Richfield Co.*, 495 U.S. at 342.

Whether antitrust impact can be shown by common proof is, as the Court has already highlighted, "critically important for the purpose of evaluating Rule 23(b)(3)'s predominance requirement." *In re Hydrogen Peroxide*, 552 F.3d at 311. At the certification stage the Court must rigorously assess "the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial." *Id.* at 312. The plaintiffs' initial briefings and submissions did not meet this requirement.

In response to the Court's request for supplemental briefing directed to the predominance issue and antitrust impact, Doc. 133, the plaintiffs filed a brief, Doc. 144, and a separate motion for leave to file a declaration from an expert economist, Dr. DeForest McDuff, setting forth a summary of how impact and damages could be proven with common evidence. Doc. 145 (motion); Doc. 145-1 (Dr. McDuff's declaration). The defendants reiterated their concerns over the individual issues related to causation and noted that they would be significantly prejudiced if the Court considered Dr. McDuff's declaration. Doc. 148 at 4–6; Doc. 149; Doc. 150 at ¶¶ 1–2.

Under the joint discovery plan and scheduling order, the plaintiffs did not envision expert testimony would be necessary at this stage, and expert disclosure was not scheduled to begin until after class certification. *See* Doc. 72 at 4 (agreeing to complete expert discovery within seven months, and disclosure within 90 days, of the Court's ruling on class certification); Doc. 73 (approving the discovery schedule). There is

nothing to show that the defendants had any notice of Dr. McDuff's report until it was filed in response to the Court's request for a short supplemental brief. There is also significant authority suggesting that the Court must conduct a *Daubert* analysis when challenged expert testimony is necessary to meet the requirements for class certification.[3] Dr. McDuff's declaration is quite short, with little detail, and it raises many questions about his methodology and otherwise.[4] The defendants have had no opportunity to depose Dr. McDuff about his findings or methods. Nor have they had time or

---

[3] No controlling precedent dictates whether a district court must conduct a *Daubert* analysis at the class certification stage or how focused or full that analysis should be. *See Childress v. JPMorgan Chase & Co.*, No. 5:16-CV-298-BO, 2019 WL 2865848, *2–3 (E.D.N.C. July 2, 2019); 3 *Newberg on Class Actions* § 7:24 (5th ed. Dec. 2020 Update). The Supreme Court has suggested that *Daubert* likely applies to challenged expert testimony at this stage, *Dukes*, 564 U.S. at 354, but the courts of appeals have taken different approaches to the issue. *Compare In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) (requiring a district court to rule on challenges to an expert's qualifications if the expert's report is "critical to class certification"), *and Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) (same), *with In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 612 (8th Cir. 2011) (approving a certification order without a full *Daubert* analysis and explaining the impracticalities of requiring a district court to consider the admissibility of evidence at the class certification stage), *and Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (finding a district court abused its discretion by only reviewing admissible evidence in its class certification analysis). The Court has previously found the rationale in *In re Blood Reagents* and *Am. Honda Motor Co.* to be persuasive. *See Krakauer v. Dish Network, LLC,* No. 1:14-CV-333, 2015 WL 5227693, at *5 (M.D.N.C. Sept. 8, 2015).

[4] While Dr. McDuff's testimony might be sufficient to find a common method of proving antitrust impact at trial, that is not a sure thing. To provide an example, it appears that his "but-for" method only works if at least two Estates members expressed an interest in bidding on a particular property. *See* Doc. 145-1 at 19–22 (determining a "but-for winning bid" for each property as a partial function of "Additional Estates bidders" who expressed interest in a property but did not ultimately participate in the bidding process because of the alleged conspiracy). But what about members of the class whose properties were only ever subject to one expression of interest from an Estates member? And wouldn't this require individual proof to determine whether more than one Estates member was interested?

11

opportunity to locate and consult an expert of their own, much less to offer contradictory expert opinion testimony.

The late addition of this expert testimony to establish one of the clear requirements for class certification would be unfairly prejudicial to the defendants. The motion for leave to file Dr. McDuff's report will therefore be denied as untimely and as unfairly prejudicial to the defendants.

Without Dr. McDuff's testimony, the plaintiffs have not offered a sufficient plan to provide a common method of proving antitrust impact at trial. Without a common method to prove impact at trial, an individual assessment of whether and how the defendants' scheme affected each class member's foreclosure sale will be required—in addition to individual issues of damages. *See* discussion *supra*. Given these individual issues, common questions of law and fact do not predominate, and the motion for class certification will be denied.

## V.    Other Matters

In the amended complaint, Doc. 104, the plaintiffs named over 100 additional defendants who were alleged to be a part of the bid-rigging conspiracy organized by The Estates. Many of these defendants have nothing to do with the claims of the named plaintiffs and only have to do with the claims of putative class members. It seems appropriate, then, that the defendants who are unrelated to the foreclosures of the named plaintiffs should be dismissed.

The parties shall immediately meet and confer. No later than May 10, 2021, the parties shall file a joint submission containing a list of the specific defendants that the

parties agree should be removed from the case in light of the class certification decision. If there are disagreements as to certain defendants, the parties shall suggest an appropriate way to address and resolve the issue.

It is **ORDERED:**

1. That the plaintiffs' motion for leave to file declaration of DeForest McDuff, Doc. 145, is **DENIED**;

2. That the plaintiffs' second motion to certify class, Doc. 86, is **DENIED**; and

3. That the parties shall meet, confer, and then file a joint submission on or before May 10, 2021, identifying which defendants are unrelated to the claims of the named plaintiffs and the best mechanism for dismissing the claims against them.

This the 22nd day of April, 2021.

_____
UNITED STATES DISTRICT JUDGE

13