IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRIAN C. WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-CV-1076 |
| | ) | |
| THE ESTATES LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs prevailed at trial on each of their claims arising from the defendants' unlawful bid-rigging scheme, including claims for violations of the Sherman Act and North Carolina's Chapter 75. The Court has since entered a final money judgment and a permanent injunction that enjoins the defendants from future anticompetitive conduct. The plaintiffs have filed an unopposed motion for attorneys' fees incurred during the litigation. Because attorneys' fees are appropriate under state and federal law and the fees proposed by the plaintiffs are reasonable, the motion will be granted.

I.  Background

This case involved an unlawful bid-rigging scheme in which the defendants conspired to limit competitive bidding at public foreclosures on the homes of the plaintiffs and others. The plaintiffs asserted federal and state antitrust claims, Chapter 75 claims, and unjust enrichment claims stemming from this conduct and prevailed on each claim at trial. Doc. 235. The Court has discussed the facts and law in multiple orders,

*see, e.g.*, Docs. 160, 208, 244, and will repeat or recite facts here only as they are relevant to the pending motion.

## II. Analysis

### a. Attorneys' Fees Under the Clayton Act

Under the Clayton Act, 15 U.S.C. § 15, the court shall award "the cost of suit, including a reasonable attorney's fee," to any person injured by a violation of federal antitrust laws, including the Sherman Act, *id.* § 1. Similarly, when a plaintiff substantially prevails in a federal antitrust action for injunctive relief "the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff." *Id.* § 26.

The plaintiffs prevailed at trial on all their claims against each defendant, including their Sherman Act claims, Doc. 235, and obtained a permanent injunction prohibiting the defendants from future anticompetitive conduct. Doc. 246. They are substantially prevailing parties who are entitled to reasonable attorney's fees. *See, e.g.*, *City of Chanute v. Williams Nat. Gas Co.*, 820 F. Supp. 1290, 1291 (D. Kan. 1993) (holding a plaintiff seeking attorney's fees under 15 U.S.C. § 26 "must show at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the desired result") (cleaned up), *aff'd*, 31 F.3d 1041 (10th Cir. 1994).

### b. Attorneys' Fees Under Chapter 75

Under N.C. Gen. Stat. § 75-16.1, the presiding judge has discretion to "allow a reasonable attorney fee" to the attorney "representing the prevailing party," if "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an

2

unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." The attorney fee is "to be taxed as a part of the court costs and payable by the losing party." *Id.* A Chapter 75 attorneys' fee award must be supported by findings of fact, both as to entitlement to the fee and the awarded amount. *See McKinnon v. CV Indus., Inc.*, 228 N.C. App. 190, 199, 745 S.E.2d 343, 350 (2013).

### i. Willfulness

In the Chapter 75 context, "[a]n act or a failure to act is 'willfully' done if done voluntarily and intentionally with the view to doing injury to another." *Standing v. Midgett*, 850 F. Supp. 396, 404 (E.D.N.C. 1993); *accord Faucette v. 6303 Carmel Rd., LLC*, 242 N.C. App. 267, 279, 775 S.E.2d 316, 326 (2015). If there was no accident or mistake and the defendant's act was intentional, a court is justified in finding those actions to be willful. *Printing Servs. of Greensboro, Inc. v. Am. Cap. Grp., Inc.*, 180 N.C. App. 70, 81, 637 S.E.2d 230, 236 (2006), *aff'd per curiam*, 361 N.C. 347, 643 S.E.2d 586 (2007).

As the Court has previously discussed in detail, *see* Doc. 244, the defendants created and participated in an organization designed to rig bids at public foreclosures. After submitting rigged bids at foreclosure auctions, bids that were substantially lower than if the defendants had not agreed to limit the bidding, the defendants had the rights to buy the plaintiffs' homes. Thereafter, some of the defendants misrepresented to the plaintiffs that they already owned the plaintiffs' foreclosed property to obtain the property at a lower price, to obtain payment in exchange for relinquishing their putative interest, or to sell their putative interest back to the homeowner at an inflated price. The

3

defendants engaged in intentional and predatory conduct meant to increase their profits at the expense of the plaintiffs and the public interest. The Court finds these acts to be willful within the meaning of § 75-16.1.

