IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRIAN C. WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-CV-1076 |
| | ) | |
| THE ESTATES LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Catherine C. Eagles, District Judge.

In September 2022, two separate groups of defendants filed a motion for attorney's fees. The Court denied the motion and initiated proceedings to determine if the moving defendants and their two attorneys, Steven W. Shaw and John David Matheny, II, had violated Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1927 by filing the motion. The motion was unsupported in law and fact and was unreasonable under the circumstances. Mr. Shaw and moving defendant Craig Brooksby filed the motion for an improper purpose and in bad faith, and by filing it, Mr. Shaw vexatiously multiplied the proceedings. Mr. Shaw and Mr. Matheny violated Rule 11(b)(2) and (3), Mr. Shaw and Mr. Brooksby violated Rule 11(b)(1), and Mr. Shaw violated § 1927. Sanctions are appropriate.

## I.    Background

In September 2022, five months after the jury ruled for the plaintiffs, two separate groups encompassing many of the defendants filed a single motion for attorney's fees for

time spent on limited aspects of the case where they claimed to be the prevailing parties. Doc. 306. The "Group 1" defendants asked the Court for an order requiring the plaintiffs to pay them $148,795 for their attorney's fees related to defending against class certification. *Id.* at 3. The "Group 2" defendants wanted the plaintiffs to pay them a total of $100,000 in attorney's fees because these defendants were each dismissed from the case before trial. *Id.*

Contrary to the requirements of the Local Rules, *see* LR 7.3(a), the moving defendants did not support the motion with a brief. Nor did they cite in the motion any statutory or case law authority to support the request for attorney's fees, ignoring the well-established provisions of the Federal Rules of Civil Procedure. Instead, they relied on conclusory assertions with no factual support, as detailed below. *See infra* pages 7–14; *see also* Doc. 356 at 2–6.

The Court denied the motion as frivolous and initiated proceedings to determine if the moving defendants and their two attorneys who signed the motion, Mr. Shaw and Mr. Matheny, should be sanctioned. *See generally id.* at 7–10. Specifically, the Court ordered:

> (1) Mr. Shaw and Mr. Matheny to show cause why they should not be sanctioned for violating Rule 11(b)(2) and (3) of the Federal Rules of Civil Procedure by presenting a written motion for attorney's fees that was without evidentiary support and unwarranted by law;
>
> (2) The moving defendants, Mr. Shaw, and Mr. Matheny to show cause why they should not be sanctioned for violating Rule 11(b)(1) of the

2

Federal Rules of Civil Procedure by presenting a written motion for attorney's fees for the improper purpose of wasting plaintiffs' counsel's time and increasing their expenses; and

(3) Mr. Shaw and Mr. Matheny to show cause why they should not be sanctioned for multiplying the proceedings unreasonably and vexatiously in violation of 28 U.S.C. § 1927.

Mr. Shaw, Mr. Matheny, and the moving defendants each filed briefs and evidence. *See* Docs. 371, 371-1 (Mr. Shaw's response and evidence); Docs. 369, 369-1 (Mr. Matheny's response and evidence); Docs. 372, 372-1 (moving defendants' response and evidence). The plaintiffs also filed a response and evidence, Docs. 376, 376-1, 376-2, and Mr. Matheny filed a reply. Doc. 388.

One of the moving defendants, Avirta, LLC, filed a bankruptcy petition and proceedings as to it were stayed. Doc. 389. The bankruptcy petition was dismissed, Doc. 391, and the stay has been lifted. Text Order 02/28/2023.

## II.    Federal Rule of Civil Procedure 11(b)–(c)

Federal Rule of Civil Procedure Rule 11(b) prohibits attorneys from filing motions or other papers with the court if they are made for improper purposes or unsupported by law or fact. The rule provides, in relevant part:

> By presenting to the court a pleading, written motion or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

3

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

If an attorney files a motion that does not comply—i.e., it is presented for an improper purpose or without legal or factual support—then the rule provides for sanctions. *See* Fed. R. Civ. P. 11(c). While the rule is directed to the attorney's signature, the Court may impose an appropriate sanction on any attorney, law firm, or party that "is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1336.2 (4th ed. 2022) [hereinafter Wright & Miller]; *Aldmyr Sys., Inc. v. Friedman*, 679 F. App'x 254, 255–56 (4th Cir. 2017) (per curiam) (unpublished) (affirming sanctions against party-corporations based on improper purpose).

Rule 11 permits courts to impose sanctions post-judgment and based on post-judgment misconduct. *See Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1081 (7th Cir. 2018) (affirming "a court-initiated monetary sanction for post-judgment misconduct"); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) ("Nothing in [Rule 11] . . . prevents the district court from taking [*sua sponte*] action after judgment."); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002) ("Rule 11 sanctions may be imposed when

4

a case is no longer pending" (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)).

Courts must comply with certain procedural requirements before imposing sanctions under Rule 11, which vary depending on whether a party filed a motion for sanctions or the court initiated the sanctions proceeding. When initiated by a court, as here, Rule 11(c)(3) requires notice and an opportunity "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3); *see also In re Bees*, 562 F.3d 284, 289 (4th Cir. 2009) (finding abuse of discretion when the district court *sua sponte* sanctioned an attorney without first ordering her to show cause on the specific issue). Because the safe harbor provision applicable to Rule 11 proceedings initiated by a litigant does not apply to court-initiated sanctions proceedings, *see Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 n.2 (4th Cir. 2004) (en banc), courts should impose sanctions only for particularly egregious violations, "akin to a contempt of court." *In re Bees*, 562 F.3d at 287; *see also Lewis v. W. Va. Sup. Ct. of App.*, 985 F. Supp. 2d 776, 780 (S.D.W. Va. 2013).

Consistent with Rule 11(c)(3), the Court issued its Show Cause Order in November 2022 and provided Mr. Shaw, Mr. Matheny, and the moving defendants with an opportunity to be heard. *See* Doc. 356. All have taken advantage of the opportunity to submit evidence and briefs.

## A. Rule 11(b)(2) and (3)

By signing a motion, an attorney certifies that "the claims, defenses, and other legal contentions" contained within "are warranted by existing law or by a nonfrivolous

5

argument," Fed. R. Civ. P. 11(b)(2), and that "the factual contentions have evidentiary support" or "will likely have evidentiary support" after further discovery or investigation. Fed. R. Civ. P. 11(b)(3). Rule 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 551 (1991). "[T]he applicable standard is one of reasonableness under the circumstances." *Id.*; *see also In re Weiss*, 111 F.3d 1159, 1170 (4th Cir. 1997).

In evaluating whether a motion lacks legal support in violation of Rule 11(b)(2), "the court must apply an objective standard, inquiring whether a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Lokhova v. Halper*, 30 F.4th 349, 354 (4th Cir. 2022) (cleaned up); *see also Hunter*, 281 F.3d at 153. In short, a sanctionable legal argument "must have absolutely no chance of success under the existing precedent." *Hunter*, 281 F.3d at 153 (cleaned up).

