IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRIAN C. WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-CV-1076 |
| | ) | |
| THE ESTATES LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND CIVIL CONTEMPT ORDER

Catherine C. Eagles, District Judge.

After a trial, the jury found that the defendants had engaged in a bid-rigging conspiracy to limit competition and reduce prices paid for real estate in foreclosure. A large money judgment and a permanent injunction were entered. After some of the defendants violated the injunction and avoided collection efforts, the Court appointed James C. Lanik as Receiver over the assets of defendants Craig Brooksby, The Estates, LLC, Avirta LLC, GG Irrevocable Trust, and King Family Enterprises, LLC. These five receivership defendants have failed and refused to comply with the Receivership Order, as amended and expanded, and are in civil contempt. Coercive incarceration of Mr. Brooksby is appropriate to force compliance with this Court's orders.

### I.  Overview

Based on evidence showing that the five original receivership defendants had violated and were violating the Receivership Order, Doc. 362, and Amended Receivership Order, Doc. 399, the Court issued a Show Cause Order on April 6, 2023,

directing Craig Brooksby, The Estates, LLC, Avirta LLC, GG Irrevocable Trust, and King Family Enterprises, LLC to appear and show cause on April 11, 2023, why they should not be held in civil contempt for violations of the Receivership Orders and incarcerated pending compliance. Doc. 411. Mr. Brooksby appeared personally, as trustee of GG Irrevocable Trust, and as a person with knowledge of the assets and control of the records of Avirta, King Family Enterprises, and The Estates. Rex King, a manager of Avirta, and Sonja Brooksby, a manager of King Family Enterprises, also appeared. The Court heard from the Receiver as to the current status of compliance. Mr. Brooksby chose to testify and offer evidence. Ms. Brooksby and Mr. King did not testify and offered no evidence.

At the end of the hearing, the Court found the five named receivership defendants in contempt of court and that coercive confinement of Mr. Brooksby was appropriate to coerce compliance. Mr. Brooksby was taken into custody by the Marshal. The Court gave Ms. Brooksby or Mr. King more time out of custody to bring Avirta, King Family Enterprises, and The Estates into compliance. The matter was set for status conference on Friday, April 21, 2023, after the date the next round of filed statements are due from these and other receivership defendants on April 19, 2023. *See* Minute Entry 04/11/2023.

This Order memorializes and supplements the Court's finding made in open court on April 11, 2023, and the summary order entered that same day. Doc. 418.

## II.    Civil Contempt

"To ensure compliance with its orders, a district court has the inherent authority to hold parties in civil contempt." *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding*

2

*LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *see also Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 102 (4th Cir. 2022). A court may impose civil contempt remedies to coerce obedience to a court order or to compensate a party for injuries resulting from the contemnor's noncompliance. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004).

Before a court holds a party in civil contempt, it must provide the alleged contemnors with notice and an opportunity to be heard. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). A contempt order requires proof by clear and convincing evidence that there was a valid decree of which the alleged contemnor had knowledge; that the decree benefitted the opposing party; that the alleged contemnor violated the terms of the decree and knew he violated its terms; and that the opposing party suffered harm. *See Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000); *see also dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 145 (4th Cir. 2023).

Once there is a prima facie showing of these elements, "the burden shifts to [the] alleged contemnor to justify his non-compliance." *U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC*, No. 9-CV-387, 2010 WL 2131852, at *2 (W.D.N.C. May 25, 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). "Recognized defenses to civil contempt include: (1) a good-faith attempt to comply with the court's order; (2) substantial compliance; and (3) an inability to comply." *Capitalstreet Fin.*, 2010 WL 2131852, at *2 (citing *Consolidated Coal Co. v. United Mine Workers of Am.*, 683 F.2d 827, 832 (4th Cir. 1982)); *but see Estes v. Clarke*, No. 15-CV-155, 2022 WL 2383956, at *5 (W.D. Va. July 1, 2022) (discussing the

3

"uncertainty" in this circuit "as to whether good faith can serve as a defense to civil contempt"). Willfulness is not an element of civil contempt. *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995); *see also United States v. Westbrooks*, 780 F.3d 593, 596 n.3 (4th Cir. 2015).

