IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRIAN C. WILLIAMS, et al., )
)
Plaintiffs, )
)
v. ) 1:19-CV-1076
)
THE ESTATES LLC, et al., )
)
Defendants. )
)
)
IN RE: 2104 WOODHAVEN SALE )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge

Robin LaVecchia owned a home at 2104 Woodhaven Road but fell behind on her mortgage payments. Timber Refuge, LLC, bought the property out of foreclosure. During litigation between the two, Ms. LaVecchia filed a *lis pendens*. Later, five limited liability companies filed deeds of trust on the property. Soon thereafter, Ms. LaVecchia obtained a judgment against Timber for converting her personal property into fixtures.

Timber is now one of several entities in receivership overseen by this Court, and the Receiver has sold the Woodhaven property. Defendant Carolyn Souther objects to the Receiver's motion asking to pay Ms. LaVecchia's judgment in full out of the Woodhaven sales proceeds and contends that the *lis pendens* Ms. LaVecchia filed does not give her judgment priority over the five deeds of trust. But none of the LLCs holding the purported deeds of trust have objected, and the *lis pendens* was, in any event, valid. Ms. LaVecchia's judgment has priority over the deeds of trust.

I.  **Undisputed Facts**

In 2018, Ms. LaVecchia fell behind on mortgage payments on her home at 2104 Woodhaven Road, and Timber Refuge, LLC, bought the property at a foreclosure sale. *See* Doc. 489-3 at ¶¶ 2, 4. Ms. Souther and defendant Craig Brooksby were managers of Timber. Doc. 489-1 at 3 ¶ 2.

Before the foreclosure sale became final, Ms. LaVecchia detached items from the house and put them and other items of personal property in the garage. Doc. 489-3 at ¶ 3; Doc. 489-1 at 3 ¶¶ 6–7. After the sale, a dispute arose between Ms. LaVecchia and Timber over these items. Doc. 489-3 at ¶ 5. In 2019, Timber sued Ms. LaVecchia, Doc. 489-1 at 4 ¶ 14, and Ms. LaVecchia filed counterclaims, contending that Timber had wrongfully taken her personal property. Doc. 489-3 at ¶ 6; *see* Doc. 487-1. At some point, Ms. Souther became a third-party defendant. *See* Doc. 487-1 at 2.

In 2021, the trial court granted partial summary judgment to Ms. LaVecchia and held that any items not attached at the time of foreclosure were personalty, ordered the return of those items, and left all other issues for trial. Doc. 489-3 at ¶ 7; Doc. 489-1 at 6 ¶ 23; *see* Doc. 489-2. Timber did not return all items as ordered, Doc. 489-3 at ¶ 8, instead reattaching many of them, including appliances, a kitchen island, and a chandelier, to the home. *Id.* at ¶ 9. Timber marketed the property for sale, with listings using photos featuring the "personalty-turned-fixtures." *Id.* at ¶ 10; Doc. 489-1 at 5 ¶ 18.

When Ms. LaVecchia learned that Timber had converted her personalty into fixtures, she filed a motion seeking enforcement of the summary judgment order and asking for the value of the items covered in the order. Doc. 489-4. To put future buyers

2

or lenders on notice of her interest in the realty resulting from conversion of her personal property into fixtures, Ms. LaVecchia also filed a *lis pendens* on the same day, July 15, 2021. Doc. 489-3 at ¶ 11; *see* Doc. 489-5. The *lis pendens* states that "[t]he nature and purpose of the action is in part for title to and possession of certain personal property that LaVecchia is informed and believes has been attached by the opposing parties to the real property [at 2104 Woodhaven], treating the same as fixtures." Doc. 489-5 at 2 (cleaned up). Timber and Ms. Souther received notice of the *lis pendens*. *See id.* at 3.

Many months later, on June 15, 2022, Mr. Brooksby signed several deeds of trust on the property, on behalf of five different LLCs, including 153 Fish, LLC. Doc. 475 at ¶ 4; *see* Doc. 461 at 27–44, 58–63, 69–74 (Exhibits B, C, D, H, and K).[1] He recorded the same on June 17, 2022. Doc. 475 at ¶ 4.

