FILED
MAR 24 2025

BRIAN C. WILLIAMS, et al., )
)
Plaintiffs, )
)
v. ) 1:19-CV-1076
)
THE ESTATES LLC, et al., )
)
Defendants. )

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The defendants Craig Brooksby, GG Irrevocable Trust, and King Family Enterprises, LLC have ignored and disobeyed court orders for the entirety of this lawsuit, before and after judgment against them for a fraudulent bid-rigging scheme and continuing after a receiver was appointed to gather their assets. All three have been held in contempt, Mr. Brooksby twice, and for a brief time, he was ordered into the custody of the United States Marshal to compel compliance. Only when threatened with contempt do these three receivership defendants attempt to comply. Mr. Brooksby, the Trust, and KFE continue to evade enforcement of the judgment and conceal assets and records from the Receiver.

Faced with ongoing long-term willful violations, the Court finds Mr. Brooksby, the Trust, KFE, and KFE's managers Mr. Brooksby, Sonja Brooksby, and Rex King in civil contempt. Mr. Brooksby will be held in custody until he complies. Mr. King will be held in custody until he complies, though the Court will stay that order for six business days in

hopes of full compliance. Ms. Brooksby must pay a daily fine until she complies and pay some of the attorneys' fees that the Receiver and the plaintiff incurred to attend the multiple contempt hearings.

The Court has previously made extensive findings of facts in other orders that detail the specifics of this case and the post-judgment proceedings. *See, e.g.*, Docs. 244, 364, 397, 425. Those findings are incorporated in full by reference. The Court makes the following additional findings of fact and reaches the following conclusions of law. All findings of fact are based on and supported by clear and convincing evidence.[1]

## I.      Background and Procedural History

### A. The Antitrust Case and Verdict

The plaintiffs filed this case against Mr. Brooksby, KFE, the Trust, and others alleging, *inter alia*, that they engaged in a bid-rigging conspiracy in violation of the Sherman Act. Doc. 104. At the April 2022 trial, the jury returned a verdict for the plaintiffs. Doc. 235.

The Estates was a membership-based limited liability company founded and run by Mr. Brooksby that operated across multiple states, including North Carolina. Doc. 244 at 3. Estates members paid a monthly fee to access its website listing properties in foreclosure. *Id.* at 3–4. Members submitted internal bids stating how much they would pay for a particular property, and Mr. Brooksby or other agents of the Estates would

---

[1] While some citations to the record are provided, the Court has not attempted to comb through the entire voluminous record to identify and cite all the evidence that supports each finding of fact.

select one member to represent in bidding on the property at the public foreclosure auction. *Id.* at 4. Only one Estates member could use its services to bid on properties in foreclosure, and the members agreed not to bid against one another. *Id.* at 4–5.

If an Estates member acquired property found through the Estates' database, he or she owed the Estates an acquisition fee. *Id.* at 5. Mr. Brooksby was also entitled to some of the profits obtained from selling property acquired using the Estates' services, *id.,* although Mr. Brooksby deliberately made the exact arrangements complicated and opaque. Doc. 364 at 4. Mr. Brooksby also engaged in other illegal conduct when dealing with foreclosed homeowners, including extortion and unfair trade practices. *See* Doc. 245.

Mr. Brooksby and other defendants created numerous LLCs to conduct these real estate transactions, hiding the distribution of funds, fees, and profits through a myriad of LLCs. Doc. 364 at 4. The Estates required its members to set up an LLC to bid at a foreclosure sale, Doc. 381 at 47–48, and often other LLCs were set up for the purchase. *Id.* at 75. At the top of this tangled pyramid were Mr. Brooksby, the Trust under Mr. Brooksby's control, and KFE run and managed by Mr. Brooksby, his wife Sonja Brooksby, and his brother-in-law Rex King, along with receivership defendants Avirta LLC and Citadel Management LLC. *See* Doc. 364 at 4–7; Doc. 425 at 7 & nn.1–2; Doc. 381 at 67–68 (testimony that Avirta and the Trust received profits from the Estates).

### B. Judgment, Permanent Injunction, and Charging Order

In June 2022, consistent with the verdict, the Court entered a $1.2 million dollar judgment against the defendants. Doc. 245. The Court also imposed a permanent

3

injunction prohibiting Mr. Brooksby from engaging in certain activity connected to real estate foreclosure sales. Doc. 246. Mr. Brooksby and two other individual defendants appealed the judgment and injunction; the Fourth Circuit affirmed. *Williams v. Brooksby*, No. 22-1982, 2024 WL 4490636 (4th Cir. Oct. 15, 2024).

Shortly after the Court entered the judgment and permanent injunction, the plaintiffs moved for a charging order against the economic interests of Mr. Brooksby and other defendants. Doc. 247.[2] The Court granted the motion in part, Doc. 292, and entered a charging order directing a number of LLCs to pay any funds owed to certain defendants toward the judgment instead. Doc. 293.

### C. Defendants' Defiance, Appointment of a Receiver, and Contempt Proceedings

In September 2022, the plaintiffs asked the Court to appoint a receiver over the assets of Mr. Brooksby and other defendants. Doc. 316. The next month, while that motion was pending, the plaintiffs filed a motion for contempt against Mr. Brooksby, Doc. 329, contending he had violated the permanent injunction, Doc. 330 at 3, and the charging order. *Id.* at 4–5. The Court later found that Mr. Brooksby violated the permanent injunction by participating in the sale of property bought at a public foreclosure auction and held him in civil contempt. *See* Doc. 364 at 12–13.

By separate order, the Court appointed James Lanik as Receiver, directing him to take possession and control of all the assets of Mr. Brooksby, The Estates, LLC, Avirta

---

[2] A charging order directs an LLC in which a judgment debtor has an economic interest to pay any money the LLC would otherwise pay to the judgment debtor toward satisfaction of the judgment. *See* Doc. 292 at 1.

LLC, the Trust, and KFE. Doc. 362 at 2; *see also* Doc. 399 at ¶ 2. The Court also ordered those defendants to turn over all records and assets to the Receiver. Doc. 362 at 2–3; *see also* Doc. 399 at ¶¶ 9, 15, 17–18. Soon thereafter, the Court revoked permission for out-of-state counsel to appear on behalf of Mr. Brooksby and other defendants due to "an excessive and unjustified drain on court resources." Doc. 363 at 6.

Even though he knew that a Receiver had been appointed for Avirta, Mr. Brooksby filed a bankruptcy petition on Avirta's behalf in Utah. *See* Doc. 377; Doc. 395 and attachments. In February 2023, that petition was dismissed, as Mr. Brooksby did not have authority to file it. Doc. 395 at 45–46; *see also id.* at p. 4 ¶ 9.

