IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRIAN C. WILLIAMS, et al.,  )
                             )
            Plaintiffs,      )
                             )
v.                           )     1:19-CV-1076
                             )
THE ESTATES LLC, et al.,     )
                             )
            Defendants.      )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The defendants ran a fraudulent bid-rigging scheme limiting bids on property in foreclosure, injuring the plaintiffs and others. A jury held them to account, and the Court entered a money judgment and permanent injunction. Among other things, defendant Craig Brooksby was prohibited from acting together or with any other person or entity to bid on, buy, or sell directly or indirectly any property obtained through a public real estate foreclosure auction anywhere in the United States for eight years.

For the entirety of this lawsuit, before and after judgment, Mr. Brooksby has ignored and violated court orders. He has twice been held in contempt and once was confined in the custody of the United States Marshal to compel compliance with orders related to a receivership. Despite this, he has yet again violated the permanent injunction by acting with others to buy foreclosed real property.

Faced with ongoing long-term willful violations of the permanent injunction, and on motion by the plaintiffs, the Court again finds Mr. Brooksby in civil contempt for

violation of the permanent injunction. As a remedy to force compliance, the Court will expand and extend the permanent injunction and impose additional reporting requirements on Mr. Brooksby.[1]

The Court makes the following findings of fact by clear and convincing evidence and reaches the following conclusions of law.

I.  **Background and Procedural History**

The Court has previously made extensive findings of facts in other orders that detail the specifics of this case and the post-judgment proceedings. *See, e.g.*, Docs. 244, 364, 397, 425. These orders are incorporated in full by reference.

**A. The Antitrust Case and Verdict**

The plaintiffs filed this case against a number of defendants, including Mr. Brooksby and The Estates LLC, alleging a bid-rigging conspiracy in violation of the Sherman Act and asserting two other state law causes of action. Doc. 104. At the April 2022 trial, the jury returned a verdict for the plaintiffs. Doc. 235.

The Estates was a membership-based limited liability company founded and run by Mr. Brooksby that operated across multiple states, including North Carolina. Doc. 244 at 3. Estates members paid a monthly fee to access its website, where properties in foreclosure were listed. *Id.* at 3–4. Members submitted internal bids stating how much they would pay for a particular property, and Mr. Brooksby or other agents of the Estates would select one member to represent in bidding on the property at the public foreclosure

---

[1] Violations by Mr. Brooksby and others of the receivership orders will be dealt with by separate order.

auction. *Id.* at 4. Only one Estates member could use its services to bid on properties in foreclosure, and members agreed not to bid against one another. *Id.* at 4–5.

If an Estates member acquired property found through the Estates' database, he or she owed an acquisition fee. *Id.* at 5. Mr. Brooksby was also entitled to some of the profits obtained from selling property acquired using the Estates' services, *id.*, although the exact arrangements for paying Mr. Brooksby were complicated and opaque. He and other defendants created numerous LLCs to conduct these real estate transactions, and Mr. Brooksby hid the distribution of these funds, fees, and profits through a myriad of LLCs. Doc. 364 at 4.

### B. Judgment, Permanent Injunction, and Charging Order

In early June 2022, consistent with the verdict, the Court entered a money judgment against the defendants. Doc. 245. The Court also imposed a permanent injunction. Doc. 246. Among other things, Mr. Brooksby and others are prohibited from "acting together . . . or with any other persons or entities to buy or sell directly or indirectly any property obtained through a public real estate foreclosure auction anywhere in the United States for a period of eight years." *Id.* at ¶ 9. Mr. Brooksby and two other individual defendants appealed the judgment and injunction; the Fourth Circuit affirmed. *Williams v. Brooksby*, No. 22-1982, 2024 WL 4490636 (4th Cir. Oct. 15, 2024).