### ii. Unwarranted Refusal

In evaluating whether there was an "unwarranted refusal by such party to fully resolve the matter which constitutes the basis" of the suit, § 75-16.1, courts can take the entirety of the circumstances into account. A court may look to a defendant's efforts to settle a matter before trial and the reasonableness of those efforts, including whether any settlement offers made were reasonable relative to what was ultimately awarded to the prevailing party, *see, e.g.*, *United Labs., Inc. v. Kuykendall*, 102 N.C. App. 484, 495, 403 S.E.2d 104, 111 (1991), *aff'd*, 335 N.C. 183, 437 S.E.2d 374 (1993), and a defendant's general intractability in resolving the disputed matter. *See Barbee v. Atl. Marine Sales & Serv., Inc.*, 115 N.C. App. 641, 649, 446 S.E.2d 117, 122 (1994). If the defendant's litigation conduct indicates it considered the underlying conduct that violated Chapter 75 to be a permissible business practice, that can be a reason to find an unwarranted refusal to settle. *See Pinehurst, Inc. v. O'Leary Bros. Realty, Inc.*, 79 N.C. App. 51, 64, 338 S.E.2d 918, 926 (1986).

Here, the defendants' refusal to fully resolve the matter was unwarranted. In the face of overwhelming evidence, the defendants consistently refused to acknowledge the possibility that their extortionate conduct or bid-rigging system was illegal. *See* Doc. 244 at 3–6. And the defendants were generally intractable in their efforts to the settle the case. At a December 2021 settlement conference, the defendants took all day to make a

4

minimal settlement offer, limited to giving up their rights to the home of plaintiff Brian Williams and the home of plaintiffs Maricol De Leon and Jairo Da Costa and to buy plaintiff Brian Gustafson's half-interest in his home for well under its value. They offered no money in exchange for a dismissal. The fact that it took all day to make such a minimal offer indicates that the defendants were not serious and were more interested in costing the plaintiffs' time. The plaintiffs report without contradiction that the defendants' last offer was a demand that the plaintiffs surrender their property and pay money to the defendants. Doc. 279 at 6. The wide gulf between the defendants' settlement offers and the large amount of money damages the plaintiffs ultimately recovered is further evidence of an unreasonable refusal to settle. In light of all the evidence, some of which is summarized here, the Court finds that the defendants made no reasonable offer to resolve the case.

### c. Reasonable Amount of Fees

Whether under state or federal law, courts may only award "reasonable" attorneys' fees. *See* 15 U.S.C. §§ 15, 26; N.C. Gen. Stat. § 75-16.1. Federal courts routinely apply the considerations set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and its progeny to attorneys' fees requests.[1] *See, e.g.*, *Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir.

---

[1] These factors include: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional

5

2008). North Carolina courts have cited and applied *Hensley* in a number of cases involving state statutes with fee-shifting provisions. *See, e.g.*, *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 594–95, 525 S.E.2d 481, 486–87 (2000); *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 16–17, 454 S.E.2d 278, 286 (1995); *Davis v. Taylor*, 81 N.C. App. 42, 54, 344 S.E.2d 19, 26 (1986).

To determine an appropriate fee, the court first determines the "lodestar amount," which is the "reasonable hourly rate multiplied by hours reasonably expended." *Grissom*, 549 F.3d at 320. The court should then reduce the lodestar so as not to compensate the prevailing party for time "spent on unsuccessful claims unrelated to successful ones." *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002); *accord McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). To determine whether claims are related, the court considers whether and to what degree there was a common nucleus of operative fact with other claims that do not have a fee-shifting provision. *See, e.g., Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, 747 F. Supp. 2d 568, 591 (W.D.N.C. 2010); *Whiteside Ests., Inc. v. Highlands Cove, L.L.C.*, 146 N.C. App. 449, 467, 553 S.E.2d 431, 443 (2001).

The fee applicant bears the burden of establishing the reasonableness of hourly rates. *See McAfee*, 738 F.3d at 91. The plaintiffs have met that burden. The hourly rates requested in this case—$400/hour each for attorneys with close to twenty years of

---

relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (citing Fourth Circuit cases incorporating these factors).

experience, $300/hour for an attorney with one year of experience, $300/hour for an attorney with over ten years of experience, $200/hour for law clerks, and $150/hour for a paralegal—are reasonable in light of the skill required, the customary fee for like work, and experience levels of plaintiffs' counsel. *See* Docs. 278-1–278-3; *see also Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 506–07 (M.D.N.C. 2018); *DENC, LLC v. Phila. Indem. Ins. Co.*, 454 F. Supp. 3d 552, 567 n.11 (M.D.N.C. 2020), *aff'd in part, rev'd in part on other grounds*, 32 F.4th 38 (4th Cir. 2022).