In evaluating the factual basis for a motion, courts evaluate whether there is any factual basis at all; when there is none, the attorney has violated Rule 11(b)(3). *Chaplin v. Du Pont Advance Fiber Sys.*, 124 F. App'x 771, 774 (4th Cir. 2005) (per curiam) (unpublished). Rule 54 "does not require" that a motion for attorney's fees be fully "supported at the time of filing with the evidentiary material bearing on the fees." Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment. But it does require a party to state "the amount of such fees (or a fair estimate)." *Id.* And motions for attorney's fees, like all motions, are subject to Rule 11. A motion for fees that is "baseless" and

6

rests on "an infirm factual foundation" violates Rule 11(b)(3). *See, e.g.*, *Bell*, 908 F.3d at 1080.

Mr. Shaw and Mr. Matheny violated both Rule 11(b)(2) and 11(b)(3) when they filed the motion for attorney's fees. It was unsupported in law and fact and unreasonable under the circumstances. The Court has previously explained why the motion was frivolous, *see* Doc. 356, and adopts that explanation by reference, as supplemented here.

It is a "bedrock principle" in American law that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). Statutory authority for attorney's fees must be clear, *see, e.g.*, *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126–27 (2015), or there must be an "enforceable contract allocating attorney's fees." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) (cleaned up). As explicitly stated in the Rules of Civil Procedure, a motion for attorney's fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii).

More generally, the requirement to provide legal support for a motion of any kind was well-known to Mr. Matheny and Mr. Shaw. The Local Rules require that legal arguments shall be supported by appropriate legal authority, LR 7.2(a)(4), 7.3(b), as does the Order entered at the beginning of this case. *See* Doc. 2 at ¶ 1. Long-established case law says the same. *See, e.g.*, *Walker v. Prince George's Cnty.*, 575 F.3d 426, 429 n.* (4th Cir. 2009) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The Court had specifically reminded Mr. Shaw and Mr. Matheny about this requirement in

7

response to earlier briefs violating the Local Rules. *See, e.g.*, Doc. 184 at 4 ("The Court reminds defense counsel, again, that they must follow the Local Rules . . . and all legal propositions must be supported by citation to appropriate rule, statute, case law, or other authority.").[1]

On behalf of the "Group 2" moving defendants, Mr. Shaw and Mr. Matheny made a vague claim for attorney's fees, apparently for all their litigation costs, because they were dismissed as defendants when class certification was denied. Doc. 306 at 2–3. The entirety of their argument follows:

> Defendants have prevailed with respect to all aspects of the case as they where dismiss following the order of this court instruction the Plaintiffs to dismiss them.

*Id.* (errors in original). Mr. Matheny and Mr. Shaw identified no statute, rule, or other source of authority to support this almost incomprehensible request. In the absence of any authority, the motion was frivolous and had no reasonable basis in law.

As to the "Group 1" defendants, Mr. Shaw and Mr. Matheny did identify a contractual basis for attorney's fees, but they provided no factual support for their contention. The entire argument made by counsel for the "Group 1" defendants was that they were entitled to attorney's fees because:

> with respect to the class action certification portion of the case, said Defendants are the prevailing party and, under the terms of the subscription agreement which is in evidence, the same are entitled to attorney fees.

---

[1] Mr. Shaw and Mr. Matheny repeatedly violated this requirement, which the Court has pointed out many times. Doc. 244 at 9, 12; Doc. 292 at 3–6; Doc. 298 at 4. At one point, these failures required the Court to develop a special procedure for submission of legal authority. *See* Doc. 220 at 2–3.

*Id.* at 1. But Mr. Shaw and Mr. Matheny did not attach such an agreement, say where in the evidence to find the "subscription agreement," or cite the terms of the alleged agreement.[2]

In responding to the motion, the plaintiffs guessed, *see* Doc. 319 at 3, that the moving defendants were referring to Trial Exhibit 5, the "Timbra, LLC Buyer Licensing Agreement," Doc. 104-7, which provides the terms for accessing The Estates' website. But the plaintiffs were not members of The Estates, did not access or use The Estates' website, and never agreed to these terms and conditions. Mr. Matheny and Mr. Shaw filed no reply brief and thus did not identify any other "subscription agreement" binding the plaintiffs, nor have they since. The factual assertion that the plaintiffs were subject to a "subscription agreement" which authorized attorney's fees "was baseless and rested on an infirm factual foundation." *See, e.g.*, *Bell*, 908 F.3d at 1080 (cleaned up).

Mr. Shaw and Mr. Matheny also provided no factual basis or evidence to support the specific amount of fees requested. Mr. Shaw and Mr. Matheny made specific requests for specific amounts of money on behalf of the Group 1 and Group 2 defendants.[3] Yet they did not include any legitimate evidentiary or factual support for the

---

[2] The Court had previously reminded Mr. Shaw and Mr. Matheny about the requirement in the Local Rules, *see* LR 7.2(a)(2), to provide specific citations to evidence. *See, e.g.*, Doc. 2 at ¶ 1 (Standard Order reminding all parties that "factual assertions unsupported by citation to specific evidence in the record will be disregarded"); Doc. 184 at 4 ("The Court reminds defense counsel, again, that they must follow the Local Rules, [and] that all factual assertions in briefs must be supported by citations to the docket and page number of evidence filed on the docket").

[3] While Rule 54 "does not require" that a motion for attorney's fees be fully "supported at the time of filing with the evidentiary material bearing on the fees," Fed. R. Civ. P. 54 advisory

specific amount of the fees they sought on behalf of the Group 1 defendants. They did not mention how much time they spent on any aspect of the defense, nor did they mention their hourly rate, matters which as a general rule are necessary to determine an appropriate attorney's fee. *See, e.g.*, *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013).

Instead, Mr. Shaw and Mr. Matheny pointed to the fees incurred by the plaintiffs and sought fees "equal to one half the amount claimed by Plaintiffs" during an identified period of time. *See* Doc. 306 at 3. Mr. Shaw and Mr. Matheny provided no legal authority for this novel approach. Nor did they direct the Court's attention to evidence in the record of the amount of attorney's fees incurred by the plaintiffs.[4] They have not come forward now to provide any evidentiary support linking the very specific fee amount they requested to the fees the defendants incurred. *See* Docs. 371, 371-1 (Mr. Shaw's response to the Show Cause Order and accompanying affidavit, providing no further factual support or evidence about the amount of fees requested); Docs. 369, 369-1 (same for Mr. Matheny). This aspect of the motion lacked a legal and factual basis.

In the entire motion, Mr. Shaw and Mr. Matheny cited only one case and it was in the section on timeliness. Doc. 306 at 4 (citing *Bennett v. City of Holyoke*, 362 F.3d 1, 4 (1st Cir. 2004)). Even then, they gave no explanation as to why the case was helpful or

---

committee's note to 1993 amendment, it also does not require that motions for attorney's fees be handled in two parts. Here, counsel asked for a specific amount of fees and did not suggest, even indirectly, that the amount of the requested fee would require or could be supported by additional evidence. *See* Doc. 306 at 3–4.