## III. Findings of Fact and Conclusions of Law

The Court has previously made extensive findings of facts in other Orders that detail the specifics of the case, the proceedings, and the numerous post-judgment proceedings. *See, e.g.*, Doc. 364; Doc. 397. The Court adopts those facts by reference, to the extent they are relevant here. The Court finds the following facts by clear and convincing evidence.

After a jury trial, the Court entered an approximately $1.2 million dollar judgment against the defendants, including the five original receivership defendants. Doc. 245. The Court also entered a permanent injunction prohibiting Mr. Brooksby and certain other defendants from acting with any other person or entity to buy or sell property obtained through a public real estate foreclosure auction for eight years. Doc. 246 at ¶ 9. Two months later, the Court entered a charging order to multiple limited liability companies in which defendants Avirta, King Family Enterprises, and GG Irrevocable Trust have economic interests. Doc. 293.

In the months following the entry of the permanent injunction, Mr. Brooksby continued to participate with others in the sale of properties bought at public foreclosure auctions. *See* Doc. 364 at 9–10. Despite this, neither Mr. Brooksby nor any other defendant or entity subject to the charging order paid anything towards the judgment.

4

In the fall of 2022, the plaintiffs filed a motion to hold Mr. Brooksby in contempt for violating the permanent injunction. Doc. 329. The plaintiffs also filed a motion asking that James C. Lanik be appointed as receiver of the assets of Mr. Brooksby, The Estates, Avirta, GG Irrevocable Trust, and King Family Enterprises, the five receivership defendants whose actions and inactions are at issue here. Doc. 316. With no objection from these defendants, the Court granted both motions, based on extensive findings of fact about the defendants' efforts to hide assets. *See generally* Doc. 364.

The Court appointed the Receiver by Order filed December 1, 2022. Doc. 362. Among other things, the Receivership Order required the receivership defendants to surrender possession and control of all assets to the Receiver and to deliver all records to the Receiver. *Id.* at 2–3.

In March 2023, the Receiver filed a motion asking the Court to expand his receivership powers and to amend the Receivership Order to include additional entities owned and controlled by Mr. Brooksby and/or Avirta in the receivership. Doc. 394; Doc. 395 at 1, 6–9. After reviewing the evidence and giving the receivership defendants an opportunity to respond, the Court granted the motion. *See* Docs. 397, 399. The Court found that Mr. Brooksby and the receivership defendants act through other entities, subsidiaries, and affiliates which constitute assets of the receivership defendants (the "asset-entities"); that Avirta has a financial interest in and controls at least 175 asset-entities that own or are the sole members of other LLCs that also constitute asset-entities of the receivership defendants, at least some of which own real property; that asset-entities under the control and at the direction of Mr. Brooksby and/or Avirta sold at least

5

two properties in December 2022 without the Receiver's consent and in violation of the Receivership Order and, potentially, the permanent injunction; that Avirta filed a bankruptcy petition without the Receiver's consent; that the receivership defendants had not turned over assets and records to the Receiver as ordered; and that an expanded Receivership Order was necessary to protect Avirta's assets and prohibit the receivership defendants and the asset-entities they control from concealing assets and violating the Receivership Order, the permanent injunction, and the charging order. Doc. 397 at 2–3.

The Court entered the Amended Receivership Order on March 21, 2023, expanding the receivership and ordering all of the receivership defendants, *inter alia*, to immediately surrender possession and control of assets to the Receiver, Doc. 399 at ¶¶ 17–18, including all cash, cash equivalents, and bank accounts, *id.* at ¶ 17(c), to deliver to the Receiver all records, *id.* at ¶¶ 9, 12, 15, and to file required sworn statements within five business days. *Id.* at ¶ 10. No receivership defendant filed a sworn statement on the due date.

The Court scheduled a status conference to hear from the Receiver and the five original receivership defendants as to whether the latter had complied with the Receivership Orders, specifically the provisions requiring them to turn over assets and records. Doc. 402. The Court required the five original receivership defendants to appear in person and advised the defendants that a Show Cause Order might be issued if they were not in compliance. *Id.* at 1–2. They were then represented by counsel, who certified that he mailed the Order to the five defendants. Doc. 404. Counsel for the receivership defendants was then allowed to withdraw. Doc. 403.