On July 19, 2022, a year after Ms. LaVecchia filed the *lis pendens* and after a trial on the merits, the trial court entered judgement against Timber. Doc. 489-1. At no time while the lawsuit was pending or thereafter did Timber, Ms. Souther, any of the five LLCs purportedly holding deeds of trust on the property, (hereinafter "the five LLCs"), or anyone else seek to cancel the *lis pendens*. No party appealed from the judgment.

## II. Procedural History

On June 2, 2023, the Receiver moved to approve the sale of 2104 Woodhaven, along with the payments of certain encumbrances at closing. Doc. 461. In his original motion, the Receiver did not anticipate paying Ms. LaVecchia's judgment in full, *see id.*

---

[1] The five LLCs are JAMBIRA Holdings, LLC, Zamar Partners, LLC, Fastcap, LLC, 153 Fish, LLC, and Funding SOS, LLC. *See* Doc. 461 at ¶ 4; Doc. 475 at ¶¶ 4, 7.

at ¶ 9, but he listed the judgment as an interest of record, along with multiple deeds of trust and a pool care lien. *Id.* at ¶ 4. The Receiver mailed a copy of his motion to Ms. LaVecchia and the five LLCs, among others. Doc. 463 at 4–6. Persons and entities who have otherwise appeared in the case also received notice, including Mr. Brooksby and counsel for Ms. Souther. *See id.* at 2–4.

Later that month, Ms. LaVecchia objected to the sale if her judgment against Timber was not satisfied in full, pointing to the *lis pendens* filed before the five deeds of trust. *See* Doc. 468. About a week later, the Receiver agreed; he amended his motion and asked the Court to approve paying Ms. LaVecchia's judgment and a pool care lien at closing. Doc. 475 at ¶ 1. The Receiver mailed the amended motion to the five LLCs. Doc. 477 at 4–6. Mr. Brooksby and counsel for Ms. Souther also received notice. *See id.* at 2.

On July 3, 2023, Ms. Souther objected to satisfying Ms. LaVecchia's judgment in full from the sale proceeds. Doc. 478. At no point did any of the five LLCs enter an objection to either the Receiver's original proposal or the amended proposal.

The Court held a confirmation hearing on July 6, 2023. Minute Entry 07/06/2023. On July 7, 2023, the Court confirmed the sale of the property and authorized the distribution of funds to satisfy undisputed encumbrances. Doc. 484. The Court held open issues raised by the LaVecchia judgment and the five deeds of trust filed after the LaVecchia *lis pendens*. *Id.* The Receiver has since informed the Clerk that the approved sale of the property has been completed.

4

Case 1:19-cv-01076-CCE-JLW   Document 492   Filed 07/21/23   Page 4 of 10

### III. Lis Pendens

When filed according to the statutory rules, a *lis pendens* serves as constructive notice to a subsequent purchaser or incumbrancer "that title to certain property is disputed in pending litigation." *Kelley v. CitiFinancial Servs., Inc.*, 205 N.C. App. 426, 427, 696 S.E.2d 775, 777 (2010). "Any person desiring the benefit of constructive notice of pending litigation must file a separate, independent notice thereof" in a case involving "[a]ctions affecting title to real property." N.C. Gen. Stat. § 1-116(a)(1). Claims affecting real property often include "actions to set aside deeds or other instruments for fraud, to establish a constructive or resulting trust, to require specific performance, to correct a deed for mutual mistake and in like cases where there is no record notice and where otherwise a prospective purchaser would be ignorant of the claim." *Cutter v. Cutter Realty Co.*, 265 N.C. 664, 668–69, 144 S.E.2d 882, 885 (1965); *see also George v. Admin. Office of Cts.*, 142 N.C. App. 479, 483, 542 S.E.2d 699, 702 (2001).

"[T]he sole object of *lis pendens* is to keep the subject in controversy within the power of the court until final decree and to make it possible for courts to execute their judgments." *Kelley*, 696 S.E.2d at 780 (cleaned up). The filing of a *lis pendens* does not prevent a transfer or encumbrance of the land, *id.*, but every person whose "incumbrance is subsequently executed or subsequently registered is a subsequent . . . incumbrancer, and is bound by all proceedings taken after the cross-indexing of the notice to the same extent as if he were made a party to the action." N.C. Gen. Stat. § 1-118. "[T]he *lis pendens* continues until the final judgment, or until it has been canceled under the directions of the court." *REO Props. Corp. v. Smith*, 227 N.C. App. 298, 302, 743 S.E.2d

5

230, 233 (2013). "[A]ny person aggrieved" may seek to cancel the notice of a *lis pendens* by application to the "court in which said action was commenced" with a showing of good cause. N.C. Gen. Stat. § 1-120.