Mr. Brooksby continued to sell property and evade court orders, and the receivership defendants did not comply with orders concerning the receivership. *Id.* at 2, 4–6. So in March 2023, the Court amended the receivership order ("Receivership Order") expanding the Receiver's powers and the receivership entities. Doc. 399; *see also* Doc. 397. Around the same time, the Court sanctioned Mr. Brooksby and his attorneys for violating Rule 11 of the Federal Rules of Civil Procedure. Doc. 400 at 34–35.

Soon thereafter, the remaining lawyer representing Mr. Brooksby, the Trust, and KFE was allowed to withdraw without objection. Doc. 403. Mr. Brooksby has since represented himself, and no attorney has made an appearance on behalf of KFE, the Trust, or any other receivership defendant relevant to the proceedings herein.[3] Counsel has represented Sonja Brooksby personally since April 2023. *See, e.g.*, Doc. 429.

---

[3] Counsel entered an appearance for NC Bidding-2, LLC, *see* Doc. 276, and Carolyn Souther, *see, e.g.*, Doc. 277, but the conduct of those defendants is not at issue.

At an April 2023 hearing, the Receiver confirmed he had received no assets and only some additional documents for receivership defendants. Doc. 414 at 4–7. The Receiver and plaintiffs' counsel agreed that a show cause order directed to the receivership defendants and potential civil contempt were appropriate. *Id.* at 9–10. The Court thereafter entered a show cause order directing Mr. Brooksby, the Trust, KFE, the Estates, and Avirta to show cause as to why they should not be held in civil contempt for violating the Receivership Order. Doc. 411. The Court identified four specific potential violations, noting that it appeared the defendants had violated the Receivership Order:

> by failing to immediately surrender possession and control of assets to the Receiver, by failing to deliver to the Receiver all your records, by failing to provide . . . required sworn statements and accountings, including identity and contact information for all employees, attorneys, agents, accountants, and contractors, and by failing to turn over rental proceeds . . . .

*Id.* at 2.

At the show cause hearing, Mr. Brooksby appeared personally, as trustee of the Trust, and as a person with control of KFE and other defendants. Doc. 425 at 2; *see* Doc. 256-1 at 1 (showing that Mr. Brooksby is the trustee of the Trust); Doc. 256-3 (showing that Mr. Brooksby is a manager of Citadel Management, LLC); Doc. 256-2 (showing that Citadel is a manager of KFE).[4] Sonja Brooksby appeared as a manager of KFE. Doc. 425 at 2; *see* Doc. 256-2. Rex King appeared as a manager of Avirta LLC. Doc. 425 at 2; *see* Doc. 256-5. The record also shows that at the time the Receiver was appointed,

---

[4] Citadel was a partner in Rex King Limited Partnership, itself a member of KFE. Docs. 256-2, 256-6.

Ms. Brooksby was a partner in Rex King Limited Partnership, itself a member of KFE, Docs. 256-2, 256-6, and Mr. King was a manager of Citadel, itself a manager of KFE. Docs. 256-2, 256-3.

The Court held Mr. Brooksby, the Trust, KFE, the Estates, and Avirta in civil contempt. Doc. 425 at 14. It found that they "ha[d] not filed the declarations required by the Amended Receivership Order, they ha[d] not immediately or even belatedly surrendered possession and control of all assets to the Receiver, and they ha[d] not delivered to the Receiver all records." *Id.* at 11 (cleaned up).

In addressing an appropriate remedy, the Court noted that "the receivership defendants have had ample opportunity to comply with the Receivership Orders and ample warnings that failure to comply could lead to coercive incarceration" and pointed out that "[t]his is not the first time the Court has dealt with these defendants violating court orders." *Id.* at 17. Finding that "the contempt is flagrant and has continued for months despite clear warnings and an Amended Order," the Court found it "necessary here to coerce these otherwise-unwilling defendants to comply by incarcerating Mr. Brooksby until the receivership defendants named herein comply." *Id.* at 17-18.

Mr. Brooksby was placed in the custody of the United States Marshal, pending compliance and further order from the Court. *Id.* at 19; Minute Entry 04/11/2023. The matter was held open as to Ms. Brooksby, as manager of KFE, and Mr. King, as manager of Avirta LLC, Doc. 425 at 16, 18, and was set for review within the week. *Id.* at 19. Ms. Brooksby, Mr. King, and all other managers and members of KFE, among others, were ordered to appear. *Id.*

After Mr. Brooksby went into custody, the receivership defendants finally produced some responsive documents. *See, e.g.*, Doc. 427 and attachments; Doc. 588 at 16–17; Doc. 457 at ¶ 3. With this partial compliance, the Court authorized the U.S. Marshal to release him. Minute Entry 04/21/2023; Doc. 440 at 2, 4. But the Court held that the five original receivership defendants, including Mr. Brooksby, the Trust, and KFE, had "not yet purged themselves of civil contempt and deficiencies remain[ed]." Doc. 440 at 2. The matter was held open to give the defendants additional time to bring themselves into full compliance. *Id.* at 3. The Court explicitly warned the defendants that failure to bring themselves into full compliance could result in additional civil contempt remedies to coerce compliance. *Id.* at 3; *see also* Doc. 588 at 25, 30–31. There was no appeal of any of these contempt orders.

## II. Recent Developments, Renewed Motion for Contempt, and Pending Show Cause Order

Over the next 15 months or so, the Receiver filed quarterly reports. Docs. 493, 533, 546, 547, 548. Beginning with the October 2023 report, the Receiver consistently noted that he still had not received all the information from the receivership defendants required by the Receivership Order and that he intended to file a separate statement of deficiencies. Doc. 533 at 3; Doc. 546 at 3; Doc. 547 at 2; Doc. 548 at 2. All of the Receiver's reports were served on Mr. Brooksby, Mr. King, and Ms. Brooksby's personal attorney. *See, e.g.*, Doc. 533 at 14–16.

In August 2024, the plaintiffs filed a motion asking the Court to hold Mr. Brooksby in civil contempt because he still had not provided required information to the

8

Receiver. Doc. 551; Doc. 552 at 4.[5]  Upon review, the Court established a schedule for the Receiver to file a statement of deficiencies and for Mr. Brooksby to respond to the contempt motion and statement of deficiencies.  Doc. 554.

On August 30, 2024, the Receiver filed a statement of deficiencies, identifying a number of ongoing violations of the Receivership Order by Mr. Brooksby, the Trust, and KFE.  Doc. 555.  Among other things, the Receiver stated that he had "received no documents or any information relating to" the Trust or KFE.  *Id.* at ¶ 1.

On September 10, 2024, Mr. Brooksby filed a response to the motion for contempt and the statement of deficiencies, Doc. 556, along with declarations under oath.  Docs. 556-7, 557.  Upon an order from the Court, Text Order 09/18/2024, Mr. Brooksby filed with the Court a flash drive containing hundreds of documents he contended support his response to the statement of deficiencies.  *See* Doc. 559.  No one else filed a response or evidence on behalf of the Trust or KFE.