Shortly after the Court entered the judgment and permanent injunction, the plaintiffs moved for a charging order against the economic interests of Mr. Brooksby and other defendants. Doc. 247. The Court granted the motion in part, Doc. 292, and entered

3

a charging order directing a number of LLCs to pay any funds owed to certain defendants toward the judgment instead. Doc. 293.[2]

### C. Defendants' Defiance, Appointment of a Receiver, and Contempt Proceedings

In July 2022, a defendant subject to the permanent injunction informed the Court that Mr. Brooksby may have violated the injunction by selling a property obtained through a foreclosure sale. Doc. 277 at ¶¶ 9–10. After a status conference to review compliance, Minute Entry 09/09/2022, the Court required the defendants, including Mr. Brooksby, to file supplemental compliance declarations. Doc. 310 at ¶ 1. In early October 2022, the Court reminded the defendants that the permanent injunction remained in effect, Doc. 325 at 3, and warned Mr. Brooksby that violation of the permanent injunction is contempt of court. Doc. 326 at 3.

In September 2022, the plaintiffs asked the Court to appoint a receiver over the assets of Mr. Brooksby and other defendants. Doc. 316. In late October 2022, while that motion was pending, the plaintiffs filed a motion for contempt against Mr. Brooksby. Doc. 329. They contended that Mr. Brooksby had sold five properties in violation of the injunction, Doc. 330 at 3, and that he had violated the charging order in relation to one of those properties. *Id.* at 4–5. The Court directed Mr. Brooksby to show cause as to why he should not be held in civil contempt. Doc. 331.

---

[2] A charging order directs an LLC in which a judgment debtor has an economic interest to pay any money the LLC would otherwise pay to the judgment debtor toward satisfaction of the judgment. *See* Doc. 292 at 1.

4

In December 2022, the Court found by clear and convincing evidence that Mr. Brooksby had violated the permanent injunction by acting with others to sell real property bought at foreclosure auctions and held Mr. Brooksby in civil contempt. Doc. 364 at 12–13. The Court ordered Mr. Brooksby to produce the closing documents for the violative sales. *Id.* at 20.

By separate order, the Court appointed a receiver and directed him to take possession and control of all the assets of Mr. Brooksby, The Estates, LLC, Avirta LLC, GG Irrevocable Trust, and King Family Enterprises, LLC. Doc. 362 at 2; *see also* Doc. 399 at ¶ 2. The Court ordered those defendants to turn over all records and assets to the Receiver. Doc. 362 at 2–3; *see also* Doc. 399 at ¶¶ 9, 15, 17, 18.

In March 2023, the Court expanded the receivership order to include more LLCs after Mr. Brooksby continued to sell properties and evade court orders through various LLCs and because the receivership defendants continued to refuse to comply with court orders concerning the receivership. Doc. 399; *see also* Doc. 397 at 1.

Also in March 2023, Mr. Brooksby and his attorneys were sanctioned for violating Rule 11 of the Federal Rules of Civil Procedure. Doc. 400. Soon thereafter, the remaining lawyer representing Mr. Brooksby was allowed to withdraw without objection. Doc. 403. Mr. Brooksby has since represented himself.

Over the next several weeks, the Court conducted hearings about the failure of Mr. Brooksby and others to comply with the receivership orders. Ultimately, in April 2023, the Court held Mr. Brooksby and other defendants under his control in civil contempt for failing and refusing to turn over records and assets to the Receiver in knowing violation

of the receivership orders. Doc. 425 at 11–12, 14. To compel compliance, Mr. Brooksby was placed in the custody of the United States Marshal, pending compliance and further order from the Court. Minute Entry 04/11/2023; Doc. 425 at 19. The matter was held open as to other defendants. Doc. 425 at 16, 18.

At a hearing several days later, Mr. Brooksby showed he was in partial compliance, and the Court authorized the U.S. Marshal to release him. Minute Entry 04/21/2023; Doc. 440 at 2, 4. But the Court held that Mr. Brooksby and other defendants had "not yet purged themselves of civil contempt and deficiencies remain[ed]." Doc. 440 at 2. The Court, in its discretion, held the matter open to give the defendants "additional time to cooperate with the Receiver and bring themselves into full compliance with this Court's orders." *Id.* at 3. The Receiver has since filed quarterly reports, *see* Docs. 493, 533, 546, 547, 548, 566, 580, which have noted ongoing deficiencies since October 2023. Doc. 533 at 3; Doc. 546 at 3; Doc. 547 at 2; Doc. 548 at 2; Doc. 566 at 2; Doc. 580 at 2.