The evidence shows that plaintiffs' counsel worked roughly 1,145.9 hours on this litigation.[2] Docs. 278-1–278-2. This is an entirely reasonable amount of time, given the complexity of the issues and the contested nature of the proceedings. The case required significant time for researching and evaluating issues that arose in the litigation, drafting and editing motions and briefs, taking depositions and pursuing discovery, and preparing for and attending hearings and trial. Doc. 278-1 at 7–26; Doc. 278-2 at 4–8. There was no unnecessary duplication of effort between lawyers.

The plaintiffs were successful as to each of their claims and against each relevant defendant at trial. Doc. 235. The plaintiffs' unjust enrichment claim is their only cause of action without an applicable fee-shifting provision, and it is directly related to the plaintiffs' federal and state antitrust claims and Chapter 75 claims. When deciding the defendants were unjustly enriched by their conduct, the jury considered the same

---

[2] In their brief, the plaintiffs say counsel worked 1,117.6 hours, Doc. 279 at 8, but that appears to be a typo. The fees requested appear to be based on 1,145.9 hours. *Id.*

7

common nucleus of operative facts showing the defendants rigged bids to acquire the rights to purchase the plaintiffs' homes and engaged in extortionate conduct.

The Court will reduce the lodestar amount to account for time spent on an unsuccessful motion for class certification. Plaintiffs' counsel attribute approximately 80 hours of time at $400/hour to work on class certification, *see* Doc. 278-1 at 7–26; Doc. 278-2 at 4–8, and the Court will subtract 80 hours at $400/hour when calculating the appropriate attorneys' fees. *See Hensley*, 461 U.S. at 436–37 (recognizing the court's discretion to "attempt to identify specific hours that should be eliminated"). While it is clear from a review of the evidence that counsel spent more time on issues arising during class certification, it also shows that the class certification issues were related to and intertwined with merits issues on which the plaintiffs ultimately prevailed, Doc. 278-1 at 7–26; Doc. 278-2 at 4–8, and as previously noted the defendants have not challenged this time, suggested a different reduction, or otherwise objected to the plaintiffs' fee request. The 80-hour reduction is a fair estimate of the time spent on class certification.

Accounting for the plaintiffs' success at trial and the relation between their claims with and without fee-shifting provisions, an award of attorneys' fees close to the full lodestar amount is appropriate. In its discretion, the Court finds that the entire lodestar amount is not warranted because it includes time spent on the plaintiffs' unsuccessful efforts to secure class certification. *See* Doc. 160; *see also DENC, LLC*, 454 F. Supp. 3d at 568 (reducing request for attorneys' fees based on, *inter alia*, time spent on unsuccessful claims and issues). From the fee requested, a total of $431,270, the Court subtracts 80 hours of attorney time at $400/hour for class certification time. A fee award

of $399,270 is reasonable and fairly compensates plaintiffs' counsel for time spent successfully pursuing the plaintiffs' claims.

### III. Conclusion

In its discretion, the Court will grant the plaintiffs' motion for attorneys' fees and costs. The plaintiffs' request for attorneys' fees is authorized by fee-shifting statutes, is reasonable, and the defendants have not opposed the pending motion. Because the plaintiffs prevailed as to each claim at trial and their common law claim is factually related to the claims arising from fee-shifting statutes, an amount close to the full lodestar amount is appropriate. The motion will be granted, with the fees awarded reduced only by time spent on the unsuccessful efforts to secure class certification.

Pursuant to 15 U.S.C. §§ 15, 26, and N.C. Gen. Stat. § 75-16.1, it is **ORDERED** that the plaintiffs' motion for attorneys' fees and costs, Doc. 278, is **GRANTED**. The defendants shall pay the plaintiffs' attorneys the sum of $399,270.

This the 9th day of September, 2022.

_____
UNITED STATES DISTRICT JUDGE

9

Case 1:19-cv-01076-CCE-JLW   Document 301   Filed 09/09/22   Page 9 of 9