[4] Perhaps that is because the evidence contradicts their factual representation. Mr. Shaw and Mr. Matheny stated that the plaintiffs claimed $297,590 for work done between October 18, 2019, and April 22, 2021. Doc. 306 at 3. But the Court's independent review of the record shows that this number is factually incorrect. *See* Doc. 278-1, 278-2.

relevant to the matter at hand. Had they read the case, they would have known it was not, as even a cursory review of the cited case made clear that it dealt with extending the time to appeal, not whether a motion for attorney's fees was timely.

If Mr. Shaw and Mr. Matheny had spent even a nominal amount of time preparing the motion and a supporting brief, they would have known that attorney's fees are not awarded as a matter of course, that requests for attorney's fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award," Fed. R. Civ. P. 54(d)(2)(B)(ii), and that the law requires litigants to provide the amount sought or a fair estimate, Fed. R. Civ. P. 54(d)(2)(B)(iii), based on a reasonable investigation into the facts. Fed. R. Civ. P. 11(b)(3). It is reasonable to expect an attorney to read the federal procedural rule on motions for attorney's fees before the attorney files a motion for attorney's fees. Had Mr. Shaw and Mr. Matheny done so here, the motion would not have been filed.

Instead, Mr. Shaw and Mr. Matheny filed the motion without an accompanying brief, without conducting a reasonable investigation into the law, without support for the factual underpinnings of the motion, and with only baseless, conclusory, and wholly incredible assertions about the amount of fees the moving defendants incurred. The motion had "absolutely no chance of success." *Lokhova*, 30 F.4th at 354; *see also Bell*, 908 F.3d at 1079–81 (affirming Rule 11(b) sanction for frivolous post-judgment attorney's fee request). And, considering the context of the litigation, the existence of an explicit order requiring citation to legal authority and evidence, Doc. 2, and the reminders in numerous court orders about the need to follow applicable Local Rules and orders and

11

provide legal and evidentiary support, the filing of the motion was so egregious as to be "akin to a contempt of court." *See In re Bees*, 562 F.3d at 287.

Mr. Shaw acknowledges that the "motion was prepared quickly[] and inartfully," Doc. 371-1 at ¶ 13, and that he submitted it "knowing it was weak." *Id.* at ¶ 15. Still, he contends that it was nonfrivolous and that there was a chance it would be granted. *Id.* First, his personal opinion that the motion might have succeeded is not credible. The Court has had extensive experience with Mr. Shaw over the last few years of this case and it is clear he will say whatever he thinks might help him in the moment, without regard to the truth. Second, his personal opinion is not, even now, supported by any law or evidence remotely on point.[5] His opinion and profession of good faith are not, in the Court's evaluation, entitled to any weight. Finally, "[a] legal argument fails to satisfy Rule 11(b)(2) when, in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Morris v. Wachovia Sec. Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (cleaned up). Mr. Shaw's acts in filing this motion do not meet this standard. The Court finds by clear and convincing evidence that no reasonable attorney would have believed the filing of this motion to be legally justified.

---

[5] Mr. Shaw now says that the Court had equitable authority to award the attorney's fees because of the bad faith of the plaintiffs. *See* Doc. 371 at 3–4. Yet he made no mention of sanctions in the original motion, and his current assertions of bad faith continue down his well-worn path of falsely and inaccurately blaming the plaintiffs instead of providing evidence and law. *See, e.g.,* Doc. 363 at 7.

12

Mr. Matheny claims that he did not violate Rule 11(b)(2) and (3) because, although his digital signature appeared on the motion, he "did not sign, file, submit, or later advocate the motion." Doc. 369 at 2; *see* Doc. 369-1 at ¶¶ 12–15. Instead, Mr. Matheny affirms that he was on vacation when Mr. Shaw filed the motion, Doc. 369-1 at ¶ 12, and that he "played no role in researching or writing" the motion and "did not see or review it until after it had been filed." *Id.* at ¶ 15.

This might be true; both Mr. Shaw and Mr. Matheny say so. *See* Doc. 371-1 at ¶ 7; Doc. 369-1 at ¶¶ 12–15. But it is no excuse. Mr. Matheny is an attorney of record, is "responsible to this Court for the conduct of the litigation or proceeding," and is required to "review and sign all pleadings and papers." LR 83.1(d)(2). His name and signature appear on the motion. Doc. 306 at 5. Over the course of the litigation, Mr. Matheny had by his conduct given Mr. Shaw carte blanche to append Mr. Matheny's name and signature to motions and pleadings.[6] Mr. Matheny did not object to this practice and never notified the Court that he was not reviewing the pleadings, nor did he file anything with the Court after he returned from vacation and over the weeks the motion for attorney's fees was pending indicating that he did not approve of or join in the making of the motion, even after the plaintiffs' brief pointed out its shortcomings. Mr. Shaw is not a member of the bar of this Court and could not appear without local counsel, *see* LR

---

[6] According to Mr. Shaw, "Mr. Matheny had little, and often, no role in the various phases of litigation except in his capacity as sponsoring counsel." Doc. 371-1 at ¶ 6. Mr. Shaw regularly attached Mr. Matheny's signature to filings "because the Rules required this, not because Mr. Matheny was a contributor." *Id.* at ¶ 7.

13

83.1(c)–(d), so Mr. Matheny's consent and signature were required before the motion would receive Court attention.

"[T]otal reliance on other counsel" can itself be "a violation of Rule 11," *see In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990), especially when the relying attorney has represented to the Court that he is responsible for the litigation and his co-counsel's adherence to the Local Rules, *see* Doc. 117, LR 83.1(d)(2), and has previously been reminded of his responsibilities. *See* Doc. 258. Mr. Matheny offers no explanation for why he thought it was acceptable to serve as a rubber stamp or why he agreed to be an in-name-only attorney, and he now acknowledges this was unacceptable. *See In re: John David Matheny, II, Attorney*, No. 22-MC-31, Doc. 8 at 18 (Mr. Matheny's brief in his separate disciplinary proceeding "acknowledg[ing] his shortcomings as a sponsoring attorney and admit[ting] that, at times, he did not supervise this litigation with as much detail as he should have").

The Court finds by clear and convincing evidence that both Mr. Shaw and Mr. Matheny violated Federal Rule of Civil Procedure 11(b)(2) and (3) when they filed the motion for attorney's fees without legal or factual support and without undertaking a reasonable investigation into the law.

### B. Rule 11(b)(1)

Rule 11 requires attorneys to certify that motions are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(a)–(b)(1). The subjective opinion of an injured party that the motion was made to harass is insufficient to show an attorney had an

14

improper purpose under Rule 11(b)(1); "instead, such improper purposes must be derived from the motive of the signer." *See In re Kunstler*, 914 F.2d at 518–19. This analysis must focus on the purpose of the filing, not its consequences. *Id.*; *see also Coates v. United Parcel Servs., Inc.*, 933 F. Supp. 497, 500 (D. Md. 1996), *aff'd sub nom. Davis v. United Parcel Serv.*, 129 F.3d 116, 1997 WL 702278 (4th Cir. 1997) (per curiam) (unpublished table decision); *Rivers v. United States*, No. 18-CV-61, 2020 WL 6880967, at *3 (W.D.Va. Nov. 23, 2020).