6

The status conference was held on April 6, 2023. *See* Minute Entry 04/06/2023.

Mr. Brooksby appeared in person and represented himself, *see* Doc. 410; he also spoke as

a person in control of the records of the other four receivership defendants.[1]  No

receivership defendant had filed the required sworn statements as of the hearing.

Although "each and every member and manager of" Avirta, King Family

Enterprises, and The Estates were ordered to appear in person, Doc. 402 at 2, no one

other than Mr. Brooksby originally appeared.  Specifically, Rex King and Sonja

Brooksby did not appear, *see* Minute Entry 04/06/2023, despite the fact that Mr. King is a

manager of Avirta, Doc. 256-4, Doc. 252-11, and Ms. Brooksby is a manager of King

Family Enterprises. Doc. 256-2.[2]  The Court issued Orders for their arrest.  Minute Entry

04/06/2023.  After a recess during the hearing, Mr. King appeared, and the Court

withdrew the Order for arrest as to him.  *Id.*  Mr. King was present for some of the

relevant discussion, including discussion of the terms of the two Receivership Orders.

---

[1] Filed records show that Mr. Brooksby is Trustee of GG Irrevocable Trust, Doc. 256-1 at 2, and a manager of Avirta and King Family Enterprises through his management of Citadel Management, LLC.  *See* Doc. 256-5; Doc. 256-2; Doc. 256-3; Plaintiff's Exhibit #53 at 12.  Mr. Brooksby signed the Avirta bankruptcy petition, and his testimony and statements at recent hearings establishes his role as decision-maker for these entities and The Estates.

[2] According to records on the docket or in evidence, Mr. King is also a manager of Citadel Management, LLC, Doc. 256-3, Doc. 252-9, which is a manager of Avirta, King Family Enterprises, and The Estates.  Doc. 256-5; Doc. 256-2; Plaintiffs' Exhibit #53 at 12.  Ms. Brooksby is a manager of King Family Enterprises, Doc. 256-2, Doc. 252-3, which is a member of Avirta.  Doc. 256-5; Doc. 252-11; Doc. 248-2 at 1.  Avirta is in turn a member of The Estates. Doc. 248-1 at 1; Plaintiff's Exhibit #53 at 12.  And Ms. Brooksby is also a partner in Rex King Limited Partnership, Doc. 256-6, which is a member of King Family Enterprises LLC.  Doc. 256-2.  In sum, Mr. King and Ms. Brooksby are both connected to and responsible for the actions of Avirta, The Estates, and King Family Enterprises.

7

At the status conference, the Receiver confirmed that he had still not received any of the assets, nor had he received unfiled copies of the sworn statements that were past due under the Amended Receivership Order. Mr. Brooksby was advised of the possibility of criminal contempt proceedings and that anything he said could be used against him in criminal proceedings. He chose to speak.

At the end of the hearing, and after hearing from Mr. Brooksby and Mr. King, the Court issued a Show Cause Order to the five original receivership defendants ordering them to show cause why they should not be held in civil contempt for violations of the Receivership Orders. Doc. 411. The Show Cause Order was handed to Mr. Brooksby and Mr. King in the courtroom, and copies were mailed to Ms. Brooksby and to the addresses of record for all five original receivership defendants.

In the written Show Cause Order, the Court identified four specific violations: (1) failing to immediately surrender possession and control of assets to the Receiver; (2) failing to deliver to the Receiver all records; (3) failing to file with the Court required sworn statements, including the identity and contact information for all employees, attorneys, agents, accountants, and contractors; and (4) failing to turn over rental proceeds receiver for 2104 Woodhaven to the Receiver.[3] *Id.* at 2.

---

[3] According to the Receiver, 2104 Woodhaven is owned by an original receivership defendant or one of its subsidiaries that "was subject to a short-term rental" immediately before the amended Receivership Order. Doc. 408 at ¶ 6. The Receiver believes that the original receivership defendants received approximately $4,000–$5,000 from this rental after the amended Receivership Order. *Id.* The Receiver has demanded these proceeds be turned over but had not received them as of April 6, 2023, when the Court issued the Show Cause Order. *See* Doc. 414 at 5.