All parties implicitly agree that if the *lis pendens* is valid, then Ms. LaVecchia is entitled to payment of the judgment in full, ahead of the subsequently registered encumbrances recorded by Mr. Brooksby. "[A] subsequent . . . lien creditor takes the property subject to a properly recorded notice of lis pendens." *In re Medlin*, 229 B.R. 353, 358 (Bankr. E.D.N.C. 1998) (citing *Cutter*, 144 S.E.2d 882).

## IV.    Discussion and Conclusions of Law

The statute only authorizes "aggrieved" persons to challenge a *lis pendens*. N.C. Gen. Stat. § 1-120. Ms. Souther has appeared personally, and she has only objected personally. *See* Doc. 487 (Memorandum of Carolyn Souther contending that the deeds of trust have priority); Doc. 478 at 2 ("Defendant Carolyn Souther objects to the payment of the Judgment and to the subordination of the DOTs to the Judgment."). She does not personally hold one of the five deeds of trust.

Ms. Souther has offered evidence that she "has an economic and membership interest" in 153 Fish, LLC, Doc. 478 at 3–4 ¶ 3, *see* Doc. 478-1 at 6 (153 Fish's operating agreement showing 50% of the net profits from 153 Fish are apportioned to Ms. Souther), which is one of the LLCs purportedly holding a deed of trust against the Woodhaven property. *See* Doc. 487-2 at ¶¶ 2–3; *see* Doc. 461 at 59–63 (deed of trust). But she is not allowed to individually protect the interests of a limited liability company, which can only appear through counsel. *Flame S.A. v. Freight Bulk Pte. Ltd.*, 762 F.3d 352, 355 n.3

6

(4th Cir. 2014); *Gilley v. Shoffner*, 345 F. Supp. 2d 563, 566 (M.D.N.C. 2004) (collecting cases). Despite notice of the Receiver's motion to pay the LaVecchia judgment in full, no attorney has entered an appearance for 153 Fish, and no one appeared on behalf of 153 Fish at the confirmation hearing. Indeed, none of the five LLCs filed an objection.[2]

No one asked the state court to cancel the *lis pendens* before it entered judgment, nor did Timber nor anyone else take any steps to remove the cloud on the title established by the *lis pendens* after final judgment was entered. The Receiver, who stands in the shoes of Timber, has not sought to cancel the *lis pendens*. The plaintiffs, who will be the ultimate beneficiaries of the sales proceeds, agree that Ms. LaVecchia is entitled to full satisfaction of the judgment ahead of the five LLCs.[3] Since the Receiver filed his amended motion, Doc. 475, no one other than Ms. Souther has filed any objection or taken any action of record to undermine Ms. LaVecchia's statutory priority. Since no aggrieved party has sought to cancel the *lis pendens*, the priority established by its filing and the later judgment remains in place.

Even if this were not so, Ms. Souther's arguments do not undermine the *lis pendens* and resulting priority of the LaVecchia judgment.[4] There are a number of statutory requirements for a valid *lis pendens*, but only one is at issue here.

---

[2] After the confirmation hearing, an attorney did enter an appearance for JAMBIRA Holdings, LLC, Doc. 488, one of the five LLCs holding a purported deed of trust filed after Ms. LaVecchia's *lis pendens*. *See* Doc. 461 at 28–32 (Exhibit B).

[3] The plaintiffs have asserted that the deeds of trust are invalid. The Court is not resolving that question here.

[4] Ms. LaVecchia also contends that the deeds of trust are invalid, but as noted *supra* note 3, the Court is not resolving that question here.

7

As all parties agree, a *lis pendens* must fall into one of the statutory categories authorizing its filing. *George*, 542 S.E.2d at 702. The category on which Ms. LaVecchia relies makes *lis pendens* appropriate when a claim "affects title to real property." *see* N.C. Gen. Stat. § 1-116(a)(1).