The Court then issued show cause orders directing Mr. Brooksby, the Trust, KFE, and Sonja Brooksby and Rex King, as persons with control of KFE, to appear and show cause why they should not be held in civil contempt.  Docs. 560, 561, 562.  The show cause order gave Mr. Brooksby notice that he could be held in contempt for failing to turn over all assets and records and file all required statements and accountings.  Doc. 560 at 5.  It gave notice to KFE, the Trust, and their managers, members, and trustees at the time

---

[5] The plaintiffs also seek a finding of civil contempt because Mr. Brooksby has resumed violating the permanent injunction.  Doc. 551; Doc. 552 at 9–10.  The violation of the permanent injunction is addressed in a separate order.

9

the Receivership Order was entered that they could be held in contempt for failing to turn over all assets and records and file all required statements and accountings. Doc. 562 at 3–4. And it gave notice to Ms. Brooksby and Mr. King that they could be held in contempt for those same failures by KFE. *Id.*; Doc. 561 at 2–3.

On October 21, 2024, the Receiver filed a quarterly status report. Doc. 566. The Receiver noted Mr. Brooksby's recent provision of documents, which the Receiver was reviewing. *Id.* at 2. On November 9, 2024, three days before the scheduled show cause hearing, Ms. Brooksby filed a declaration in response to the show cause orders with well over 200 exhibits. Doc. 567.

The Court held a hearing on November 12, 2024. Minute Entry 11/12/2024. Mr. Brooksby and Mr. King appeared without representation, and Ms. Brooksby appeared with counsel representing her individually. Doc. 572 at 1. Mr. King filed a declaration the morning of the hearing, Doc. 569, but he did not address the Court at the hearing. Doc. 572 at 14, 139, 151. Mr. Brooksby made proffers but did not testify. *Id.* at 139, 143. Ms. Brooksby testified, *id.* at 20–139, and some exhibits from her recent filing were admitted into evidence. *See id.* at 34, 36, 62–63, 70, 89, 91.

At the end of the hearing, the Receiver asked for time to digest the information presented in recent filings and at the hearing. *Id.* at 144–47. The Court held the matter open and scheduled another hearing to determine if KFE, the Trust, Mr. Brooksby, Ms. Brooksby, and Mr. King had purged themselves of contempt. *Id.* at 151–52. The Court noted that "what the three people here should have done long ago is, say to everybody

10

who has any materials for any of these receivership defendants, everything you have, give it directly to" the Receiver. *Id.* at 152.

On January 7, 2025, the Receiver filed an updated statement of deficiencies identifying numerous ongoing failures to comply. Doc. 575. Four days before the scheduled January hearing, Ms. Brooksby filed yet another declaration with well over 200 more exhibits. Doc. 576. The day of the hearing, Mr. Brooksby and Mr. King filed supplemental declarations, Docs. 578, 579, and someone filed a document purporting to be a declaration of one "Dave Williams," who purports to be a former employee of the Estates. Doc. 577.

A hearing was held on January 14, 2025. Minute Entry 01/14/2025. Mr. Brooksby and Mr. King appeared without representation, and Ms. Brooksby appeared with counsel. *Id.* Mr. Brooksby and Mr. King made proffers but did not testify. In his quarterly report, the Receiver reported that he "has still yet to receiver many documents required by the Amended Receivership Order." Doc. 580 at 2.

In February, the Receiver filed a notice of additional receivership defendants, asking to add four LLCs controlled by Mr. Brooksby that he never disclosed to the Receiver. Doc. 584. Without objection, these LLCs were added as receivership defendants. Doc. 589.

## III. Civil Contempt

District courts have "the inherent authority to hold parties in civil contempt" to ensure compliance with their lawful orders. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (citing *Shillitani v. United States*, 384

11

U.S. 364, 370 (1966)).  A court may impose civil contempt remedies "to coerce obedience to a court order or to compensate the complainant" for injuries resulting from the contemnor's noncompliance. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)).

Before a court holds a party in civil contempt, it must provide the alleged contemnors with "notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827 (1994).  A contempt order requires proof by clear and convincing evidence:  (1) that there was a valid decree of which the alleged contemnor had knowledge; (2) that the decree benefitted the opposing party; (3) that the alleged contemnor violated the terms of the decree and knew he violated its terms; and (4) that the opposing party suffered harm as a result. *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 145 (4th Cir. 2023).  Once there is a "prima facie showing of these elements, the burden shifts to [the] alleged contemnor to justify his non-compliance." *U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC*, No. 09-CV-387, 2010 WL 2131852, at *2 (W.D.N.C. May 25, 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

LLCs, trusts, and other entities "act only through their agents." *Braswell v. United States*, 487 U.S. 99, 110 (1988).  For an LLC, this includes its members and managers. *See, e.g.*, N.C. Gen. Stat. § 57D-3-20; Utah Code Ann. § 48-3a-407 (West).  For a trust, this includes the trustee. *See, e.g.*, N.C. Gen. Stat. § 36C-8-816; Utah Code Ann. § 75-7-814 (West).  These entities' agents are then subject to contempt for the entities' violations of court orders. *See, e.g., JK Moving & Storage, Inc. v. J & K Moving LLC*, No. 17-CV-

12

849, 2022 WL 3999962, at *2 (E.D. Va. Aug. 31, 2022) (holding a manager and member of an LLC defendant in contempt because he was subject to the violated order and had actual knowledge of it); *cf* Fed. R. Civ. P. 65(d)(2)(B) (parties' officers and agents are subject to injunctions and restraining orders). And incarceration of an entity's agents is an available contempt remedy. *See Cascade Cap., LLC v. DRS Processing LLC*, No. 17-CV-470, 2018 WL 4705559, at *3–4 (W.D.N.C. Oct. 1, 2018) (holding in contempt and ordering the incarceration of LLC defendant's owner); *Quilling ex rel. Sardaukar Holdings, IBC v. 3-D Mktg., LLC*, No. 06-CV-293, 2007 WL 9711514, at *3 (N.D. Tex. July 18, 2007) (Mag. J., findings and recommendation) (recommending a finding of contempt and incarceration of LLC defendant's "principal agent"), *adopted*, No. 06-CV-293, Doc. 73 (N.D. Tex. Sept. 20, 2007).

## IV.    The Receivership Order Is Enforceable by Contempt

The Receivership Order, Doc. 399, is a valid decree issued by this Court, as is the predecessor order. Doc. 362. The order benefits the plaintiffs by providing a mechanism for collection of funds to satisfy the $1.2 million judgment in their favor, *see* Doc. 245, and they suffer harm from violations because concealment of assets and information impedes satisfaction of the judgment. Mr. Brooksby had actual knowledge of the Receivership Order and its predecessor. *See, e.g.,* Doc. 395 at 96 (testimony in January 2023); Docs. 556, 557, 578 (court hearings).