## II. The Pending Motion for Contempt and Show Cause Order

In August 2024, the plaintiffs filed a motion asking the Court to hold Mr. Brooksby in civil contempt because of new violations of the permanent injunction. Doc. 551.[3] The plaintiffs rely on pleadings and evidence submitted in a lawsuit filed by Soren LLC against Tomas Leal in Texas. *See* Docs. 552-1, 552-2. The Court established a

---

[3] The plaintiffs contend that Mr. Brooksby has still not provided required information to the Receiver, Doc. 552 at 4, and that he has resumed violating the permanent injunction by acting with others to buy or sell property obtained through foreclosure through an entity called Soren LLC. *Id.* at 9–10. This order will address only the alleged violation of the permanent injunction. The alleged failure to comply with the receivership orders will be addressed in a separate order. *See supra* note 1.

6

schedule for written submissions, Doc. 554, and after review issued a show cause order giving Mr. Brooksby notice that he could be held in contempt for failing to comply with the permanent injunction. Doc. 560 at 5.

The Court held a hearing on November 12, 2024. Minute Entry 11/12/2024. Mr. Brooksby appeared without representation and did not testify under oath. Doc. 572 at 1, 139, 143. Mr. Brooksby and others submitted additional evidence thereafter, *see, e.g.*, Docs. 576, 577, 578, and the Court held another hearing on January 14, 2025. Minute Entry 01/14/2025.

### III. Civil Contempt

District courts have "the inherent authority to hold parties in civil contempt" to ensure compliance with their lawful orders. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). A court may impose civil contempt remedies "to coerce obedience to a court order or to compensate the complainant" for injuries resulting from the contemnor's noncompliance. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)).

Before a court holds a party in civil contempt, it must provide the alleged contemnors with "notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). A contempt order requires proof by clear and convincing evidence: (1) that there was a valid decree of which the alleged contemnor had knowledge; (2) that the decree benefitted the opposing party; (3) that the alleged contemnor violated the terms of the decree and knew he violated its terms; and

(4) that the opposing party suffered harm as a result. *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 145 (4th Cir. 2023). Once there is a "prima facie showing of these elements, the burden shifts to [the] alleged contemnor to justify his non-compliance." *U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC*, No. 09-CV-387, 2010 WL 2131852, at *2 (W.D.N.C. May 25, 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

### IV. Mr. Brooksby Is In Civil Contempt

The permanent injunction is a valid decree issued by this Court. Mr. Brooksby had actual knowledge of the injunction. *See, e.g.*, Doc. 374 at 2–3 (noting Mr. Brooksby's presence at a November 2022 hearing at which the injunction was extensively discussed). The injunction benefitted the plaintiffs by preventing the same type of antitrust violations that harmed them.

The permanent injunction prohibits Mr. Brooksby and certain other defendants from "acting together, in any combination, or with any other persons or entities to buy or sell directly or indirectly any property obtained through a public real estate foreclosure auction." Doc. 246 at ¶ 9. Mr. Brooksby is in civil contempt for his violation of this provision in at least two ways, either of which independently supports the finding of contempt and the remedies imposed herein. First, he acted on behalf of Soren, LLC and with others, including David Ginn, to buy real property previously owned by Tomas Leal and obtained by a third party through a public real estate foreclosure auction. Second, and more generally, he has acted with Soren and others to buy real estate from other third parties who obtained the real property through a foreclosure sale.

8

Soren does business as Greenlight Property Group, LLC, Doc. 556-3 at ¶ 2; Doc. 556-7 at ¶ 2, and is part of Mr. Brooksby's operations in Texas. *See* Doc. 414 at 12 (testimony by Mr. Brooksby that Greenlight is "the company that we work with" in Texas). David Ginn, who says he is a manager of Soren, Doc. 556-3 at ¶ 2, had a close business relationship with Mr. Brooksby and has worked with and on behalf of the Estates in Texas.[4] As the evidence at trial overwhelmingly showed, the Estates and its members, acting through various LLCs, were in the business of buying real property out of foreclosure and then selling it.[5]

In 2023, after the entry of the permanent injunction, Mr. Brooksby spent substantial time in Texas acting on behalf of Soren; his 2023 W-2 from Soren showed a Texas address for him, Doc. 576-199, he was paid by Soren on commission, Doc. 572 at 69, and he earned at least $27,500 for his work with Soren in 2023. Doc. 576-199.