A district court may consider a wide variety of evidence in making its determination, including the attorney's subjective beliefs about the motion, "[c]ircumstantial facts surrounding the filing," "the outrageous nature of the claims made" in the motion, and the attorney's "experience in a particular area of law." *In re Kunstler*, 914 F.2d at 519. As previously noted, the Court may impose an appropriate sanction on any attorney, law firm, or party that "is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see supra* page 4.

### 1. Mr. Shaw

Many facts show that Mr. Shaw filed the motion for attorney's fees with an improper purpose. First, the motion lacked a basis in law or in fact, as detailed in the Show Cause Order, Doc. 356, and earlier in this Order. *See supra* pages 7–14. The fact that a filing lacked a basis in law or in fact strongly supports a finding of improper purpose under Rule 11(b). *See In re Kunstler*, 914 F.2d at 519.

Second, Mr. Shaw filed the motion late, well beyond the time allowed by the Federal Rules. Federal Rule of Civil Procedure 54(d)(2) provides that a claim for

15

attorney's fees must be made by a motion "filed no later than 14 days after the entry of judgment." Entry of the judgment occurred on June 2, 2022, Doc. 245, and Mr. Shaw filed the defendants' motion almost 15 weeks later, on September 14, 2022. Doc. 306. In the motion, Mr. Shaw inexplicably argued that he had 14 days from the date the plaintiffs filed their motion for attorney's fees to file the defendants' motion, but he did not cite any helpful authority. *Id.* at 4; *see supra* pages 10–11. And even if that were true, he did not file the motion fourteen days after the plaintiffs' motion; he filed it more than six weeks after. Doc. 278 (plaintiffs' motion for attorney's fees filed on July 29, 2022); Doc. 306 (defendants' motion for attorney's fees filed September 14, 2022).

Even now, Mr. Shaw cannot make a coherent argument based on accurate information to support the late filing. In his response to the Show Cause Order, Mr. Shaw claims that he thought he had thirty days after the final judgment was entered to file the motion. *See* Doc. 371 at 4; Doc. 371-1 at ¶ 17. And he asserts that "[t]he motion was filed within 30 days of the final judgment." Doc. 371 at 4. But this is not true; the Court entered the final judgment on June 2, 2022, Doc. 245, and Mr. Shaw filed the motion for attorney's fees on September 14, 2022, Doc. 306, well past his purported thirty-day deadline. His willingness even now to defend the timeliness of the motion by misstating the record further supports an inference that he acted with an improper purpose.[7]

---

[7] Possibly Mr. Shaw meant that he thought he had thirty days from the order denying the motion to alter or amend the judgment filed on August 16, 2022, Doc. 298, some 29 days before the motion for attorney's fees was filed on September 14. But that is not what he said.

16

Third, Mr. Shaw filed the motion at a time when post-judgment proceedings were going badly for the defendants. *See, e.g.*, Doc. 245 (judgment against the defendants); Doc. 246 (permanent injunction); Doc. 293 (order granting in part plaintiffs' motion for a charging order against the defendants); Doc. 298 (order denying the defendants' motion to alter the judgment); Doc. 301 (order granting the plaintiffs' motion for attorney's fees and ordering the defendants to pay $399,270). This further supports an inference that Mr. Shaw filed the motion to harass the plaintiffs, distract their attorneys from pursuing the plaintiffs' interests, raise their costs, and otherwise delay the proceedings.

Finally, the filing of the motion is symptomatic of Mr. Shaw's larger and long-standing strategy: resist, obstruct, and delay. The defendants delayed paying a required attorney's fee imposed as a discovery sanction for so long that the Magistrate Judge had to recommend contempt proceedings, Doc. 185, before the defendants would pay. *See* Doc. 192. The Court has reminded Mr. Shaw several times of the need to file a brief in support of a motion. *See, e.g.*, Text Order 02/19/2021; Doc. 187 at 3. Even though this requirement is stated in the Local Rules and Mr. Shaw has been reminded of it repeatedly, he ignored it and filed the motion for attorney's fees without a brief and without legal authority. As was true of many of Mr. Shaw's other filings, *see* Doc. 363 at 8–9, the motion contains numerous typographical errors and sentence fragments, making it difficult to read and further showing that Mr. Shaw filed it without investigation and for an improper purpose. *See, e.g.*, Doc. 306 at 2–3 ("Defendants have prevailed with respect to all aspects of the case as they where dismiss following the order of this court instruction the Plaintiffs to dismiss them."); *id.* at 3 ("With respect to the Group 1

17

Defendants, said Defendants as compensation for their Attorney's Fees an amount equal to one half the amount claimed by Plaintiffs as their attorney fee for the same period of time."). In filing the motion for attorney's fees, Mr. Shaw ignored the Court's requests that he proofread motions and briefs, an approach that inherently makes work for the plaintiffs and the Court. *See* Doc. 356 at 6.[8] This further suggests an improper purpose.

In sum, the motion for attorney's fees was unsupported by law and fact and was outrageous, *see In re Kunstler*, 914 F.2d at 519, improperly asked for approximately $250,000 in attorney's fees without citing to any legal authority or material evidence, Doc. 306 at 3, and incorrectly stated that the motion was timely. *Id.* at 4. Mr. Shaw has continued to justify the filing by making inaccurate statements about the record and putting the blame on the plaintiffs. *See supra* page 12 note 5.

Baseless arguments and claims, on their own, may not "require a finding of improper purpose, because inexperience or incompetence may have caused their inclusion . . . , rather than or in addition to willfulness or deliberate choice." *In re Kunstler*, 914 F.2d at 519. But when counsel are not inexperienced and there are a significant number of violations, a court can reasonably draw an inference that counsel willfully made the baseless argument with an improper purpose. *See id.*

---

[8] As the Court previously explained, "[n]o party, particularly one who has prevailed on the merits, should have to waste time and resources responding to an untimely motion that is full of clerical errors, provides no applicable legal support for its request, and is unsupported by citation to or submission of evidence. The plaintiffs should not have to make the defendants' arguments for them to then be able to rebut those arguments. And the Court should not have to take time away from resolving legitimate disputes to read frivolous motions and draft appropriate orders deciding them." Doc. 356 at 6.

Case 1:19-cv-01076-CCE-JLW   Document 400   Filed 03/23/23   Page 18 of 36

Mr. Shaw claims to be an experienced attorney: he says he has practiced law since 1984, that he has handled litigation in several federal district and appellate courts, and that he was on the Board of Directors of the Idaho Trial Lawyers Association for eight years. Doc. 371-1 at ¶ 2; *see also* 372-1 at ¶¶ 7–8 (Mr. Brooksby's declaration that Mr. Shaw was hired, in part, due to his "experience"). Inexperience is not the culprit here.