Case 1:19-cv-01076-CCE-JLW   Document 425   Filed 04/17/23   Page 8 of 19

On April 11, 2023, Mr. Brooksby, Ms. Brooksby, and Mr. King appeared for the Show Cause hearing. Minute Entry 04/11/2023. As of the hearing, no receivership defendant had filed a sworn statement as required by the Amended Receivership Order. *See* Doc. 399 at ¶ 10. The Receiver advised the Court that the five receivership defendants had not produced all the records or assets. The five receivership defendants had an opportunity to present evidence and to be heard on whether they should be held in civil contempt and, if so, what remedies should be imposed. The Receiver advised that he had begun to receive some documents via email about the receivership defendants added by the Amended Receivership Order, along with a few other items, but confirmed that he still had not received the sworn statements, he had no account information or passwords for business records Mr. Brooksby testified were stored in the cloud, and he had not received any individual financial records from Mr. Brooksby other than some purported amended tax returns. *See* Doc. 408; Doc. 414 at 4–5.

At the hearing, after again being warned that any statements he made could be used against him in criminal proceedings, Mr. Brooksby acknowledged that he and the other receivership defendants were not in compliance with the Receivership Orders. He presented evidence that he has finally taken some steps to provide the records and assets to the Receiver. The Receiver confirmed that he had begun receiving materials, but the materials were nowhere near complete and were not organized.

Any business entity or trust that complies with anything close to normal record-keeping practices should have been able to produce its records to the Receiver within a few weeks, at the most, of the entry of the Receivership Order over four months

ago. The chaotic and incomplete delivery and other evidence, some of which is summarized herein, demonstrate that the original receivership defendants cannot be trusted and continue to engage in efforts to hide assets. Mr. Brooksby's testimony itself showed several additional specific violations, including his failure to provide passwords for his email accounts and documents associated with a car loan. He also testified that he gives any checks he receives to his wife, who deposits them in an account on which he is not a signatory, further establishing his attempts to evade the Orders of this Court.[4]

It is undisputed that the original receivership defendants received notice of the Show Cause hearing and that they knew of the two Receivership Orders. The original receivership defendants explicitly consented to the appointment of a receiver in open court on November 29, 2022, and they were on notice that such an order would be entered and that they would be required to hand over all assets and records to the Receiver. They were still represented by counsel at the time the Amended Receivership Order was entered, and he presumably provided them with a copy; in any event, the Receiver did so. Doc. 407.

The receivership defendants also knew they were in violation. To decide whether one had actual or constructive knowledge of their violations, "the Court looks not only to the facts surrounding the immediately involved violations but considers as well the

---

[4] It seems likely that these funds are going at least in part into an account of Somul Group, LLC, which Ms. Brooksby says is her company, Doc. 415 at ¶ 5, and which is one of the receivership defendants added in the Amended Receivership Order. Doc. 399 at ¶ 1. Any and all of Somul's assets should have been turned over to the Receiver after entry of the Amended Receivership Order in March 2023. *See id.*

history and context of the litigation between the parties." *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 614 (D. Md. 2017). The Court need not repeat in detail again the efforts these defendants have made throughout this litigation and particularly since judgment was entered to evade court orders.

In addition, a bankruptcy judge in the District of Utah explicitly told Mr. Brooksby and Avirta in February 2023 that they were in violation of the Receivership Order. Doc. 395 at 46. The Order setting the case for a status conference referenced the failure to comply. Doc. 402. Mr. Brooksby and Mr. King were present for the April 6 hearing at which the violations of the Orders were discussed, yet not one of the five receivership defendants filed the required sworn statement before the April 11 hearing and not one turned over anything approaching complete assets and records. Ms. Brooksby implicitly acknowledged awareness of these Orders and the violations in her declaration, Doc. 415, and she did not present any evidence at the April 11 hearing that she was unaware of the existence of those Orders or that she had taken any steps to comply on behalf of those entities she controls.