To determine whether an action affects title to real property, North Carolina courts generally look to the facts alleged in the complaint. *See George*, 542 S.E.2d at 702; *see also Pegram v. Tomrich Corp.*, 4 N.C. App. 413, 415, 166 S.E.2d 849, 851 (1969). But the statute also provides that a *lis pendens* may be filed at any time after the filing "of an answer <u>or other pleading</u> in which the pleading party states an affirmative claim for relief falling within the provisions of" N.C. Gen. Stat. § 1-116(a)—that is, affecting title to real property. N.C. Gen. Stat. § 1-116(c)(3) (emphasis added).

Here, after Timber refused to return Ms. LaVecchia's personal items and reattached them to the property in violation of the court's summary judgment order, Ms. LaVecchia filed a motion to enforce the partial summary judgment. Doc. 489-4. On the same day, she filed the *lis pendens* to put others on notice of her "title to and possession of certain personal property" that she asserted were "attached by the opposing parties to the real property [at 2104 Woodhaven], treating same as fixtures." Doc. 489-5 at 2. Her motion was an "other pleading" stating an action that affected real property.

It is true, as Ms. Souther contends, that Ms. LaVecchia's original claims only involved personal items. But Ms. LaVecchia has submitted undisputed evidence that Timber reattached the items. *See* Doc. 489-3 at ¶ 9. The ultimate judgment also shows that Ms. LaVecchia left personal items at the Woodhaven property, that Timber took those

8

items from her in January 2019 and possessed them as of the date of the judgment, and that Timber wrongfully converted the items. Doc. 489-1 at 7–9 ¶¶ 30–31, 33–34, 40–41. Timber marketed the property for sale using pictures that showed many of these personalty-turned-fixtures. Doc. 489-3 at ¶ 10. Timber, through its own actions, converted those items into fixtures, at which point they attached to the realty. Ms. LaVecchia explicitly mentioned these facts in her submissions associated with the *lis pendens*, and she was entitled to protect her interests by putting buyers and lenders on notice of her interest in the real property by virtue of Timber's conversion.

Ms. Souther contends that Ms. LaVecchia should have amended her counterclaims to include a claim that affected title. Doc. 487 at 8–9. But the statute does not require litigants to amend their pleadings; instead, it allows litigants to file a *lis pendens* "[a]t or any time after the filing of an answer or other pleading." N.C. Gen. Stat. § 1-116(c)(3). The fact that Ms. LaVecchia did not amend her counterclaims to explicitly reference the attachment of the items does not make the *lis pendens* invalid, and the motion she filed to protect her interests in the fixtures, and thus the real property, constitutes a "pleading" sufficient to support the *lis pendens*.

Ms. Souther contends that "simple attachment of property does not convert the property into a fixture." Doc. 487 at 9. But this contention ignores the presumption under North Carolina law that "when additions are made to land by its owner, it is generally viewed that the purpose of the addition is to enhance the value of the land, and the chattel becomes a part of the land." *Little by Davis v. Nat'l Servs. Indus., Inc.*, 79 N.C. App. 688, 692, 340 S.E.2d 510, 513 (1986); *see also Moore's Ferry Dev. Corp. v.*

9

*City of Hickory*, 166 N.C. App. 441, 446, 601 S.E.2d 900, 903 (2004). Ms. Souther has not submitted any evidence tending to rebut this presumption. Nor has she challenged any of the other requirements for a valid *lis pendens*.

Ms. LaVecchia filed a valid *lis pendens*. All lenders thereafter were on notice of her claim to the property and on notice that their encumbrances would be secondary to any judgment Ms. LaVecchia obtained against Timber. She obtained a valid judgment against Timber. By virtue of the valid *lis pendens,* her judgment has priority over the five later-filed deeds of trust.

In its order confirming the sale, the Court overlooked the pool lien. No one has raised any question about the priority of that lien, which the Receiver asked to pay from the closing funds. The Receiver is authorized to satisfy that lien from the sale proceeds.

It is **ORDERED** that:

1. The Receiver's amended motion, Doc. 475, is **GRANTED IN PART** and he is authorized to satisfy from the proceeds of the sale of the Woodhaven property:
    a. the entirety of the LaVecchia Judgment plus interest authorized by law.
    b. the lien held by Damon's Pool Care and Damon Harrison plus interest as authorized by law.
2. The Court will determine later whether any holders of the five deeds of trust are entitled to any distribution of funds.

This the 21st day of July, 2023.

_____
UNITED STATES DISTRICT JUDGE