The Trust had actual knowledge of the Receivership Order through its trustee, Mr. Brooksby, *see* Doc. 256-1, and through its attorney at the time the order was entered. *See* Doc. 403 (order allowing attorney for the Trust and KFE, among others, to withdraw on

March 24, 2023). And KFE had actual knowledge of the order through its attorney, *see id.*, and through Mr. Brooksby, who was a manager of Citadel which managed KFE. *See* Docs. 256-2, 256-3.

KFE also had knowledge through Ms. Brooksby, one of its managers, and Mr. King, a manager of Citadel which managed KFE, *see* Docs. 256-2, 256-3, each of whom has had actual knowledge of the Receivership Order for years. Both Ms. Brooksby and Mr. King were present at hearings before this Court on April 11, 2023, and April 21, 2023, at which the Receivership Order was discussed extensively. Minute Entry 04/11/2023; Minute Entry 04/21/2023; *see* Doc. 425 at 2; Doc. 440 at 1–2. Mr. King and counsel for Ms. Brooksby were also present at a July 6, 2023, hearing at which the Receivership Order was again discussed. Minute Entry 07/06/2023; *see* Doc. 587 at 44–50. The Court has repeatedly informed them that because of their management role over KFE, they are responsible for seeing that KFE complies with the Receivership Order. *See, e.g.*, Doc. 414 at 38–39; Doc. 424 at 69, 71, 83–84; Doc. 588 at 2–3.

## V.     Violations of Receivership Order

### A. Records of Mr. Brooksby, the Trust, and KFE

The Receivership Order requires Mr. Brooksby, the Trust and its trustees, and KFE and its members and managers to each deliver all records and surrender all assets to the Receiver. Doc. 399 at ¶¶ 9, 11, 15, 17–18. This includes all records and assets over which they have control, including those of the Estates, an entity controlled by Mr. Brooksby and by entities owned or controlled by KFE and the Trust and whose profits ultimately went to the Trust, KFE, and Mr. Brooksby. *See* discussion *infra* at 15–17.

14

Mr. Brooksby, the Trust, and KFE have not delivered all required records to the Receiver. As of August 30, 2024, the Receiver had received no documents relating to the Trust or KFE, Doc. 555 at ¶ 1,[6] and he had not received documentation of all property "owned or controlled by Craig Brooksby, the Trust, or KFE." *Id.* at ¶ 2. Since then, despite the plethora of documents filed by Mr. Brooksby and Ms. Brooksby on the eve of court hearings, these defendants still have not fully complied.

The claims that KFE and the Trust do not have such documents or assets, *see, e.g.*, Doc. 427-1 at 1, 26; Doc. 446-12; Doc. 446-37; Doc. 567 at ¶¶ 8, 10; Doc. 567-7; Doc. 572 at 26, 31, are not credible. The Estates was fully owned by Avirta and was managed by Mr. Brooksby through Citadel and by Mr. King. Doc. 567-9 at 13. Mr. Brooksby testified at trial that Avirta received profits from the Estates, Doc. 386 at 67–68, and that "at the end of the day" the Trust received the profits from his operations via the King Family Limited Partnership. *Id.* at 68. Ms. Brooksby testified in November 2024 that KFE fully owns Avirta, Doc. 572 at 31–32, and that the Trust has a 99% ownership interest in King Family Limited Partnership and a 10% ownership interest in KFE. *Id.* at 28; *see also* Docs. 567-6, 567-7. It is not credible that the Trust and KFE, entities at the top of Mr. Brooksby's pyramid of operations, have no financial records and no assets.

Given the number of real estate transactions conducted as part of the operations of the Estates bid-rigging scheme and other activities, the nature and scope of the relevant

---

[6] The document establishing the Trust is in the record, *see, e.g.*, Doc. 256-1 (redacted excerpts); Doc. 567-4 (full document), as are documents showing the members and managers of KFE. *See, e.g.*, Doc. 252-2 (2013 articles of organization); Doc. 252-3 (2018 changes); Doc. 252-4 (2022 list of members and managers).

operations, and that Mr. Brooksby, KFE, and the Trust received the profits from those operations, there must be records documenting these arrangements and transactions. Mr. Brooksby and his associates have made every effort to muddle the way the Estates and all of Mr. Brooksby's affiliated entities operated, *see, e.g.*, Doc. 395 at 45–46, but from sworn testimony by Mr. Brooksby and others and from what the Receiver has determined, the following is a general outline.

Estates members had to create an LLC to bid on foreclosed properties through the Estates. Doc. 364 at 3. When an Estates member successfully bid on real property at foreclosure, another LLC was often formed specifically for that transaction, almost always with a Brooksby-controlled owner, such as Avirta. *Id.* at 5–6; Doc. 395 at 96.

This process often involved Mr. Brooksby linking the Estates member with one or more "investors" who were entitled to a share of the profits, along with the Estates member. *See, e.g.*, Doc. 380 at 44 (testimony that the "investor" had "equity title"); *id.* at 46–47, 51–55 (testimony about Estates agent's negotiations with homeowners post-foreclosure on behalf of "investors" and investor entitlement to profits); *id.* at 67, 109, 183, 195, 208 (testimony about "investors"); *see also* Doc. 461 at ¶ 4 (the Receiver identifying deeds of trust on receivership property); Doc. 475 at ¶ 4 (same); Doc. 582 at ¶ 12 ("The Receiver has determined that each of the Sale Entities is saddled with interests of third parties . . . .").[7]

---

[7] By way of further example, Mr. King apparently has a claim against Marylebone LLC, a receivership defendant that owns the residence where the Brooksbys and Mr. King live. *See* Doc. 572 at 41; Doc. 567-2 at 4 (noting a creditor claim, among others, by Rex King against

16

The Estates and Mr. Brooksby, through Avirta, Citadel, the Trust, and KFE, were also entitled to a share of any profits received. Doc. 364 at 6; Doc. 395 at 96. These profits might result either from a "buyback" with the foreclosed homeowner, *see, e.g.*, Doc. 380 at 54, or from flipping the foreclosed property. *See, e.g.*, *id.* at 47–48, 188; Doc. 364 at 6. Mr. Brooksby usually decided how the profits were distributed. Doc. 395 at 96. This scheme involved many agents working on behalf of Mr. Brooksby, Avirta, Citadel, KFE, and the Trust, such as attorneys, brokers, and other professionals. *See, e.g.*, Doc. 380 at 83, 88, 109, 187, 208. Mr. Brooksby, the Trust, and KFE have control of the Estates, Citadel, and Avirta, as well as all the other receivership defendants.