As part of its operations, Soren contracts with individuals to attempt to "recover[]" their property in or after foreclosure. Doc. 552-2 at 2. This includes buying back real property sold to third parties in foreclosure. *See* discussion *infra*. A part of Mr. Brooksby's responsibilities at Soren is to work directly with homeowners to recover their property after its sale at foreclosure. Doc. 556-3 at ¶ 3; Doc. 556-7 at ¶ 4.

---

[4] Mr. Ginn's LinkedIn profile states that he worked with Craig Brooksby before deciding to "join the company" and become "the coordinator for The Estates" in Texas, Doc. 552-1 at 23, and a Reddit user, "theestatesllc," displays its name as David Ginn. *Id.* at 25.

[5] There is no evidence that Soren does not buy homes in foreclosure. However, the Court need not determine whether that is so or whether Mr. Brooksby participated in such buying and selling, given the overwhelming evidence of other violations of the permanent injunction.

9

In late 2022, Tomas Leal lost his Texas home in foreclosure proceedings. *See* Doc. 556-3 at ¶ 7. He talked with agents of Soren about an "asset recovery agreement" wherein Soren would help him recover some of the assets he lost in the foreclosure in exchange for a share of those recovered proceeds. *See* Doc. 552-1 at 14–17. During those talks, an agent of Soren texted Mr. Leal in an effort to convince him to sign the agreement by quoting Mr. Brooksby as follows: "Craig said, 'If you sign as agreed, sign now. . . . Go get Niurka[6] if he doesn't do it today.'" *Id.* at 18 (translated from Spanish).[7]

Soon thereafter, in January 2023, Mr. Leal signed the asset recovery agreement with Soren. *Id.* at 14–17; Doc. 556-3 at ¶ 6.[8] This asset recovery agreement is strikingly similar to agreements used by Somul Group, LLC, a receivership defendant controlled by Mr. Brooksby before entry of the receivership order. *See* Doc. 399 at ¶ 1; *compare* Doc. 552-1 at 14–17 (Soren agreement with Mr. Leal), *with* Docs. 576-33, 576-46, 576-56, 576-80, 576-98, 576-131, 576-152, 576-168, 576-169, 576-173 (Somul agreements).

Mr. Leal retained Josue Dorleus as his attorney, Doc. 552-1 at 11–13,[9] and hired Soren to "locate and recover . . . assets . . . which may belong to" him and to "attempt to

---

[6] "Niurka" appears to be a reference to Niurka Mordouch, the person who sold Mr. Leal the real property at issue. *See* Doc. 552-1 at p. 1 ¶¶ 4–6.

[7] Mr. Brooksby has not denied that he is the "Craig" referenced in this text.

[8] Soren later sued Mr. Leal in Texas, and Mr. Leal countersued for fraud and other claims. *See* Doc. 552-1 at 1–10. While Mr. Brooksby challenges some of the facts alleged in Mr. Leal's pleadings, he has not challenged the authenticity of the contracts, text messages, or other documentary materials filed in that case which have now been submitted in this Court.

[9] The signature line for Mr. Dorleus says that he would sign the agreement "For the Law Office of Steven W. Shaw." Doc. 552-1 at 13. Mr. Shaw was Mr. Brooksby's attorney in this case until he was removed by court order for repeated violations of the rules. *See* Doc. 363.

collect the [a]ssets for [his] benefit." *Id.* at 14. The agreement, which referred to Soren as "Company," provided that:

> In the event, Company acquires the Asset from the third-party buyer, then Client agrees that Company, shall have the sole discretion and exclusive right to sale [sic] the Asset to a third party subject to Company being paid the Compensation from the gross proceeds and the Company being reimbursed for the Costs for Assets paid by Company for the Matter.

*Id.* at 16. Mr. Brooksby procured Mr. Leal's assent to this agreement, which covered the real property Mr. Leal had recently lost in foreclosure and authorized Soren to acquire that property on behalf of Mr. Leal. *See id.* at 14, 16.