Although Mr. Shaw is incompetent when it comes to dealing with the electronic filing system, *see* Doc. 363 at 6, technological deficiencies are not the cause of his failure to comply with Rule 11. His repeated filings in violation of the Local Rules replete with sentence fragments and grammatical and typographical errors, the outrageous and factually unsupported claims he made in the motion, and his experience, all after numerous reminders from the Court about the need to comply with the Local Rules and provide citations to legal authority and evidence, show that Mr. Shaw acted deliberately, not incompetently.

Finally, Mr. Shaw's course of conduct is indicative of a general willingness to file first, investigate later. *See generally id.* at 3–11 (summarizing reasons for revocation of Mr. Shaw's *pro hac vice* status). The ongoing scale of the problems, especially in light of the motion's timing and the demonstrable inaccuracy in Mr. Shaw's post hoc explanation of the timing, strongly suggests that incompetence was not the cause of filing the motion for attorney's fees.

Viewing all of the evidence as a whole, the Court finds by clear and convincing evidence that Mr. Shaw filed the motion for attorney's fees for an improper purpose and that by filing it he violated Rule 11(b)(1).

### 2. Mr. Matheny

Although Mr. Matheny was responsible for the conduct of the litigation and was required to review and sign all pleadings and papers, *see* LR 83.1(d)(2), the Court will not find him in violation of Rule 11(b)(1). The evidence establishes that Mr. Shaw drafted and filed the motion. *See* Doc. 371-1 at ¶¶ 7–8, 12; Doc. 369-1 at ¶¶ 9–15. The facts show that Mr. Matheny was inattentive, irresponsible, and shirked his professional and ethical duties in accepting a role where he did not have any oversight or review and in not reviewing this motion. Perhaps the evidence would support a finding that he personally filed the motion for an improper purpose, but the Court declines to so find in its discretion, given the overall context.

### 3. The Moving Defendants

Craig Brooksby, one of the Group 1 defendants, is "the primary individual [d]efendant" and "the primary contact for nearly all of the Limited Liability Company [d]efendants," including for those defendants in Group 1 and Group 2. Doc. 372-1 at ¶ 3. He made the litigation decisions for these defendant entities while Mr. Shaw and Mr. Matheny represented them. The Court finds by clear and convincing evidence that Mr. Brooksby is responsible for the filing of the motion for attorney's fees and that he had the same improper purpose as Mr. Shaw, in violation of Rule 11(b)(1).

First, Mr. Brooksby and Mr. Shaw have worked together for over fifteen years on Estates matters. Doc. 372-1 at ¶¶ 4, 8. He is familiar with Mr. Shaw's approach. Mr. Brooksby hired Mr. Shaw to defend the defendants in this case, *id.* at ¶ 5, hired Mr. Matheny to serve as a rubber stamp, *see id.* at ¶ 6, Doc. 371-1 at ¶¶ 5–7, 9, and insisted

that Mr. Shaw run the show. *See* Doc. 371-1 at ¶ 6 (Mr. Shaw's declaration that Mr. Brooksby "insiste[d]" that Mr. Shaw "always" make the final decisions in the case). This tends to demonstrate that from the beginning Mr. Brooksby was not interested in counsel who would follow the rules.

Second, Mr. Brooksby was aware of at least some of the Orders in which the Court repeatedly advised Mr. Shaw and Mr. Matheny that they were not following the rules. *See* Doc. 372-1 at ¶¶ 16–17. Mr. Brooksby also knew that other defendants had retained new counsel post-verdict, *see* Docs. 274, 289, and were questioning Mr. Brooksby's conduct and Mr. Shaw's representation. *See, e.g.*, Doc. 277 (declaration of co-defendant Ms. Souther stating that Mr. Brooksby had violated the permanent injunction); Doc. 300 (declaration of Mr. Brooksby reflecting knowledge of Ms. Souther's allegations). He knew Mr. Shaw was planning a possible motion for attorney's fees. Doc. 372-1 at ¶ 9. Yet Mr. Brooksby did not retain new counsel, did not ask Mr. Matheny to have a larger role, and did not take any other steps indicating he wanted Mr. Shaw to take a different, more careful approach.

Third, Mr. Brooksby's own conduct during the litigation has been consistent with Mr. Shaw's delay-and-obstruct approach and shows his control over and direction of Mr. Shaw's actions and strategies. The examples are legion, but a few will suffice. First, the defendants, all at that time under the sway or control of Mr. Brooksby, repeatedly delayed and obstructed discovery, resulting in numerous orders compelling the defendants to respond. *See, e.g.*, Docs. 97, 109, 159. Later, Mr. Brooksby was present as a decision-making client for the settlement conference, *see* Minute Entry 12/10/2021,

where the defendants took all day to make a simple and minimal settlement offer that could have been made early in the conference, all in the face of expressions of concern by the plaintiffs about how long it was taking the defendants to make an offer.[9] As another example, during discovery and at trial, Mr. Brooksby would not answer reasonable questions directly, giving vague half-answers, routinely evading questions, wasting time, and delaying plaintiffs' counsel in learning or presenting relevant evidence. Finally, Mr. Brooksby continues to obstruct and delay post-trial proceedings; the Court has appointed a Receiver for Mr. Brooksby's assets because of his inability to tell the truth, Doc. 362, Doc. 364 at 14–19, and has held Mr. Brooksby in contempt for violations of the permanent injunction. *See* Doc. 364 at 11–13.

In an affidavit offered in response to the Show Cause Order, Mr. Brooksby asserts that he asked Mr. Shaw to do better in response to seeing the multitude of earlier orders identifying problems with Mr. Shaw's work; that he did not see the motion for attorney's fees before it was filed; and that he reasonably relied on Mr. Shaw. *See* Doc. 372-1 at ¶¶ 10–17. Mr. Brooksby's testimony on these points is not credible. The Court observed Mr. Brooksby testify at trial, and he is not a credible witness. His own conduct has been evasive and designed to increase costs by making it difficult for the plaintiffs to determine the facts and locate assets of the defendants. The motion for attorney's fees, Doc. 306, was filed just days after Mr. Brooksby responded to allegations by another

---

[9] Here and elsewhere, the Court relies on its clear memory of the proceedings. The record in this case is voluminous and not all proceedings have been transcribed. But this case has long been unusual and has required extensive amounts of oversight and attention by the Court, which has prevented the Court from forgetting the details.

defendant that he was not complying with the permanent injunction. *See* Docs. 277, 299–300. And Mr. Brooksby continues to involve Mr. Shaw in his financial affairs and ask Mr. Shaw to take legal action on his behalf, despite the revocation of Mr. Shaw's *pro hac vice* status in this case and in contradiction to Mr. Brooksby's affidavit which essentially throws Mr. Shaw under the bus.[10] A sophisticated businessperson and litigant like Mr. Brooksby would not continue to blithely trust a lawyer in these circumstances if that lawyer were not following the client's directives. As they have been for many years, Doc. 372-1 at ¶¶ 4, 8, Mr. Shaw and Mr. Brooksby are in it together.

Mr. Brooksby's actions and inactions satisfy the Court by clear and convincing evidence that Mr. Brooksby is responsible for the frivolous attorney's fees motion filed for the improper purposes of harassing the plaintiffs and their attorneys and wasting their time and resources and that he violated Rule 11(b)(1).