The Court has considered all of the evidence and finds by clear and convincing evidence that the five original receivership defendants have not filed the declarations required by the Amended Receivership Order, Doc. 399 at ¶ 10, they have not immediately or even belatedly surrendered possession and control of all assets to the Receiver, *id.* at ¶¶ 17–18, and they have not delivered to the Receiver all records. *Id.* at ¶¶ 9, 12, 15. The Court defers a finding as to the Woodhaven property. The five original

11

receivership defendants have violated and are violating the terms of the Receivership Orders, in the ways specified herein, and each one knew they were violating the Orders.

Mr. Brooksby contends that he has been "trying [his] hardest to comply with all court orders fully" and has been "genuinely doing everything [he] possibly can." Doc. 416 at ¶ 1. But the evidence does not come close to establishing that any of the five receivership defendants have made a good-faith attempt to comply. *See SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, __ F. Supp. 3d __, 2022 WL 4933117, at *6 (M.D.N.C. Sept. 26, 2022) (noting alleged contemnors have the burden to establish good faith as a defense to civil contempt); *see also Estes*, 2022 WL 2383956, at *5 (discussing the "uncertainty" in this circuit "as to whether good faith can serve as a defense to civil contempt" and noting that alleged contemnors bear the burden of establishing any defense to civil contempt). They have offered no evidence, for example, that Mr. Brooksby made a good-faith attempt to hand over his electronics or his usernames and passwords for electronic accounts, as required by the Receivership Orders. *See* Doc. 362 at 2–3; Doc. 399 at ¶¶ 9, 15. There was no evidence that GG Irrevocable Trust or The Estates have provided any records to the Receiver. Not one of these defendants has acted in good faith.

Mr. Brooksby points out that he has provided much of the information during the bankruptcy proceedings related to Avirta and otherwise by directing "staff" to send the information to Mr. Lanik. But it is undisputed that these productions were incomplete, and none were provided in conjunction with the filed sworn declarations required by the Amended Receivership Order.

Mr. Brooksby says that the required task is overwhelming and takes time. This contention is undermined by his other contention that Avirta provided the information during the bankruptcy; if true, then it should have been easy for Avirta to file its declaration. It also ignores the fact that the receivership defendants have been under court order to turn over records since December 1, 2022, over four months ago. And whatever the difficulties in providing all of the records, the receivership defendants provided absolutely nothing, not even the most basic of business records that any entity created for legitimate purposes would have at hand, until the Court scheduled a status conference and warned them that contempt proceedings were possible.

Mr. Brooksby's protestations about the extent of the difficulties are not credible. To the extent he was attempting to raise an impossibility defense on behalf of himself or the other receivership defendants, they have not met the requisite "burden of production." *See United States v. Butler*, 211 F.3d 826, 831 (4th Cir. 2000); *Davis v. Davis*, No. 20-CV-609, 2022 WL 2110410, at *5–6 (E.D.N.C. June 10, 2022).

Finally, Mr. Brooksby complains that he has been told to take no action on behalf of the LLCs and at the same time told to produce records and assets and that he is confused.[5] The Receivership Orders are clear: the receivership defendants must turn over all records and assets, the trust and LLCs cannot otherwise take any actions, and, in

---

[5] Mr. Brooksby says the Receiver should be telling "staff" to turn over records, but he does not explain how the Receiver should know how to get in touch with such "staff." Neither he nor anyone else filed the sworn declaration which requires him to identify the names and contact information for such "staff," and he only provided some contact information informally hours before the Show Cause hearing.

view of the ongoing non-compliance over the course of months and dishonest and deceptive acts over an even longer period, the receivership defendants must show compliance under penalty of perjury by filing the required declarations and reports. To the extent Mr. Brooksby is confused, that confusion is a reflection of his deliberate obtuseness at best and dishonest gamesmanship at worst, not of conflicting orders.

For the reasons explained above, the Court finds by clear and convincing evidence that the five original receivership defendants are in contempt of court for violations of the Receivership Order, Doc. 362, as amended, Doc. 399.