The idea that Mr. Brooksby, KFE, and the Trust have no records to reflect all of this activity is laughable. At the least, they had to have ledgers or other accounting records to keep up with these complicated transactions; if they did not, they could not be sure that they would get the resulting profits. And they must have had those records, plus contracts, to know how to accurately distribute money to investors, Estates members, and any agents owed commissions. Even if the entire scheme is fraudulent, with "investors" serving as shams or fronts for Mr. Brooksby, there would still be documents related to foreclosure bids, especially those that resulted in a purchase. And the money from all these transactions must have gone somewhere.

The hodgepodge of records these three receivership defendants have provided is a far cry from full compliance. It is not credible that Mr. Brooksby, KFE, and the Trust

---

Marylebone LLC's property for $84,397.37); Doc. 572 at 104–105 (Ms. Brooksby's testimony that this claim is "[p]robably a note that [Mr. King] holds against the property").

17

have no ledgers or accounting records of their finances or of the Estates' dealings, only a few copies of contracts or other writings reflecting agreements with investors, and no organized list of records of properties bought in foreclosure by Estates members and their investors.

The Receiver has a list of some of the LLCs affiliated with Mr. Brooksby's operations, *see, e.g.*, Doc. 395 at 13–24 (list filed in Avirta bankruptcy case); Doc. 399 at 33–44 (same list attached to Receivership Order); Doc. 555 at 8–17, but this list is not complete. The Receiver continues to uncover the existence of more LLCs affiliated with Mr. Brooksby and the Estates; recently, for example, the Receiver identified several LLCs controlled by Mr. Brooksby or otherwise affiliated with receivership defendants, some of which own property, and none of which Mr. Brooksby or any other receivership defendant disclosed to the Receiver. Doc. 575 at ¶ 2; Doc. 584 at 2. Mr. Brooksby, KFE, and the Trust should have disclosed the existence of these entities to the Receiver long ago, and these entities should have long been under the Receiver's control.

To make matters worse, in 2024, Mr. King filed reinstatement paperwork for several of these undisclosed LLCs as well as some previously identified ones, Doc. 575 at ¶¶ 2(c), 2(d), 3, in violation of the Receivership Order. *See* Doc. 399 at ¶¶ 6–7. Mr. King testified in an affidavit that he did not file the paperwork, blaming someone named Dave Williams. Doc. 579 at ¶¶ 4–5. Mr. Brooksby proffered that Dave Williams filed this paperwork independently and without direction from Mr. Brooksby or Mr. King. While there is a paper writing that purports to be a declaration under oath from someone purporting to be named Dave Williams, Doc. 577, this evidence is not credible.

18

Mr. Brooksby has repeatedly identified Dave or David Williams as someone who lives in the Philippines and who works for the Estates and all his related businesses. *See, e.g.*, Doc. 395 at 102; *see also* Doc. 572 at 52 (Ms. Brooksby identifying Dave Williams in the Philippines as holding documents related to litigation for one of her companies). In April 2023, Mr. Brooksby testified that he read "the order" to his "staff," including "David," and instructed them to provide all documents to Mr. Lanik. Doc. 424 at 17–18. Now this "Dave Williams" says that he took action to reinstate certain receivership LLCs despite his knowledge of the Receivership Order. Doc. 577 at ¶ 6. But he does not explain why he took such action beyond saying that he "felt the need to keep them current," *id.* at ¶ 7, nor does he say where he got the money to pay the associated fees. The proposition that this "Dave," upon his own initiative and despite his knowledge of the Receivership Order, reinstated certain receivership LLCs is not credible.

Indeed, the Court questions whether "Dave" even exists; Mr. Williams' declarations are not notarized and have inconsistent signatures, *compare* Doc. 556-1, *with* Doc. 577, and there are a number of other suspicious circumstances about this Dave Williams. *See, e.g.*, Doc. 395 at 101–02 (testimony by Mr. Brooksby that "Dave Williams" is a "U.S. name," but Dave and other overseas staff use their "real" names in their countries). There are emails purporting to be from Dave Williams, *see, e.g.*, Docs. 577-1, 577-2, 577-3, but they could have come from anyone who created an email address using that name.

In any event, the Court gives the purported testimony of this "Dave Williams" no weight. These declarations are yet another effort by Mr. Brooksby and Mr. King to

19

mislead the court, confuse the record, and evade the Receivership Order. Mr. King, who doesn't do much without Mr. Brooksby's knowledge and direction, was able to file reinstatement paperwork for some of the undisclosed LLCs. He and Mr. Brooksby could have disclosed the existence of those LLCs to the Receiver as required, yet they did not.[8]

In addition to failing to disclose some LLCs, neither Mr. Brooksby, KFE, nor the Trust turned over bank statements for many of the known LLCs to the Receiver, who had to get them directly from banks. Doc. 533 at 3.[9] And the Receiver still does not have banking information for many of the known LLCs. *See* Doc. 555 at 8–17.

The Court has long made clear that third persons holding records for Mr. Brooksby, KFE, and the Trust must turn over those records to the Receiver and that Mr. Brooksby, KFE, and the Trust must ensure that this is done. *See, e.g.*, Doc. 414 at 39 (the Court saying to Mr. Brooksby and Mr. King, "Whoever you tell what to do, you tell them to turn [the records] over."). There were attorneys, accountants, and brokers involved in the operations of Mr. Brooksby, KFE, and the Trust and the entities they controlled.[10]

---

[8] Even if the Court accepted the defendants' explanations, that does not help them. If Dave Williams is a real person who filed the renewal paperwork, he is an agent of Mr. Brooksby and KFE and acted at their direction and control. They have offered no excuse for why they did not disclose these LLCs to the Receiver even though their agent knew about them and was able to renew their corporate paperwork.

[9] Some receivership defendants provided some banking information and bank statements to the Receiver. *See, e.g.*, Doc. 480 at ¶ 2; *id.* at 4–5; Doc. 588 at 19.

[10] By way of example only, attorney Steven W. Shaw has fingerprints all over the activities of the Estates, Mr. Brooksby, and all of these LLCs, *see, e.g.*, Doc. 572 at 38; Doc. 424 at 30; Doc. 552-1 at 45; Doc. 395 at 95, and other attorneys have also been involved. *See, e.g.*, Doc. 75 at 29 (statements by then counsel for the defendants that she also represented an Estates member in other matters); Doc. 572 at 103 (testimony by Ms. Brooksby of an attorney who "invested" in

Beyond assertions by Mr. Brooksby that he has told his "staff" to turn over documents,[11] *see, e.g.*, *id.* at 12–14, there is nothing in the record to indicate that these receivership defendants have made any real effort to see that documents under their control but in the possession of third persons are turned over to the Receiver.