Mr. Ginn, acting for Soren, texted Mr. Leal on September 7, 2023, to confirm that Mr. Leal and Mr. Brooksby had "reached an agreement" to "drop[] [Mr. Leal's] pursuit of the house" and proceed only with collecting money. Doc. 552-2 at 34. An invoice for legal services provided in Mr. Leal's matter by "Greenlight Legal LLC," including Mr. Dorleus, Doc. 552-1 at 41–46, includes an entry for "[m]ultiple telephone conferences with bidder's counsel regarding purchasing the property back," *id.* at 41, and contains multiple other references to the "bidder." *See id.* at 42–46. As this evidence shows, Soren's efforts to recover Mr. Leal's house included efforts to buy the house back from the party that had purchased the house at a foreclosure auction. Soren's efforts were not limited to recovering excess funds Mr. Leal may have been owed.

Mr. Brooksby was involved in Soren's efforts to buy Mr. Leal's house. Mr. Ginn's text, Doc. 552-2 at 34, so suggests, and the invoice for legal services, Doc. 552-1 at 41–46, explicitly mentions consultation with Mr. Brooksby three times. *Id.* at 45 ("Obtained

11

status of discovery from Craig Brooksby – told that he is waiting to review discovery with Steven Shaw and will revert back"); *id.* ("Correspondence with Craig/Shaw Law"); *id.* at 46 ("Telephone conference with David Ginn, Craig Brooksby, Isabel [and] Dora regarding case strategy").

These facts show by clear and convincing evidence that Mr. Brooksby violated the permanent injunction in his work with Soren, both in his actions as to Mr. Leal and more generally.[10] The injunction prohibits him from "acting . . . with any other persons or entities to buy . . . directly or indirectly any property obtained through a public real estate foreclosure auction." Doc. 246 at ¶ 9. First, Mr. Brooksby acted together with Soren in efforts to buy Mr. Leal's property that had been obtained through a public real estate foreclosure auction. This violates the injunction. Soren may not have succeeded in buying the property, but the injunction prohibits indirect acts to buy property, not just the act of purchase itself. *See id.* Second, Mr. Brooksby's actions on behalf of Soren were not limited to Mr. Leal; he was involved in communicating and working with other clients too. Soren's business includes "recovering" property lost in foreclosure such as buying back real property, and Mr. Brooksby worked with Soren in all parts of its business, including matters concerning foreclosed real property, in violation of the injunction.

Mr. Brooksby says that Mr. Leal's case "was not about bidding and buying a property to renovate, flip, and resell." Doc. 556 at 6. But that is not all the injunction

---

[10] Either of these violations independently supports a finding of civil contempt and the remedies imposed herein.

prohibits. Soren, acting through Mr. Brooksby and others, tried to buy the property from the foreclosure owner. The injunction prohibits Mr. Brooksby from acting with others to buy property obtained through a foreclosure auction, regardless of the purpose. *See* Doc. 246 at ¶ 9. And the injunction is broad: it prohibits direct and indirect acts. *See id.*

Mr. Brooksby alludes to paragraph 8 of the permanent injunction, *id.* at ¶ 8, which allows him to bid on real property in foreclosure when acting with a spouse or wholly-owned entity. *See* Doc. 572 at 81–82, 158. But that is a very narrow exception to the broad prohibition in paragraph 8. Mr. Brooksby has offered no evidence that Soren is wholly owned by himself and his wife. Even if it were, the injunction does not allow the conduct here, which involved acting with Mr. Ginn and others, not just Ms. Brooksby, to buy real property obtained through foreclosure.

Mr. Brooksby also points to testimony by Mr. Ginn that Mr. Brooksby has no management authority or ownership interest in Soren. Doc. 556-3 at ¶ 4; *see also* Doc. 572 at 143–44 (unsworn assertions by Mr. Brooksby that he does not own or control Soren). That is neither credible nor determinative.

First, the Court doubts this is true. Mr. Brooksby's credibility is weak to non-existent, and Mr. Ginn is one of Mr. Brooksby's cronies via the Estates, giving rise to questions about his credibility. Neither Mr. Ginn nor Mr. Brooksby has provided any corporate records for Soren establishing who its managers and members are or other documentation corroborating their testimony. Second, even if Mr. Brooksby is not a member or manager of Soren, the permanent injunction prohibits Mr. Brooksby from acting to buy foreclosed property, including as part of his employment for someone else.