The Court will not sanction any of the other moving defendants. Mr. Brooksby is the litigant running the show. He is the defendant personally responsible for the Rule 11 violation, not the LLCs he controls.

### C. Sanctions

When a court "determines that Rule 11(b) has been violated," it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is

---

[10] Specifically, after the filing of the Show Cause Order on November 28, 2022, Doc. 356, and revocation of Mr. Shaw's permission to appear in this case on December 6, 2022, Doc. 363, Mr. Brooksby retained Mr. Shaw to file a bankruptcy petition for Avirta, LLC, a defendant-entity controlled by Mr. Brooksby, on December 20, 2022. Doc. 377 at 7. And Mr. Shaw is still the Registered Agent for GG Irrevocable Trust, *see* Doc. 392 at 3, another defendant-entity which Mr. Brooksby uses as part of The Estates profit structure. *See* Doc. 364 at 3, 6, 17.

responsible for the violation." Fed. R. Civ. P. 11(c)(1). Determination of an appropriate Rule 11 sanction is discretionary. *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 211 (4th Cir. 1988); *see also* Fed. R. Civ. P. 11 advisory committee note to 1993 amendment (explaining that the Court "has discretion to tailor sanctions to the particular facts of the case"); *Hammary v. Soles*, 9-CV-781, 2013 WL 1192783, at *10 (M.D.N.C. Mar. 22, 2013). However, the sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Hunter*, 281 F.3d at 151 ("Under Rule 11, the primary purpose of sanctions . . . is not to compensate the prevailing party, but to deter future litigation abuse." (cleaned up)); *Miltier v. Downes*, 935 F.2d 660, 665 (4th Cir. 1991) ("The rule in this circuit is that in choosing a sanction, the guiding principle is that the least severe sanction adequate to serve the purposes of Rule 11 should be imposed." (cleaned up)).

While Rule 11 itself does not list the factors that courts should consider in selecting an appropriate sanction, the Federal Rules Advisory Committee has identified several:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 advisory committee note to the 1993 amendment.

Case 1:19-cv-01076-CCE-JLW   Document 400   Filed 03/23/23   Page 24 of 36

Sanctions may be monetary or non-monetary. *See* Fed. R. Civ. P. 11(c)(4).

Because the Court initiated these proceedings *sua sponte*, monetary sanctions are limited to penalties payable to the court; attorney's fees or other monetary sanction payable to a party are not available. *See* Fed. R. Civ. P. 11(c)(4); 2 Moore's Federal Practice – Civil § 11.22 (2023); Wright & Miller § 1336.3; *see also, e.g.*, *Devine v. Am. Ben. Corp.*, 56 F. Supp. 2d 679, 683–84 (S.D.W. Va. 1999).[11] In deciding the amount of a monetary sanction, courts consider the minimum necessary to deter, the sanctioned party's ability to pay, and the severity of the violation. *See In re Kunstler*, 914 F.2d at 523. Nonmonetary sanctions vary widely depending on the facts. They include, *inter alia*, reprimands, warnings, orders to undergo continuing legal education, circulation of the Rule 11 Order to members of the offending attorney's firm, suspensions, and disbarment. *See* Wright & Miller § 1336.3 (listing possible sanctions and collecting cases).

### 1. Mr. Matheny

As to Mr. Matheny, the appropriate sanction for violating Rule 11(b)(2) and (3) is to make this Order public and to impose a fine. A public finding that he has violated

---

[11] Rule 11 provides another limitation on the Court's ability to impose *sua sponte* monetary penalties; courts may not impose any monetary sanctions if the show cause order is issued after a voluntary dismissal or settlement agreement, *see* Fed. R. Civ. P. 11(c)(5)(B), because parties settling or dismissing a case "should not be subsequently faced with an unexpected order from the court leading to monetary sanctions that might have affected their willingness to settle or voluntarily dismiss a case." Fed. R. Civ. P. 11 advisory committee note to 1993 amendment. Because neither settlement nor voluntary dismissal occurred here, this limitation in Rule 11(c)(5)(B) is inapplicable. *See Bell*, 908 F.3d at 1081 (affirming *sua sponte* Rule 11 sanctions based on a post-judgment motion for attorney's fees and explaining that Rule 11(c)(5)(B) does not apply "where the misconduct [does] not occur until after the district court had entered judgment," and "allowing a court-initiated monetary sanction for post-judgment misconduct is consistent with the purpose of subsection (c)(5)(B)").

Rule 11 will, by itself, have an effect on his reputation and serve to deter others from similar misconduct. It is necessary here.

Given the flagrant disregard of the requirements of Rule 11 after repeated warnings from the Court, a public finding is not enough. Lawyers must know that courts are not spitting in the wind when they remind lawyers of their obligations. *See* Doc. 258.

A fine of $2,500 for the Rule 11 violation is roughly equivalent to the attorney's fees incurred by the plaintiffs as a result of the violative motion. *See* Doc. 376-1; Doc. 376-2. The Court gave serious consideration to a larger fine. But the specific conduct at issue here is fairly narrow and his wider mistakes will be addressed in separate disciplinary proceedings. *See In re: John David Matheny, II, Attorney*, No. 22-MC-31. Mr. Matheny is less culpable than Mr. Shaw. Combined with a public finding of a Rule 11 violation, this fine is sufficient to deter attorneys tempted to serve as rubber stamps.

The Court appreciates that Mr. Matheny has offered to pay plaintiffs' counsel $1,420 to cover some of the attorney's fees incurred by the plaintiffs in connection with the motion. *See* Doc. 388 at 4. But when Rule 11 proceedings are initiated by the Court, the Court cannot require a financial sanction payable to a party. Fed. R. Civ. P. 11(c)(4); *see also supra* page 25. And, as discussed below, the Court is ordering Mr. Shaw to cover the plaintiffs' attorney's fees in full as a sanction for violating § 1927.

### 2. Mr. Shaw

The Court will direct that a copy of this Order is sent to the Utah Supreme Court and the Utah State Bar. Mr. Shaw's misconduct should not be hidden and should be public, to protect the public and to deter other lawyers from similar violations. Given his

disregard of previous public court orders pointing out his failures and reminding him to follow the rules, *see, e.g.*, Doc. 363 at 6–9 (collecting examples), a public reprimand or warning is clearly insufficient. A financial sanction is also appropriate.

The attorney's fees incurred by the plaintiffs were fairly small and do not provide an adequate measuring stick of the scope of Mr. Shaw's violations. He violated all three subsections of Rule 11(b), and he is much more culpable that Mr. Matheny, so the fine should be larger than that imposed on Mr. Matheny. The frivolous and outrageous nature of the motion, its timing, the pattern of misconduct, and Mr. Shaw's ongoing willingness to misstate the facts even after his *pro hac vice* privileges were revoked mean the fine must be significant. Otherwise it will not deter Mr. Shaw from future misconduct, nor will it provide a sufficient deterrent to other attorneys who are tempted to play fast and loose with the record or who swoop into this Court for one case believing there is no real risk to their pocketbooks from a frivolous motion filed far from their usual place of practice.