## IV.    Appropriate Consequences for Civil Contempt

"Civil contempt orders—and the appropriate consequences for violating them— fall to the district court's discretion." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). The remedy for civil contempt "must serve either to (1) coerce obedience to a court order, or (2) compensate the complainant for losses sustained as a result of the contumacy." *dmarcian*, 60 F.4th at 146 (cleaned up). The remedy should be "based on the nature of the harm and the probable effect of alternative" remedies. *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1407 (E.D. Va. 1992), *aff'd*, 38 F.3d 133 (4th Cir. 1994).

Appropriate remedies may include, for example, a coercive daily fine, a compensatory fine, attorney's fees and expenses, and coercive incarceration. *See United States v. Rylander*, 460 U.S. at 761–62 (coercive incarceration); *In re Gen. Motors Corp.*, 61 F.3d at 259 (compensatory fines); *Enovative Techs., LLC v. Leor*, 110 F. Supp. 3d 633, 637 (D. Md. 2015) (coercive incarceration appropriate when coercive fine did not

14

compel compliance); *accord Shillitani*, 384 U.S. at 370 (approving coercive incarceration as a remedy for civil contempt). Under appropriate circumstances, "[c]oercive incarceration is a 'paradigmatic civil contempt remedy.'" *In re Pukke*, 790 F. App'x 513, 514 (4th Cir. 2020) (per curiam) (unpublished) (quoting *Bagwell*, 512 U.S. at 828).

The Court has considered monetary remedies, including a coercive daily fine each day the defendants continue to be in violation. But based on the evidence of record and the Court's experience with this case and these defendants, a fine would have no coercive effect. These receivership defendants have paid nothing towards the $1.2 million dollar judgment. Mr. Brooksby, situated at the apex of all of the receivership defendants, has declared under oath that he has no money and no assets, *see, e.g.*, Doc. 354 at 7–12, and that he never paid a nickel towards a multi-million-dollar judgment entered against him in Nevada state court in 2010. *Id.* at 20, 26–27. He testified at the April 11 hearing that he does not have a bank account; when he is paid for work he does, he gives the checks to his wife, Sonja Brooksby, who deposits them in accounts of which he is not an owner. The record shows his ongoing efforts to hide assets. *See, e.g.*, Doc. 172 at 84–87; Doc. 364 at 16. The defendants he controls had to be threatened with contempt during the litigation before they paid a fairly small attorney's fee imposed as a discovery sanction. *See* Doc. 185 at 6–8; Doc. 192. Given all this, the Court has serious doubts that Mr. Brooksby or the other receivership defendants he controls will ever pay any fine ordered or that a daily fine will have any coercive effect.

In its discretion, the Court finds and concludes that coercive incarceration of Mr. Brooksby is the only reasonable and appropriate method likely to result in compliance.

15

None of the receivership defendants have suggested an alternative, other than continuing to give them more time. The receivership defendants, all of whom Mr. Brooksby controls, have been under a court order to turn over all assets and records since December 1, 2022. Doc. 362. They have not done so. While the hearing on April 6, 2023, and the Show Cause Order did result in some partial compliance, it is clear the receivership defendants are still engaged in gamesmanship and efforts to avoid full compliance, offering excuses that are either not credible or beside the point.

The Order setting the matter for a status conference and the Order to Show Cause warned the receivership defendants of the possibility of incarceration and gave them an opportunity to avoid it. Doc. 402 at 2–3; Doc. 411 at 2–3. The remedy of incarceration of the individual defendants and the managers and owners of the LLC defendants is warranted. *See Bagwell*, 512 U.S. at 828; *see also Cascade Cap., LLC v. DRS Processing LLC*, No. 17-CV-470, 2018 WL 4705559, at *3–4 (W.D.N.C. Oct. 1, 2018); *Quilling for Sardaukar Holdings, IBC v. 3-D Marketing, LLC*, No. 6-CV-293, 2007 WL 9711514 (N.D. Tex. July 18, 2007) (Mag. J., findings and recommendation) (recommendation to hold LLC defendant and its principal agent, who was not a party to the underlying action, in civil contempt and to incarcerate the principal agent until LLC complies), *adopted*, No. 6-CV-293, Doc. 73 (N.D. Tex. Sept. 20, 2007).