The Receiver needs these records to do his work. His job is to "marshal[] and preserv[e] all assets" of the receivership defendants. Doc. 399 at 2. If Mr. Brooksby, KFE, and the Trust refuse to tell him about the entities that hold those assets, refuse to provide documents related to those assets, refuse to identify real property bought by the entities and other "investors" who might have claim to any sales proceeds, and refuse to direct all of their agents to turn over documents to the Receiver, all as required by the Receivership Order, then the Receiver's ability to do his job is impaired.

These receivership defendants are not entitled to demand that the Receiver dig out these records himself. Nor are they entitled to wait for the Receiver to make specific requests or for a show cause order to be entered before they make a show of compliance.

The Court finds that Mr. Brooksby, the Trust acting through Mr. Brooksby, and KFE, acting through Mr. Brooksby, Ms. Brooksby, and Mr. King, continue to conceal

---

one of her real estate companies). Other relatives and persons were listed as registered agents and decisionmakers around the time the original receivership order was entered. *See, e.g.*, Doc. 350 at 3–13. In the show cause order as to KFE, the Court specifically referred to Mr. Shaw, accountant Bart E. White, registered agent Sierra Brooksby, and others. *See* Doc. 562 at 2–3. The Court warned Mr. Brooksby in April 2023 that there would be "real problems" if Mr. Shaw and Mr. White continued to fail to turn over their records to the Receiver. Doc. 588 at 26.

[11] The Receiver told the Court in April 2023 that he had recently been in touch with "some of the staff who ha[d] provided some information and documents," Doc. 588 at 13, but nearly two years later, the Receiver still does not have all the documents required to be turned over to him by the Receivership Order.

information and assets from the Receiver and have violated paragraphs 9, 11, 15, 17, and 18 of the Receivership Order. *Id.*

The Court further finds that these violations were knowing. As summarized *supra* at 13–14, Mr. Brooksby, Ms. Brooksby, and Mr. King have long known of their responsibilities under the Receivership Order. They have heard and acknowledged their duty to comply many times. *See, e.g.*, Doc. 424 at 69–71, 83–84; Doc. 588 at 2–3. Mr. Brooksby, Ms. Brooksby, and Mr. King knew long ago that they were not in compliance with the Receivership Order, and they have continued to knowingly violate the order.

These defendants have provided no credible evidence that they have attempted in good faith to turn over all records and accountings to the Receiver or to inform others who may hold such records of the duty to turn those records over to the Receiver. Instead, the Receiver has largely been left to uncover them himself. Since the initiation of the most recent show cause hearings, Mr. Brooksby, Ms. Brooksby, and Mr. King have produced two additional volleys of information. Doc. 567 and attachments; Doc. 576 and attachments; Docs. 577, 578, 579. They consistently produce such additional information on the eve of court hearings, making it impossible for the Court and the Receiver to evaluate them in time for a meaningful hearing. These late productions of new and additional information provide further proof that they did not comply with the Receivership Order when initially ordered or in the many months thereafter. And in any event, as discussed *supra*, even with all these late submissions, they still have not turned over all the books and records that must exist, nor have they identified all the responsive LLCs or provided an accounting. These submissions are not intended to be complete;

22

rather, these three receivership defendants are using them as instruments of delay and obfuscation.

Mr. Brooksby is ultimately the one in charge of these operations and is responsible for these violations both personally and on behalf of the Trust and KFE. But Ms. Brooksby and Mr. King also had actual and apparent authority for KFE when the Receiver was appointed, and they are equally responsible for KFE's violations of the Receivership Order. Mr. Brooksby, his wife, and his brother-in-law initially created the tangled web of interrelated LLCs. They cannot now claim that they don't understand them and don't know what assets they have. The web is their creation, and they are the ones who must explain it to the Receiver, locate and provide all documents, and identify all assets.

The Court held that Mr. Brooksby, KFE, and the Trust were "in ongoing civil contempt" nearly two years ago but held the matter open to give them time to fully comply with the Receivership Order. Doc. 440 at 3. Despite plenty of time and additional opportunities given by recent show cause orders detailing their ongoing failures, they still have not done so. Mr. Brooksby, the Trust, KFE, and Ms. Brooksby and Mr. King, as agents of KFE, have not complied or attempted to comply with the Receivership Order, and they are in contempt of court.

### B. Other Violations

#### 1. Mr. Brooksby's Employment with Soren LLC

The Receivership Order requires Mr. Brooksby to deliver all personal records and assets to the Receiver. Doc. 399 at ¶¶ 15, 17. He did not comply.

23

At some point before September 4, 2023, Mr. Brooksby began working on behalf of and receiving money from Soren, LLC; Mr. Brooksby characterizes this as employment for wages. *See* Doc. 556-7; Doc. 576-199 (Mr. Brooksby's 2023 W-2 from Soren). But Mr. Brooksby did not turn over any of his income from Soren to the Receiver, nor did he turn over documentation of this income or even tell the Receiver he had received such income. Doc. 575 at ¶ 1. Ms. Brooksby testified that Mr. Brooksby's income from Soren was paid directly to her at her direction. Doc. 572 at 69, 85–86.

The Court finds that Mr. Brooksby violated paragraphs 15 and 17 of the Receivership Order, Doc. 399, by failing to deliver records of his work with Soren to the Receiver and by hiding assets when he authorized delivery of his money from Soren to his wife without informing the Receiver.

The Court further finds that this violation was knowing. Mr. Brooksby knew long ago that he was obligated to turn over the required records and property to the Receiver. *See* discussion *supra* at 13–14. And Mr. Brooksby and Ms. Brooksby were both present when the Court explicitly said that it is a violation of the Receivership Order for Mr. Brooksby to give his money to his wife rather than to the Receiver. Doc. 588 at 9.

Mr. Brooksby proffers that he is no longer working. Doc. 572 at 151. For reasons which are obvious at this point, his testimony and unsworn assertions are generally not credible absent reliable corroboration from independent sources. The Court does not believe him. It is highly likely that he continues to find ways to bring in money, one way or another, or, perhaps, to access money he has squirreled away in the past.

Ms. Brooksby has provided the Receiver with Mr. Brooksby's 2023 W-2 from Soren along with some other Soren records. *See, e.g.*, Doc. 576-199, Doc. 567-169 at 325–37 (showing Soren paid Mr. Brooksby by bank deposit into an account number ending in 1588 throughout 2023 and into 2024); Doc. 567-207 at 3, 6 (bank statement for that account showing a deposit from Soren in September 2024); *see also* Doc. 572 at 69. But these few records, provided only under threat of contempt, are hardly complete.

There is nothing to indicate that Mr. Brooksby has given payroll stubs or an equivalent to the Receiver, provided all bank records that clearly show where his money from Soren was deposited, or otherwise accounted to the Receiver for this income, all as required by the Receivership Order. Mr. Brooksby has not fully complied with this provision of the Receivership Order, and he is in contempt of court.