13

*See* Doc. 246 at ¶ 9. Third, even if that were not so, the record shows that Mr. Brooksby had extensive decisional authority in Soren's relationship with Mr. Leal. Mr. Ginn's September 7, 2023, text to Mr. Leal said, "Craig said he will be assisting you and directing us in this process personally." Doc. 552-2 at 34. That does not describe someone without authority; that describes someone in charge. Mr. Brooksby's authority even extended to the decision by Soren to file a lawsuit against Mr. Leal. *See id.* at 13 (text dated September 19, 2023, stating "Tomas refuses to sign the documents and Craig gave him until today or we are going to file a lawsuit against him"). Finally, all of the credible evidence establishes that Mr. Brooksby exercises substantial decision-making authority at Soren. He admits he gave directions to an attorney for Greenlight in connection with the receivership, Doc. 414 at 12–14, and the tone of the communications about the Leal property make it clear that Mr. Brooksby is running the show. As he has done for years, Mr. Brooksby continues to use LLCs and other people as fronts for his operations.[11]

Mr. Brooksby knew he was violating the permanent injunction. These acts occurred in 2023, after he had already been found in contempt in 2022 for violating

---

[11] The record is replete with examples. Without attempting anything approaching an exhaustive summary, here is some of the more recent evidence on this point: Soren uses some of the same people to handle accounting and recordkeeping that Mr. Brooksby and the Estates used. *See, e.g.*, Doc. 572 at 87–88, 120. Rex King, another of Mr. Brooksby's confederates in Estates matters, *see, e.g.*, Docs. 256-3, 256-5, also works for Soren, *see* Doc. 576-199 (partial Soren W-2 for Mr. King), and Mr. Brooksby's wife is "a manager or member" of Soren. *See* Doc. 424 at 39. While he worked in Texas for Soren, Mr. Brooksby had full access to a debit card for Somul Group LLC, another one of his companies now subject to the receivership order, *see* Doc. 399 at ¶ 1, and once Somul became a receivership defendant, Mr. Brooksby's wife let him use her personal debit card. Doc. 572 at 92.

paragraph 9 of the permanent injunction by selling properties obtained through foreclosure, *see* Doc. 364 at 13, and the language prohibiting buying such properties is in the same sentence of the permanent injunction. The injunction is clear that acting with other people is prohibited, and the Court emphasized this point at a hearing in November 2022. Doc. 374 at 46 (Court stating in Mr. Brooksby's presence, "[H]e's acting on behalf of LLCs. He's acting on behalf of other people. That's clearly in violation of the injunction."). The fact that he purportedly told foreclosed homeowners about the injunction, Doc. 556-7 at ¶ 4, does not mean he can violate it, even if the Court assumed that was true.[12]

Mr. Brooksby's violation of the permanent injunction causes the harm that it was entered to prevent. The permanent injunction was designed to prevent Mr. Brooksby from dealing with other people about the buying and selling of foreclosed property, which the trial established was part of his bid-rigging scheme. Doc. 244 at 29. Here, the violation involved dealing with other people, including co-workers, lawyers, bidders, and homeowners about foreclosed real property. "Where a prior judgment includes a finding that the contemnor's conduct harmed the movant, that finding continues to bind the contemnor." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 534 (4th Cir. 2022) (cleaned up) (quoting *Rainbow Sch.*, 887 F.3d at 619). Mr. Brooksby is bound by the Court's entry

---

[12] Mr. Ginn testified that "Mr. Brooksby's case had been disclosed to [Soren]'s client." Doc. 556-3 at ¶ 5. The document he provided as making this "disclosure" states that Soren and "the people working with it have been involved in . . . bid rigging lawsuits . . . [and] [t]hey have judgments against them and have judgments in their favor." Doc. 556-4 at ¶ 14. This purported disclosure document does not mention the injunction.

of judgment against him for bid-rigging conduct that harmed the plaintiffs, Doc. 245, and by the Court's finding that paragraph 9 of the permanent injunction was necessary to lower the risk of such conduct reoccurring. *See* Doc. 244 at 28–30.

Mr. Brooksby is in contempt of court for violating the permanent injunction in his work with Soren.[13]

## V. Remedy

Finding an appropriate remedy to force compliance is challenging. Mr. Brooksby has repeatedly shown that he will attempt to avoid the permanent injunction and other court orders in any way possible. Even after he was held in contempt for violating the permanent injunction in December 2022, Doc. 364 at 12–13, he continued to work with Soren and others in a business remarkably similar to the Estates, doing the same kind of work he did when he was involved in the Estates: negotiating deals about foreclosed real property. He continues to use other people and entities as fronts for his activities and tried to justify his acts here by pointing to paragraph 8 of the permanent injunction, which clearly does not apply.