Mr. Shaw has not provided any information about his financial situation or ability to pay, so the Court cannot know for sure how large a fine is needed to get Mr. Shaw's attention. But he purports to be a successful lawyer and has provided no reason why the fine should not be substantial.[12]

---

[12] Courts must consider an offender's ability to pay before imposing Rule 11 sanctions, but "[i]nability to pay . . . should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *In re Kunstler*, 914 F.2d at 524 (cleaned up); *see also Salvin v. Am. Nat. Ins. Co.*, 281 F. App'x 222, 226 (4th Cir. 2008) (per curiam) (unpublished).

27

The Court concludes that a fine of $25,000 is necessary and appropriate to deter similar activity by other attorneys. In the Court's judgment based on decades of experience with attorneys, this is large enough to get the attention of even the most obtuse lawyer. Anything less would be a slap on the wrist in the context of this case. A larger fine might well be appropriate, and the Court has considered it. But Mr. Shaw has already had his *pro hac vice* status revoked, *see* Doc. 363, his home State Bar will be aware of his misconduct, and he is being ordered to pay the plaintiffs over $3,000 in attorney's fees for his violation of § 1927 in addition to this fine. *See infra* Section III. The fine is on the lenient side and is not greater than necessary to deter future litigation abuse. *See Hunter*, 281 F.3d at 151.

Because the fine is substantial and because the Court is requiring Mr. Shaw to pay the plaintiffs' attorney's fees for the § 1927 violation, *see infra* Section III, the Court will set a deadline of 30 days for an initial payment of at least $10,000, with the remainder of the fine payable within 90 days of this Order.

The plaintiffs have suggested that "[d]isgorgement of [the] excessive fees" Mr. Shaw apparently charged the moving defendants "is an appropriate sanction under both Rule 11 and 28 U.S.C. § 1927." Doc. 376 at 3. But disgorgement is typically used in this circuit as a sanction for civil contempt. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 466–67 (4th Cir. 2020); *ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 449, 452–54 (E.D. Va. 2013); *Cascade Cap., LLC v. DRS Processing LLC*, No. 17-CV-470, 2019 WL 5468635, at *4–5 (W.D.N.C. Oct. 24, 2019). And any monetary sanctions imposed under Rule 11 must be payable into the court because the Court

28

initiated the present action. *See* Fed. R. Civ. P. 11(c)(4); *supra* page 25. In this procedural context, it is not an appropriate sanction.

### 3. Mr. Brooksby

As to Mr. Brooksby, it was clear from his testimony at trial that he lives in his wallet; under ordinary circumstances, a fine would be appropriate for his violation of Rule 11(b)(1) and would hit where it matters most to him. But Mr. Brooksby has declared under oath that he has no money and no assets, *see, e.g.*, Doc. 354 at 7–12, and that he never paid a nickel towards a multi-million-dollar judgment entered against him in Nevada state court in 2010. *Id.* at 20, 26–27. The facts of the case show his ongoing efforts to protect and hide assets through complicated corporate structures. *See, e.g.*, Doc. 172 at 84–87; Doc. 364 at 16 ("The evidence of record supports the inference that Mr. Brooksby and the entities he controls are engaged in a plan to hide their assets and to avoid paying the judgment."). The defendants he controls had to be threatened with contempt during the litigation before they paid a fairly small attorney's fee imposed as a discovery sanction. *See* Doc. 185 at 6–8; Doc. 192. Given this, the Court has serious doubts that Mr. Brooksby will ever pay any fine ordered or that imposition of a fine will have any deterrent effect on Mr. Brooksby.

Therefore, the Court will require Mr. Brooksby to pay in a currency of which he has plenty—time—by observing court proceedings for six court days. A sanction that requires Mr. Brooksby's time is particularly appropriate, since the improper purpose here was to require the plaintiffs and their lawyers to spend time and resources on a frivolous motion, in hopes of wearing them down and distracting them from other issues in the

case. And the time will be spent observing court proceedings as they ought to be conducted, which might deter Mr. Brooksby from expecting his attorneys to act in violation of ordinary court rules and professional responsibilities, as he did with Mr. Matheny, and from taking actions designed to abuse the litigation process, as he and Mr. Shaw did in the filing of this motion. Even if it provides no real specific deterrence to Mr. Brooksby, the time drain provides a deterrent effect to other litigants.

In determining the amount of time, the Court has considered the nine hours plaintiffs' counsel spent responding to the violative motion for attorney's fees and the resulting Show Cause Order, *see* Docs. 376-1, 376-2, and the amount of time needed to make the sanction meaningful and to deter other litigants who may be judgment-resistant from engaging in similar harassing tactics. The Court will require Mr. Brooksby to observe six days of court proceedings, which should end up being roughly triple the time spent by plaintiffs' counsel, and the Court will stretch out the observation dates over two months to serve as an ongoing reminder of the consequences of sanctionable behavior. Mr. Brooksby shall be present in the courtroom whenever court is in session on the specified days, *see infra* pages 35–36, until court is concluded for the day. The Court will impose necessary restrictions on his behavior and conduct to increase the chance that he pays attention and to decrease the chance that he distracts others, as set forth *infra* pages 35–36. Mr. Brooksby is warned that if he fails to appear as directed, an order for his arrest will be issued pending a show cause hearing for contempt of court.

Case 1:19-cv-01076-CCE-JLW   Document 400   Filed 03/23/23   Page 30 of 36

## III.    Section 1927

Section 1927 authorizes a court to require "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Whether to award sanctions under § 1927 is within the district court's discretion, *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 518–19 (4th Cir. 2018), but a court may not award sanctions without a finding that counsel acted in bad faith. *See id.* at 520; *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991); *see also Harvey v. Cable News Network, Inc.*, 48 F. 4th 257, 276–77 (4th Cir. 2022). The Show Cause Order gave notice of the possibility of a § 1927 sanction. Doc. 356 at 7.

"Section 1927 was intended to sanction conduct Rule 11 does not reach; *i.e.*, protracting or multiplying the litigation to run up the opposing party's costs." *Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991). It "aims only at attorneys who multiply proceedings." *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (cleaned up); *see also Six*, 891 F.3d at 520 (noting "§ 1927 permits sanctions only for bad-faith conduct that wrongfully multiplies proceedings"). The merits of a motion or lawsuit are irrelevant; § 1927 "focuses on the conduct of the litigation" and "is concerned only with limiting the abuse of court processes." *Great Steaks*, 667 F.3d at 522 (cleaned up). It is compensatory in nature, not punitive. *Six*, 891 F.3d at 520.