The Court, in its discretion, decides not to confine Ms. Brooksby and Mr. King at this time and holds the civil contempt matter open as to them. Although Ms. Brooksby, as a manager of King Family Enterprises, and Mr. King, as a manager of Avirta, have outstanding obligations under the Receivership Orders, *see supra* note 2, the evidence

suggests that they may have been unjustifiably relying on Mr. Brooksby. Without Mr. Brooksby's obstruction, they may be able to move Avirta, King Family Enterprises, and The Estates towards compliance. Should they fail to bring Avirta, King Family Enterprises, and The Estates into compliance by the time of the next status conference, the Court will revisit this decision.

In contrast, the evidence is overwhelming that Mr. Brooksby is and has been the main decision-maker in this complicated scheme, and he has had months to bring all five of the original receivership defendants into compliance with the Court's Orders. Incarceration until he complies on behalf of himself and the other original receivership defendants is appropriate.

Mr. Brooksby's term of coercive incarceration may be indefinite because "the contemnor is able to purge the contempt and obtain [their] release by committing an affirmative act." *Bagwell*, 512 U.S. at 828. Therefore, he "carries the keys" to the prison "in his own pocket." *Id.*; *see also Shillitani*, 384 U.S. at 370–71 (approving confining a witness in contempt for refusing to testify pending compliance). The Court will regularly review his confinement to determine if he should be released.

The Court does not impose this confinement lightly. *See Pukke*, 53 F.4th at 103. But the receivership defendants have had ample opportunity to comply with the Receivership Orders and ample warnings that failure to comply could lead to coercive incarceration. This is not the first time the Court has dealt with these defendants violating court orders. While coercive incarceration is a serious remedy, the misconduct here is serious; the contempt is flagrant and has continued for months despite clear

warnings and an Amended Order. Allowing Mr. Brooksby to thumb his nose at court orders based on his flimsy excuses and gamesmanship harms the plaintiffs and undermines the rule of law. The Court in its discretion finds it necessary here to coerce these otherwise-unwilling defendants to comply by incarcerating Mr. Brooksby until the receivership defendants named herein comply.

This Order is without prejudice to criminal contempt proceedings, which the Court has twice told these five receivership defendants are also likely to be forthcoming.

This Order does not address compliance or non-compliance of the receivership defendants added in the Amended Receivership Order, Doc. 399, even though it appears that many also are in violation of that Order. The Receiver shall mail a copy of this Order to each identifiable receivership defendant as a reminder of the potential remedies available and consequences to members and managers of LLCs who take no steps to comply with a valid court order. Each must immediately turn over assets and records and file the sworn statements and accountings required in the Amended Receivership Order. The Receiver is free to seek a show cause order if and when he concludes that is necessary or appropriate.

## V. Conclusion

Craig Brooksby, The Estates, LLC, Avirta LLC, King Family Enterprises, LLC, and GG Irrevocable Trust have failed and refused to comply with the Receivership Order, as amended and expanded. They are in contempt of court. Coercive incarceration of Mr. Brooksby is appropriate to force compliance with this Court's orders. This matter is held open as to Ms. Brooksby and Mr. King.

It is **ORDERED** that:

1. The Court finds the defendants Craig Brooksby, The Estates, LLC, Avirta LLC, King Family Enterprises, LLC, and GG Irrevocable Trust in ongoing civil contempt.

2. Subject to further order of the Court, Craig Brooksby **SHALL** be imprisoned until such time as the Court finds he has purged himself of contempt.  Doc. 418.

3. The matter is set for review on April 21, 2023, at 9:30 a.m.  Craig Brooksby, Sonja Brooksby, Rex King, and all other members and managers of The Estates, LLC, Avirta LLC, and King Family Enterprises, LLC, **SHALL** appear.

4. The Clerk **SHALL** mail a copy of this Order to the addresses of record for Mr. Brooksby, The Estates, LLC, Avirta LLC, King Family Enterprises, LLC, and GG Irrevocable Trust, and to the addresses provided by Mr. King and Ms. Brooksby. The Receiver **SHALL** provide copies to all other receivership defendants he is able to identify in as cost-effective a manner as is feasible.

This the 17th day of April, 2023.

UNITED STATES DISTRICT JUDGE