### 2. Mr. Brooksby's Tax Returns

The Receivership Order requires Mr. Brooksby to deliver all federal income tax returns for 2018 through 2023 and underlying documentation to the Receiver within five days of the entry of the order in March 2023. Doc. 399 at ¶ 12. As of August 30, 2024, the Receiver had not received Mr. Brooksby's 2023 tax return or the underlying documents for prior year tax returns. Doc. 555 at ¶ 4.

In November 2024, after the pending show cause order was entered, Doc. 560, Ms. Brooksby provided the Brooksbys' joint federal and state tax returns and some underlying documentation for 2018 through 2022, Doc. 567-169 at 71–144 (2018), 145–208 (2019), 213–44 (2020), 249–79 (2021), 285–312 (2022), all purportedly prepared by a CPA. *See, e.g.*, *id.* at 288. This filing also included purported 2023 tax returns and some underlying

documents, *id.* at 313–324; Doc. 567-168, but those returns are incomplete. In January 2025, Ms. Brooksby again provided purported 2023 tax returns and some additional underlying documents, Docs. 576-199 to 576-204; Docs. 576-219 to 576-221 (signed copies), with some changes from the 2023 returns she turned over in November.[12]

Two years ago, the Court ordered Mr. Brooksby to provide his tax returns and underlying documentation for 2018 through 2023. Doc. 399 at ¶ 12. He did not do so. He represented to the Court in April 2023 that he had "a staff of five accounting team" working on gathering information and that "Art White" had filed the tax returns for 2017 through 2022 that week. Doc. 414 at 11–12. Yet Mr. Brooksby still did not provide the underlying documentation for those tax returns to the Receiver. Only after the court issued a show cause order in September 2024 did he provide some of these documents through his wife. But the underlying documentation provided by Ms. Brooksby is spotty, and there is nothing to show that Mr. Brooksby has directed the "staff of five accounting team" or the tax preparer who supposedly prepared these returns to make all supporting documentation available to the Receiver. These records are particularly important to the Receiver in light of Mr. Brooksby's efforts to hide income received from Soren. *See* discussion *supra* at 24–25.

Mr. Brooksby has not fully complied with this provision of the Receivership Order, and he is in contempt of court.

---

[12] There is no evidence that the 2023 return was actually delivered to the IRS.

## VI.  Remedy

Mr. Brooksby, the Trust, KFE, and Ms. Brooksby and Mr. King, as agents of KFE, are and have been in contempt for failing to deliver all records and surrender all assets to the Receiver in violation of paragraphs 9, 11, 15, 17, and 18 of the Receivership Order. Mr. Brooksby is also in contempt for failing to deliver records of his income from Soren to the Receiver and for failing to account to the Receiver for this income in violation of paragraphs 15 and 17 of the Receivership Order, and for failing to deliver the underlying documentation for his tax returns to the Receiver in violation of paragraph 12 of the Receivership Order.

The Receivership Order unequivocally requires the defendants to comply.  The plaintiffs here are entitled to recover on the judgment entered against them based on a verdict by the jury.  The defendants are not entitled to hide their assets behind a veil of self-created complexity and tangled webs of deception.

Finding an appropriate remedy is challenging.  Mr. Brooksby has shown repeatedly that he will attempt to avoid the Receivership Order in any way possible. KFE, acting through Mr. Brooksby, Ms. Brooksby, and Mr. King, has repeatedly displayed a willingness to delay and obscure.  Only when called to account do Mr. Brooksby, the Trust, and KFE make any effort to bring themselves into compliance.  Mr. Brooksby provides little information himself, relying on his wife to meet his personal obligations.

Coercive orders will be imposed as to each.  To purge their contempt, each must turn over all required assets and records to the Receiver.  The Clerk will not accept

voluminous exhibits, as the court docket is not the appropriate place to unload hundreds of exhibits that should be delivered to the Receiver.

### A. Mr. Brooksby

After considering numerous options, the Court concludes that as to Mr. Brooksby, incarceration is the only real option that has any possibility of forcing compliance. Court orders limiting Mr. Brooksby's activities and imposing other sanctions have had little effect. If Mr. Brooksby will not follow the clear rules laid out by the Receivership Order, there is little reason to think more detailed rules would be effective. The last time he was incarcerated for civil contempt, some progress was made. Therefore, the Court will order Mr. Brooksby taken into custody and held until he shows that he has fully and completely complied with all of his obligations under the Receivership Order.

### B. KFE

#### 1. Mr. Brooksby

For the same reasons just stated, coercive incarceration of Mr. Brooksby is appropriate until KFE complies.

#### 2. Mr. King

As to Mr. King, the Court concludes that incarceration has become necessary. Mr. King has been involved from the get-go. He continues to take actions on behalf of receivership entities that are prohibited by the Receivership Order while at the same time blaming others and denying knowledge. He has not shown that he has taken any real steps to require, or even ask, others holding KFE records to turn those records over to the Receiver. His purported ignorance of details is not credible; he was, after all, a manager

28

of the LLCs at the top of the Estates bid-rigging scheme, the receivership defendants

Citadel Management LLC and Avirta LLC, in addition to managing KFE through its

manager Citadel. Docs. 256-2, 256-3, 256-5.

Therefore, the Court will order Mr. King taken into custody and held until he

shows that KFE has fully and completely complied with its obligations under the

Receivership Order. In its discretion, the Court will stay this order for six business days,

until April 1, 2025, to give Mr. King one last chance to bring himself into full compliance

while out of custody.

### 3. Ms. Brooksby

As to Ms. Brooksby, the issue is a little more complicated. On the one hand, Ms.

Brooksby has allowed her name to be used in Mr. Brooksby's business operations

through KFE for many years, and she is complicit in Mr. Brooksby's ongoing efforts to

hide financial assets from the Receiver. She only complies, and then partially, when

threatened with contempt. On the other hand, she did eventually turn over many financial

records and documents to the Receiver. After considering numerous options including

coercive incarceration, the Court in its discretion concludes that the remedies most likely

to coerce Ms. Brooksby's compliance are a coercive daily fine and a requirement to pay

some of the attorneys' and Receiver's fees associated with these contempt proceedings.

"[C]ivil contempt sanctions are intended to coerce the contemnor into compliance

with court orders or to compensate the complainant for losses sustained." *Bradley v. Am.

Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004) (cleaned up). One permissible

coercive sanction is a "fine . . . payable to the court . . . when the defendant can avoid

29

paying the fine simply by performing the affirmative act required by the court's order." *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988); *accord Bradley*, 378 F.3d at 378. Such a fine often takes the form of a daily fine imposed until the contemnor complies. *See Bagwell*, 512 U.S. at 829 (discussing the civil contempt remedy of a "per diem fine imposed for each day a contemnor fails to comply with an affirmative court order"); *see, e.g.*, *Su v. S. Living for Seniors of Louisburg NC, LLC*, No. 22-CV-178, 2023 WL 5814418, at *2 (E.D.N.C. Aug. 25, 2023) (imposing $500 per day fine until contempt is purged); *GlaxoSmithKline, LLC v. Brooks*, No. 22-CV-364, 2022 WL 1443735, at *11 (D. Md. May 6, 2022) (imposing $200 per day fine until contempt is purged).