He has repeatedly violated the permanent injunction. Only when called to account does Mr. Brooksby purportedly change his conduct. For example, when his actions in

---

[13] After the Court entered the show cause order, Doc. 560, other potential violations of the permanent injunction came to light and were the subject of extensive evidentiary submissions and testimony. All of the evidence to date suggests that Mr. Brooksby violated the permanent injunction in connection with his activities on behalf of Melton Guild LLC and other LLCs purportedly operated by his wife and that his wife has facilitated his violations. The Court has not relied on these acts to reach its conclusions herein and will deal with them separately, if and when there is a pending motion.

16

Texas related to Soren came to light, Mr. Brooksby began claiming that he no longer worked for Soren. Doc. 572 at 151.

A financial sanction will be ineffective. Mr. Brooksby has no bank account, has paid nothing toward the judgment, uses his wife's bank account, and acts through a maze of LLCs. Incarceration to coerce compliance does not fit these violations, though it would prevent Mr. Brooksby from easily dealing with others about foreclosed real estate.

After considering these and numerous other options, the Court concludes that extending and expanding the permanent injunction and adding additional reporting requirements is an appropriate way to respond to Mr. Brooksby's repeated and ongoing contempt and to force compliance with the permanent injunction. Specifically, the Court will:

1. Extend the duration of paragraphs 8 and 9 of the permanent injunction from eight years to ten years. Mr. Brooksby has spent the last two years repeatedly violating the injunction, so this remedy is appropriate.
2. Expand the permanent injunction to prohibit Mr. Brooksby from:
   a. working for or with any other person or entity who is involved in any way with the purchase or sale of real property, including any family members;
   b. providing any services of any kind to or on behalf of persons or entities who have had their homes or other real property foreclosed or are in the foreclosure process; and

    c. serving as a member, manager, or organizer of any limited liability company, as an officer or director of any corporation, or otherwise holding any organizational position with any entity of any kind, including but not limited to a partnership or limited liability partnership.

This expansion is necessary to prevent Mr. Brooksby from violating the original permanent injunction by subterfuge and by acting with and through other people and entities, as he has repeatedly done.

3. Expand paragraph 8 of the permanent injunction to remove the limited permission Mr. Brooksby had to bid on foreclosure property personally or with a spouse or a wholly owned entity, so that he is totally and completely prohibited from acting alone or with any other person or entity to bid directly or indirectly in any public real estate foreclosure auction anywhere in the United States. This expansion is necessary to prevent Mr. Brooksby from violating the original permanent injunction by subterfuge and by acting with and through other people and entities, including family members.

4. Require Mr. Brooksby to provide a declaration under oath to plaintiff's counsel identifying all income, wages, compensation, money, or other financial benefits he has received from any person or entity since June 2, 2022. This requirement is necessary to ensure that Mr. Brooksby has not violated the permanent injunction in other ways as he did with Soren.

5. Require Mr. Brooksby to regularly show compliance by providing monthly declarations under oath to plaintiff's counsel identifying any income, gifts, or

financial support of any kind, monetary or in-kind, that he has received from any source whatsoever, including family members, and specifying what he has done with all such receipts. Every dollar given to him or spent on his behalf and every in-kind form of support must be reported. This requirement is necessary to ensure that Mr. Brooksby is not violating the permanent injunction by acting through and with the financial support of colleagues or family members, as he did with Soren, or otherwise hiding his income by turning it over to other people.

It is **ORDERED** that the plaintiffs' motion for contempt, Doc. 551, is **GRANTED** and defendant Craig Brooksby in civil contempt for violating the permanent injunction. To the extent the plaintiffs seek a finding of contempt related to the receivership orders, that will be dealt with by separate order. A supplemental permanent injunction will be entered separately.

This the 24th day of March, 2025.

UNITED STATES DISTRICT JUDGE

19

Case 1:19-cv-01076-CCE-JLW   Document 597   Filed 03/24/25   Page 19 of 19