The Court finds by clear and convincing evidence that Mr. Shaw unreasonably and vexatiously multiplied the proceedings in violation of § 1927. Courts have found an

31

attorney's conduct to be "unreasonable and vexatious" when the attorney knew the claim was without merit. *See Nexus Techs., Inc. v. Unlimited Power, Ltd.*, No. 19-CV-9, 2020 WL 5723756, at *3 (W.D.N.C. Sept. 24, 2020) (citing examples); *see also Bell*, 908 F.3d at 1082 (finding baseless and objectively unreasonable post-judgment motion for attorney's fees an appropriate basis for § 1927 sanctions). For the reasons already explained, the motion for attorney's fees was "obviously meritless" and "so baseless in fact and law as to be sanctionable under § 1927 as having been filed in bad faith." *Sweetland v. Bank of Am. Corp.*, 241 F. App'x 92, 98–99 (4th Cir. 2007) (per curiam) (unpublished); *see supra* pages 7–14.

The unreasonable and vexatious conduct also multiplied the proceedings. The frivolous motion for attorney's fees, Doc. 306, required a response from the plaintiffs, Doc. 319, and an Order denying the motion. Doc. 356. While Mr. Shaw correctly points out that "[e]very motion causes the [C]ourt to spend time" because "that is [the Court's] job," Doc. 371-1 at ¶ 15, that does not mean he can file a vexatious and unreasonable motion in bad faith without consequence. And while it was only one motion, it was part of a pattern and practice of conduct designed to obstruct and delay, as the Court has previously discussed. *See Sweetland*, 241 F. App'x at 97–98 (affirming a finding of a § 1927 violation based on one baseless motion for summary judgment in light of the surrounding context). The plaintiffs should not have to bear the expense caused by the need to respond to a motion filed in bad faith under such egregious overall circumstances.

Mr. Shaw contends that the motion was not filed in bad faith and that he legitimately thought the motion could be granted. *See* Doc. 371-1 at ¶¶ 3, 13–16.

32

Although the Fourth Circuit has not yet addressed this issue, "other circuits have held that bad faith under § 1927 turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Bradley v. Analytical Grammar, Inc.*, No. 19-CV-249, 2022 WL 2678887, at *3 (E.D.N.C. July 11, 2022) (collecting cases from the First, Sixth, Seventh, Tenth, and Eleventh Circuits). As previously explained, Mr. Shaw's conduct was in bad faith whether viewed objectively or subjectively. His protestations of innocence are not credible, for reasons discussed *supra* pages 12, 15–20, and viewed objectively his conduct was so unreasonable as to constitute bad faith.

Mr. Shaw is responsible for the multiplication of the proceedings and therefore shall "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The plaintiffs have provided evidence that the fees incurred in response to the frivolous motion for attorney's fees and the Show Cause Order add up to $3,640.00. *See* Doc. 376-1; Doc. 376-2. The Court will order Mr. Shaw to pay that sum to plaintiffs' counsel within fourteen days.

The plaintiffs suggest disgorgement as a sanction under § 1927. Doc. 376 at 3. But the text of § 1927 limits sanctions to "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Disgorgement is not an appropriate sanction for a § 1927 violation.

The Court declines to find Mr. Matheny in violation of § 1927 for his misconduct related to the motion for attorney's fees. Mr. Matheny was careless, negligent, and generally in over his head throughout the course of the litigation. It is also clear that inexperience and incompetence played a role in his decision to give Mr. Shaw carte

33

blanche authority to sign motions on his behalf. *See* Doc. 369-1 at ¶ 2 (showing he has practiced law for less than eight years); *id.* at ¶ 3 (showing he has only appeared in federal court for two years). Viewing the evidence objectively, perhaps a finding of bad faith is appropriate, but that is not so viewed subjectively. Given the unusual facts, the Court declines to find that Mr. Matheny made or signed this particular motion in bad faith, which is required for a violation of § 1927. *Harvey*, 48 F. 4th at 276–77.

## IV. Conclusion

Steven W. Shaw filed the motion for attorney's fees with no legal or factual support and for improper purposes, and he vexatiously multiplied the proceedings in bad faith. Craig Brooksby is responsible for the filing of the motion because he also had an improper purpose of harassing the plaintiffs and their lawyers. Mr. Matheny is equally responsible for the filing of a motion without legal and factual support. Sanctions are appropriate to deter these three men and others who might be tempted to break the rules and abuse the litigation process.

It is **ORDERED** that:

1. John David Matheny, II, is **SANCTIONED** for violating Federal Rule of Civil Procedure 11(b)(2) and (3) and as a sanction this Order **SHALL** be disseminated publicly and he **SHALL** pay a fine of $2,500.00 to the Clerk of Court. Mr. Matheny **SHALL** pay this fine in its entirety no later than 90 days from the entry of this Order and file a certificate of compliance with the Court no later than that same date.

34

2. Steven W. Shaw is **SANCTIONED** for violating Federal Rule of Civil Procedure 11(b)(1)–(3) and as a sanction he **SHALL** pay a fine of $25,000.00 to the Clerk of Court and this Order **SHALL** be disseminated publicly and to the State Bar in Utah, where Mr. Shaw says he is admitted to practice law. Mr. Shaw **SHALL** pay at least $10,000.00 of this fine no later than 30 days from the entry of this Order and file a certificate of compliance with the Court no later than that same date. Mr. Shaw **SHALL** pay this fine in its entirety no later than 90 days from the entry of this Order and file a certificate of compliance with the Court no later than that same date.

3. Craig O. Brooksby is **SANCTIONED** for violating Federal Rule of Civil Procedure 11(b)(1) and as a sanction he **SHALL** appear in Courtroom 3 of the L. Richardson Preyer Federal Building, 324 West Market Street, Greensboro, North Carolina, on April 10, 2023, May 16, 2023, May 18, 2023, May 25, 2023, June 6, 2023, and June 8, 2023. He **SHALL** arrive at 9:20 a.m. each day, **SHALL** be present in the courtroom and attentively observe court proceedings at all times court is in session that day, and **SHALL NOT** leave until the Court adjourns for that day, aside from when court is in temporary recess. He **SHALL NOT** bring any electronic device or reading material into the courthouse or the courtroom, **SHALL NOT** sit near anyone while in the courtroom, and **SHALL NOT** speak to any lawyers, jurors, or witnesses in other proceedings while he is in the courthouse.

Case 1:19-cv-01076-CCE-JLW   Document 400   Filed 03/23/23   Page 35 of 36

4. Mr. Shaw is **SANCTIONED** for unreasonably and vexatiously multiplying the proceedings in violation of 28 U.S.C. § 1927 and as a sanction he **SHALL** reimburse plaintiffs' attorney's fees of $3,640.00 caused by the misconduct. Mr. Shaw **SHALL** pay plaintiffs' counsel and file a certificate of compliance no later than 30 days from the entry of this Order.

5. Failure to comply with this Order subjects Mr. Shaw, Mr. Matheny, and Mr. Brooksby to being held in contempt of court.

6. The Clerk **SHALL** send a copy of this Order to the Utah Supreme Court, the Utah State Bar, and the North Carolina State Bar.

7. The Clerk **SHALL** publish a copy of this Order on the Court's website.

8. Mr. Matheny shall mail and email a copy of this order to Mr. Brooksby.

9. The Clerk shall mail a copy of this Order to Craig Brooksby at the address provided in Doc. 392 at 3.

This the 23rd day of March, 2023.

_____
UNITED STATES DISTRICT JUDGE

36