Ms. Brooksby appears to have money for paying KFE's fine. She testified that she has a substantial regular salary for part-time work, Doc. 572 at 116, 118, 124 ($6,000 a month, for an annual salary of $72,000), and that she is running a business to make money. *Id.* at 80. While she has also testified to some financial hardships, she has been able to support her family, pay a mortgage, and pay a lawyer. *See, e.g.*, *id.* at 65–68, 94–95. She has found the money to pay for trips to Korea. Doc. 593. There is no reason that Ms. Brooksby cannot pay a relatively small amount of $25 per day (approximately $750 a month) until she gets serious about compliance. If she fails to pay the fine on a weekly basis until she has complied with the Receivership Order, the Court will consider other coercive options.

In addition to coercive daily fines, courts remedying civil contempt may "order[] the contemnor to reimburse the complainant for . . . reasonable attorney's fees" related to the contempt proceeding. *In re Gen. Motors*, 61 F.3d at 259; *see also De Simone v. VSL*

30

*Pharms., Inc.*, 36 F.4th 518, 536 (4th Cir. 2022) (holding that attorney's fees are permissible compensatory contempt sanctions).

The plaintiffs' motion for contempt requests that plaintiffs be awarded "their attorneys' fees for bringing this motion and for preparing for and attending any hearings concerning this motion." Doc. 551 at 1. An attorney for the plaintiff was present at the court hearings related to compliance with the Receivership Order on April 11, 2023, April 21, 2023, July 6, 2023, November 12, 2024, and January 14, 2025, as was the Receiver. Minute Entries 04/11/2023, 04/21/2023, 07/06/2023, 11/12/2024, 01/14/2025. Some of these hearings lasted several hours, and all lasted at least one hour. *See, e.g.*, Docs. 424, 572, 587, 588.

The Court will require Ms. Brooksby to partially reimburse the plaintiffs and the Receiver for the attorneys' fees incurred to attend these hearings. To avoid complicated and unnecessary supplemental proceedings over the amount of the fee, the Court will impose a partial fee, estimated conservatively, by requiring payment of one hour per hearing. Should Ms. Brooksby's contempt continue and upon motion by the plaintiff setting forth such fees incurred, the Court will consider requiring her to pay all such fees.

The Receiver's hourly rate is $520 per hour. Doc. 399 at ¶ 61. At one hour for five hearings, the total fee is $2,600, which Ms. Brooksby shall pay directly to the Receiver within five business days. The Receiver shall file a notice if Ms. Brooksby does not pay the Receiver within the time required, which the Court will treat as a supplemental motion for contempt.

31

While the Court did not easily locate evidence of record as to the hourly rates of plaintiffs' counsel, based on the Court's extensive experience in other complex matters involving attorneys with similar levels of experience, the Court conservatively estimates an hourly rate of $350. At one hour for five hearings, the total fee is $1,750, which Ms. Brooksby shall pay directly to the plaintiffs' counsel within five business days. Plaintiffs' counsel shall file a notice if Ms. Brooksby does not pay counsel within the time required, which the court will treat as a supplemental motion for contempt.

If Ms. Brooksby wishes to challenge the hourly rate used to calculate plaintiffs' counsel fee, she may do so by filing a timely motion with evidence of a more appropriate rate, to which plaintiffs' counsel may respond. The Court will then consider whether a lower or higher hourly rate is more appropriate. And, as mentioned, if the Receive or plaintiff's counsel wants to submit a motion requiring her to pay all their fees associated with KFE's contempt, they may do so.

## VII.  Other Matters

There are indications that Mr. Brooksby, with the assistance of his wife and others, is violating the Receivership Order in other ways. It seems likely, for example, that Mr. Brooksby has not accounted for income he has received and assets he has obtained since the Receivership Order was entered, instead hiding those assets in other LLCs purportedly formed and run by his wife. He may even be funneling profits from his operations to his wife in the form of wages paid to her under cover of the shady accounting operation he says he has used for years.

32

Much of this information has come to light since the various show cause orders were entered. These potential violations are not the basis for the contempt findings herein or the remedies imposed herein. But all receivership defendants and their agents, as well as persons who are in active concert or participation with them, *see* Fed. R. Civ. P. 65(d)(2)(C), are subject to further proceedings, upon motion by the Receiver or the plaintiffs.

It is **ORDERED** that:

1. The plaintiffs' motion for contempt, Doc. 551, is **GRANTED** and defendant Craig Brooksby is in civil contempt for failing to comply with the Receivership Order. The plaintiffs' motion for civil contempt related to the permanent injunction is resolved by separate order.

2. Subject to further order of the Court, Craig Brooksby **SHALL** be imprisoned until such time as he purges himself of contempt as to his obligations under the Receivership Order.

3. Defendants GG Irrevocable Trust and King Family Enterprises, LLC are in civil contempt for failing to comply with the Receivership Order.

4. Subject to further order of the Court, Rex King **SHALL** be imprisoned until such time as KFE purges itself of contempt as to its obligations under the Receivership Order. This Order is **STAYED** for six business days, and Mr. King **SHALL** report to the Marshal's office at the Greensboro Courthouse on April 1, 2025, at 2 p.m.

33

5. Subject to further order of the Court, Sonja Brooksby **SHALL** pay a fine of $25 per day to the Clerk of Court beginning today and continuing until the KFE purges itself of contempt as to its obligations under the Receivership Order. For administrative ease, she may pay these fees on a weekly basis every Friday by noon, with the first payment due Friday, March 28, 2025. If Ms. Brooksby does not pay as ordered, the Clerk **SHALL** file on the docket a status report so indicating.

6. Sonja Brooksby **SHALL** pay the Receiver $2,600 within five business days. If Ms. Brooksby does not pay the Receiver within the time required, the Receiver **SHALL** file on the docket a status report so indicating, which the Court will treat as a supplemental motion for contempt.

7. Sonja Brooksby **SHALL** pay Plaintiffs' counsel $1,750 within five business days. If Ms. Brooksby does not pay counsel within the time required, Plaintiffs' counsel **SHALL** file on the docket a status report so indicating, which the Court will treat as a supplemental motion for contempt.

8. This matter is set for a compliance hearing on April 1, 2025, at 9:30 a.m.

9. The Clerk **SHALL NOT** accept for filing any submission by or on behalf of Craig Brooksby, Sonja Brooksby, Rex King, KFE, or the Trust that has more than three attachments, absent a court order allowing such filing.

This the 24th day of March, 2025.

UNITED STATES DISTRICT JUDGE

34